## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case. No.

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

       Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

       Defendants.

_____/

## <u>NOTICE OF REMOVAL</u>

Defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("Florida Blue") and Health Options, Inc. ("HOI" and, together with Florida Blue, "Defendants") respectfully remove the Complaint filed against them in this action to the United States District Court for the Southern District of Florida, and in support state as follows:

      1.     On or about September 2, 2021, Plaintiffs filed the Complaint in the Circuit Court of the 17th Judicial District in and for Broward County, Florida, Case No. CACE-21-016779 (the "Complaint" or "Compl."). On September 15, 2021, undersigned counsel accepted service of

process on behalf of both Defendants.  A copy of the Complaint is attached Exhibit 1 to this Notice of Removal.

2.      This Notice of Removal is filed within the 30-day period required in 28 U.S.C § 1446(b).

3.      Defendants remove this case pursuant to 28 U.S.C. § 1442(a)(1), which permits removal where a person acting under the direction of a federal agency and its officers is sued for actions taken under color of federal office.  In addition, Defendants remove this case pursuant to 28 U.S.C. § 1441 as an action over which this Court has federal question jurisdiction under 28 U.S.C. § 1331.

## I.      <u>Nature of the Case</u>

4.      Plaintiffs – referred to in the Complaint as the "ER Groups" – are companies that allegedly provide emergency medicine services via their contracted medical providers, *i.e.*, doctors, nurse practitioners, and physician assistants with whom the ER Groups contract. Compl. ¶¶ 1, 3.  The ER Groups also contract with hospitals to staff "those hospitals' emergency departments with physicians and other clinic providers." *Id.* ¶ 28.

5.      From 2016 to the present, the ER Groups allege that they provided emergency medical services to patients enrolled in health plans insured or administered by Defendants. *Id.* ¶¶ 1, 4, 31.  The ER Groups have no contracts with Defendants; that is, they are "out-of-network" providers and not "in-network" participating or preferred providers, and the ER Groups have no negotiated rates with Defendants. *Id.* ¶¶ 29-30, 39, 62.  As such, the ER Groups assert that they "submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Florida Blue Members' health insurance plans and applicable laws." *Id.* ¶ 29.

6.      The ER Groups allege that Defendants paid the ER Groups less than the amounts required under Florida law.  *Id*. ¶¶ 1, 3-7, 26, 36, 41, 43.  Specifically, the ER Groups allege Defendants were required to pay "fair market value for" the services the ER Groups rendered. *Id*. ¶ 40; *see also id*. ¶¶ 55, 61.  The ER Groups claim that the amounts they bill ***are*** the usual and customary charges for their services and thus the fair market value of those services to which they are entitled under Florida law.  *Id*. ¶¶ 61-63, 78.  The ER Groups also allege that Florida law requires that Defendants pay the ER Groups directly for emergency medical services they render to Defendants' members or enrollees.  *Id*. ¶ 37.

7.      Based on these allegations, the ER Groups allege five causes of action:  unjust enrichment (Count I), quantum meruit (Count II), violation of Florida Statute §§ 627.64194 and 627.513 (Count III), breach of contract (*i.e*., the underlying health plans between Defendants and their members or enrollees), to which the ER Groups claim to be third-party beneficiaries (Count IV), and declaratory judgment (Count V).  In Counts III and IV, the ER Groups allege that Florida law requires health insurers to cover emergency medical services at the lesser of the provider's charges or the usual and customary provider charges for similar services in the community where the services were provided.  *Id*. ¶¶ 60, 69.  The ER Groups claim that in this case those amounts are the same.  *Id*. ¶¶ 63, 70.

8.      Some of the ER Groups' patients at issue in this case are enrollees in the Service Benefit Plan (sometimes alternatively referred to as the "Federal Employee Program" or "FEP"), which is one of the federal government's health benefits plans for federal employees and their dependents, and is governed by and created under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914.  *See* Declaration of A. Norman ¶¶ 18, 36–40 (attached as Exhibit 2).  Certain of the ER Groups' claims also involve members who were covered under

one of Florida Blue's or HOI's Medicare Advantage ("MA") plans, through which Florida Blue and HOI contract with the Centers for Medicare & Medicaid Services ("CMS") to administer Medicare benefits on behalf of the federal government for Medicare enrollees pursuant to the Medicare Act and its associated regulations promulgated by CMS.  *See, e.g.*, 42 C.F.R. § 422.504 (2014). *See* Norman Declaration ¶¶ 41–52.

### A.   CONTRACTUAL AND REGULATORY BACKGROUND OF THE SERVICE BENEFIT PLAN

9.      The Service Benefit Plan is created by a federal government contract between the United States Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA"), neither of which are parties in this case.  *See generally* 2013 Service Benefit Plan Master Contract (Norman Declaration ¶ 18, Ex. 2-A) [hereinafter "2013 Master Contract"]; *see also* 2016 Statement of Benefits for the Service Benefit Plan at 5 (*id.* at ¶ 29, Ex. 2-L) [hereinafter "2016 Statement of Benefits"]; 2017 Statement of Benefits for the Service Benefit Plan at 5 (*id.* at ¶ 30, Ex. 2-M) [hereinafter "2017 Statement of Benefits"]; 2018 Statement of Benefits for the Service Benefit Plan at 5 (*id.* at ¶ 31, Ex. 2-N) [hereinafter "2018 Statement of Benefits"]; 2019 Statement of Benefits for the Service Benefit Plan at 4 (*id.* at ¶ 32, Ex. 2-O) [hereinafter "2019 Statement of Benefits"]; 2020 Statement of Benefits for the Service Benefit Plan at 4 (*id.* at ¶ 33, Ex. 2-P) [hereinafter "2020 Statement of Benefits"]; 2021 Statement of Benefits for the Service Benefit Plan at 4 (*id.* at ¶ 34, Ex. 2-Q) [hereinafter "2021 Statement of Benefits"].[1]

---

[1]      Periodically, the OPM-BCBSA contract is restated in what Florida Blue calls a "Master Contract."  The 2013 Master Contract is the most recent version.  For the sake of completeness, the 2014 through 2021 annual amendments to the 2013 Master Contract are attached to the Norman Declaration as Exhibits 2-B through 2-I, respectively.

10.     In contracting to establish the Service Benefit Plan, BCBSA acts on behalf of local Blue Cross and Blue Shield companies that administer the Service Benefit Plan in their respective localities; Florida Blue is such a company and administers the Service Benefit Plan in Florida.  *See, e.g.*, 2020 Statement of Benefits at 4; 2021 Statement of Benefits at 4; *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015); *Brady v. Brady*, No. 19-cv-1268, 2019 WL 3206871, at *2 (M.D. Fla. July 16, 2019).

11.     FEHBA, the regulations implementing it, and the relevant contractual provisions set forth a comprehensive framework for the supervision and administration of FEHBA plans, including the Service Benefit Plan:

a.     Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a Statement of Benefits.  *See* 5 U.S.C. §§ 8902(a), (d), 8907.  The Statement of Benefits is incorporated into the government contract between OPM and BCBSA.  *See* 2013 Master Contract § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).

b.     Congress delegated solely to OPM the authority to police the conduct and practices of FEHBA carriers, and the agency has promulgated extensive regulations on the topic.  *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); 48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42-43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plans of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).

c.     FEHBA OPM's regulations, and the Statement of Benefits establish that the exclusive remedies to challenge a carrier's refusal to pay benefits is a request for reconsideration to the carrier, followed by an administrative appeal at OPM, followed by judicial

review in federal court of OPM's decision.  OPM prohibits lawsuits against a FEHBA carrier or its subcontractors relating to the provision of benefits under a FEHBA plan.  *See* 5 U.S.C. §§ 8902(j), 8912; 5 C.F.R. §§ 890.105, 890.107; *see also, e.g.*, 2020 Statement of Benefits at 142-44; 2021 Statement of Benefits at 139-41.  This administrative remedy is available to "medical providers" who have obtained the enrollee's consent.  *E.g.*, 2020 Statement of Benefits at 143; 2021 Statement of Benefits at 140; *see also* 5 C.F.R. § 890.105(a)(2).

        d.        The Service Benefit Plan's Statement of Benefits expressly defines how much the Service Benefit Plan will pay for services provided by out-of-network providers, including emergency services.  *See, e.g.*, 2020 Statement of Benefits at 28-33, 97-100, 159-61; 2021 Statement of Benefits at 28-33, 94-97, 155-57.  Among other things, the Service Benefit Plan typically computes the amount it will pay based on what is called the "Plan Allowance." *E.g.*, 2020 Statement of Benefits at 29, 159-61; 2021 Statement of Benefits at 29, 155-57.  For emergency services by a professional provider (as opposed to a facility provider) such as the ER Groups, the allowance is *not* based on the usual and customary charge for, or the fair market value of, the services.  *See, e.g.*, 2020 Statement of Benefits at 161; 2021 Statement of Benefits at 157.  Further, as the Service Benefit Plan expressly notes, a provider's bill is often more than the Plan Allowance.  *E.g.*, 2020 Statement of Benefits at 29; 2021 Statement of Benefits at 29. And, the Service Benefit Plan often calls for payment of only a portion of the Plan Allowance; the remaining portion is called "coinsurance" and must be paid by the enrollee.  *E.g.*, 2020 Statement of Benefits at 29, 97-100; 2021 Statement of Benefits at 29, 94-97.  Among other situations, coinsurance applies to emergency medical services.  *E.g.*, *id.*

        e.        Notwithstanding the ER Groups' contrary allegation (Compl. ¶ 37), for out-of-network providers such as the ER Groups, the Service Benefit "[P]lan terms explicitly

give [Florida Blue] the option of reimbursing the participant, rather than the provider." *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross & Blue Shield of Fla, Inc.* ("*AAOT*"), No. 03-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005). Specifically, the Statement of Benefits – which, again, is part of the contract with OPM – provides that Florida Blue and the other Blue Cross and Blue Shield entities administering the Service Benefit Plan "reserve the right to pay you, the enrollee, directly for all covered services." *E.g.*, 2020 Statement of Benefits at 156 (definition of "Assignment"); 2021 Statement of Benefits at 152 (same). Similarly, the contract itself states that "the Carrier reserves the right to pay the Member directly for all covered services." 2013 Master Contract § 2.3(j). The Statement of Benefits goes on to provide that Florida Blue will pay *participating* providers directly. *E.g.*, 2020 Statement of Benefits at 13; 2021 Statement of Benefits at 13. But as to non-participating providers like the ER Groups, Florida Blue will pay "benefits to [the enrollee], and [the enrollee] must pay the provider." *E.g.*, 2020 Statement of Benefits at 14; 2021 Statement of Benefits at 14. In other words, "[a]ccording to the Brochure, [Florida Blue] pays PPO providers and participating providers directly. For non-participating providers like [the ER Groups], however, [Florida Blue] must pay the patient directly." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 357 (5th Cir. 2019). Accordingly, under the Service Benefit Plan terms, Florida Blue is not required to pay any benefits directly to the ER Group.

f.      Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich*, 804 F.3d at 1092. All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092. Carriers of experience-rated FEHBA plans – such as the Service Benefit Plan (*see, e.g.*, 2013

Master Contract § 3.3(a)) – do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury.  Instead, the premiums for the Service Benefit Plan are placed into a special letter of credit account within the U.S. Treasury fund.  48 C.F.R. § 1632.170(b)(1); *see also id.* § 1652.232-71(d).  The Blue Cross and Blue Shield companies administering the Service Benefit Plan, such as Florida Blue, then draw directly from the letter of credit account in the U.S. Treasury fund to pay for benefit claims and allowable administrative expenses.  48 C.F.R. §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092.  Any Service Benefit Plan premiums that are not used to pay benefits and administrative expenses remain the property of the government, and are not paid to the carrier.  *See, e.g.*, 2013 Master Contract § 3.3; *Helfrich*, 804 F.3d at 1092.  An experience-rated carrier's profit, if any, comes from a separate, negotiated service charge.  *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990) ("The service charge is the only profit element . . . [an experience-rated] carrier may not make a profit on the premium charges themselves."), *aff'd*, 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4; *Helfrich*, 804 F.3d at 1092.

g.    FEHBA contains a broad preemption provision that states: "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1) (2000) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366).  "[U]nder § 8902(m)(1) as it now reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'"  *Empire*, 547 U.S. at 686.

## II.    GROUNDS FOR REMOVAL

12.    The inclusion of claims relating to Service Benefit Plan enrollees or Medicare Advantage plan enrollees makes the Complaint removable for two independent reasons.  First, based on the presence of even a single claim involving a Service Benefit Plan enrollee or a Medicare Advantage plan enrollee, the entire Complaint is removable under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).  Second, the Complaint is removable pursuant to 28 U.S.C. § 1441 because there is federal question jurisdiction in this Court.

### A.    The Federal Officer Removal Statute

13.    This action is removable under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), which authorizes removal of an action against "any officer (or person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).

### i.    Federal Officer Removal Based on FEHBA Claims

14.    Courts – including the Eleventh Circuit – now routinely find that suits against health insurance companies administering the Service Benefit Plan are removable under the Federal Officer Removal Statute.  *See, e.g.*, *St. Charles Surgical Hosp.*, 935 F.3d 352 (Blue Cross and Blue Shield company administering the Service Benefit Plan properly invoked section 1442(a)(1)); *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1256 (9th Cir. 2017) (same); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1235 (8th Cir. 2012) (same); *AAOT*, 2005 WL 6717869, at *2 (same); *Brady*, 2019 WL 3206871, at *3 (same); *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *10-17 (C.D. Cal. Sept. 30, 2016) (same); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1063-67 (S.D. Cal. 2016) (same); *Owens v. Health*

*Care Serv. Corp.*, No. CV 16-95, 2016 WL 7675406, at *3-5 (D. Mont. Dec. 16, 2016) (same);

*Bell v. Blue Cross & Blue Shield of Okla.*, No. 14-CV-05046, 2014 U.S. Dist. LEXIS 155723

(W.D. Ark. Nov. 3, 2014), *aff'd*, 823 F.3d 1198 (8th Cir. 2016) (same); *Ala. Dental Ass'n v. Blue*

*Cross & Blue Shield of Ala., Inc.*, No. 05-cv-01230, 2007 U.S. Dist. LEXIS 685, at *21-25 (M.D.

Ala. Jan. 3, 2007) (same); *accord Cal. Spine & Neurosurgery Inst. v. Nat'l Ass'n of Letter*

*Carriers Health Benefit Plan*, No. 20-cv-08511-VC, 2021 WL 2908676 (N.D. Cal. July 12,

2021) (carrier of different FEHBA plan properly used Federal Officer Removal Statute in

removing lawsuit filed by medical provider). *Tantuwaya* dealt with a provider of emergency

services, and there the court held that claims nearly identical to those here were removable under

the Federal Officer Removal Statute. 169 F. Supp. 3d at 1063-67. And *Tantuwaya*, along with

*St. Charles Surgical Hospital* and *AAOT*, involve allegations nearly identical to the ER Groups'

assertion here that a state law requires a Service Benefit Plan administrator to pay an out-of-

network provider directly.

15.    The federal officer removal statute "'grants independent jurisdictional grounds

over cases involving federal officers where a district court otherwise would not have

jurisdiction.'" *Jacks*, 701 F.3d at 1230 (quoting *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th

Cir. 1984)). The Supreme Court has long admonished that § 1442 is to be "liberally construed."

*Colorado v. Symes*, 286 U.S. 510, 517 (1932). "The right of removal is 'absolute for conduct

performed under color of federal office,' and the 'policy favoring removal "should not be

frustrated by a narrow, grudging interpretation of § 1442(a)(1)."'" *Goncalves*, 865 F.3d at 1244

(citation omitted). Courts have a "duty to 'interpret Section 1442 broadly in favor of removal.'"

*Id.* (citation omitted). Whether federal officer removal jurisdiction exists must be assessed

"'without a thumb on the remand side of the scale.'" *Latiolais v. Huntington Ingalls, Inc.*, 951

F.3d 286, 290 (5th Cir. 2020) (en banc) (citation omitted).   Congress also signaled the importance of the right to removal under § 1442 by making remands of cases removed under it one of the few types of remands reviewable on appeal.  *See* 28 U.S.C. § 1447(d).

16.     "[R]emoval of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute."  *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016), *overruled on other grounds*, *Latiolais*, 951 F.3d at 296 n.9.

17.     To invoke the federal officer removal statute, a removing party must show:  (1) it is a "person" within the meaning of the statute; (2) a causal nexus exists between the plaintiff's claims and the actions the removing party allegedly took while acting under a federal officer's direction;[2] and (3) that the removing party has a colorable federal defense to the plaintiff's claims.  *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427-28 (11th Cir. 1996).  Here, each of these elements is satisfied.

(A)  *Florida Blue is a "Person" Under the Statute*

18.     Florida Blue satisfies the first requirement of federal officer removal because "[a] health plan insurer contracting with a government agency under a federal benefits program is considered a 'person acting under' a federal officer."  *AAOT*, 2005 WL 6717869, at *2 (quoting *Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 56-58 (5th Cir. 1975) (finding § 1442(a)(1) jurisdiction over a claim by a physician against a health insurer operating under Medicare); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.4 (9th Cir. 2014) (explaining that government contractors qualify as "persons" under the statute); *Jacks*, 701 F.3d at 1230 n.3

---

[2]     The Federal Officer Removal Statute was expanded in 2011, and several Circuits have now eschewed the already liberal "causal nexus" test for an even broader "connection" test.  *See, e.g.*, *Latiolais*, 951 F.3d 286.  It does not appear that the Eleventh Circuit has addressed the issue, and Florida Blue assumes for present purposes (but does not concede) that the causal nexus would continue to apply.

(noting that "the 'person' contemplated by the federal officer removal statute includes corporations"); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (stating that "corporate entities qualify as 'persons' under § 1442(a)(1)").

> (B) *Florida Blue Was Acting Under a Federal Agency*
> *and There Is a Causal Nexus Between the Claims Against*
> *Florida Blue and Its Action Taken Under Color of Office*

19.    The second factor also is met.  As pertinent to 28 U.S.C. § 1442(a)(1), the ER Groups are suing Florida Blue in connection with actions performed under the direction of a federal agency for Florida Blue's actions in processing and paying claims for benefits for services rendered to enrollees in the Service Benefit Plan, including determining the proper amount payable.  This case is thus one against or directed to persons acting under federal officers (*i.e.*, against or directed to Florida Blue, acting under OPM) for or relating to their actions under color of federal office (*i.e.*, relating to Florida Blue's obligations under the OPM-BCBSA contract governing the Service Benefit Plan).  A defendant is deemed to act under the direction of a federal agency and federal officers where the actions at issue were taken in the course of administering a federal program over which a federal agency has control or supervision.  *See AAOT*, 2005 WL 6717869, *2.  Government contractors may remove a case pursuant to the Federal Officer Removal Statute where "the acts for which they are being sued . . . occurred because of what they were asked to do by the Government," even if the acts were not "specifically contemplated by the government contract."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137-138 (2d Cir. 2008).  Here, Florida Blue "help[s] the government fulfill the basic task of establishing a health benefits program for federal employees.  OPM has direct and extensive control over these benefit contracts under the FEHBA."  *Jacks*, 701 F.3d at 1233.  "[T]he benefit payment process [is] a process over which OPM exerts regulatory control."  *Id.*; *see also St.*

*Charles Surgical Hosp.*, 935 F.3d at 355-56 (FEHBA carrier acts under OPM); *Cal. Spine & Neurosurgery Inst.*, 2021 WL 2908676, at *3-5 (FEHBA carrier and its subcontractor act under OPM).

20.     Also relevant to the second requirement, there is a causal nexus between Florida Blue's actions under OPM and the ER Groups' claims in this case.  The ER Groups sue Florida Blue expressly because of actions taken in the course of administering the Service Benefit Plan – again, the ER Groups' claims arise out of Florida Blue's processing and paying claims for benefits under the Service Benefit Plan and Florida Blue's determination of the amounts payable under the express terms of the Service Benefit Plan.  On this basis, the ER Groups' allegations are causally connected to Florida Blue's actions under the direction of a federal agency and its officers.  *See Jacks*, 701 F.3d at 1230 n.3 (finding the requisite causal connection).  It is "'sufficient' for a federal officer in a civil suit to establish the requisite causal connection by showing that the officer's 'relationship to [the plaintiff] derived solely from [the officer's] official duties.'"  *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).  "The hurdle erected by [the causal nexus] requirement is quite low."  *Isaacson*, 517 F.3d at 137-38; *see also Goncalves*, 865 F.3d at 1244 (quoting *Isaacson*).  "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties."  *Isaacson*, 517 F.3d at 137-38 (emphasis added).  That is certainly the case here.  Indeed, as it relates to Service Benefit Plan enrollees, all of Florida Blue's alleged conduct in this case was done while performing its official duties for OPM.

(C) *Florida Blue Has Colorable Defenses*

21.     Finally, the third factor is also met because Florida Blue has colorable federal defenses to the ER Groups' claims.  Here, Florida Blue has at least three separate colorable federal defenses:

a.     First, the ER Groups' claims are preempted by FEHBA's broad express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning coverage or benefits shall supersede state law.  *See, e.g.*, *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017); *St. Charles Surgical Hosp.*, 935 F.3d at 357-58 (5th Cir. 2019); *Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 253-55 (5th Cir. 2016); *Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking & Fin.*, 791 F.2d 1501, 1505 (11th Cir. 1986); *Tantuwaya*, 169 F. Supp. 3d at 1067-70 (medical provider's state law statutory claims for payment for emergency services rendered to Service Benefit Plan enrollee preempted); *Inspire Malibu*, 2016 U.S. Dist. LEXIS 136244, at *20 n.2 (provider's claims for unjust enrichment, "for recovery of payment for services rendered," and for quantum meruit preempted); *Zipperer v. Premera Blue Cross Blue Shield of Alaska*, No. 15-CV-00208, 2016 WL 4411490, at *4-6 (D. Alaska Aug. 16, 2016) (provider's claims for allegedly failing to pay benefits preempted); *Lieberman v. Nat'l Postal Mail Handlers Union*, 819 F. Supp. 344, 349 (S.D.N.Y. 1993) (independent claims brought by provider who sought "payment for services rendered to Plan enrollees" were "preempted under 5 U.S.C. § 8902(m)(1)").  Here, the preemptive terms of the FEHBA contract (and the incorporated Statement of Benefits) include the above-described provisions that:  (1) set forth the amount the Service Benefit Plan will pay in connection with services rendered by out-of-network professional providers of emergency services; (2) define the proper recipients of Service Benefit Plan payments; and (3) set forth an

exclusive process for challenging benefit denials and the limited remedies available under that process.  Even if the ER Groups' state law claims were are entirely consistent with the federal contract terms (and they are not) they would still be preempted.  *Empire*, 547 U.S. at 686.

b.      Second, there is a colorable defense of sovereign immunity because, among other reasons, any payment Florida Blue makes that is related to the treatment of enrollees in the Service Benefit Plan – whether or not those payments are characterized as benefit payments under the Service Benefit Plan – comes from the federal Treasury.  *See Inspire Malibu*, 2016 U.S. Dist. LEXIS 136244, at *17-20 (dismissing state law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Tantuwaya*, 169 F. Supp. 3d at 1070-71 ("Any recovery against Blue Shield in this case would come from the funds in the federal treasury.  The United States cannot be sued without its consent and the United States has not waived sovereign immunity in this case . . . ."); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *4-5 (E.D. La. Sept. 30, 2014) (dismissing state-law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP* v. *Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 756 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 272 (5th Cir. 2014) (citing *Innova*); *Cal. Spine & Neurosurgery Inst.*, 2021 WL 2908676, at *9 (sovereign immunity is colorable federal defense).

c.      Third, the ER Groups' state-law claims are displaced by federal common law, which governs the federal regulations and contracts at the heart of this issue, particularly since the state laws on which the ER Groups rely directly contradict the federal Service Benefit Plan terms and would also undermine the nationwide uniformity that Congress intended under

FEHBA.  *See Helfrich*, 804 F.3d at 1095-1104; *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996); *Am. Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 643 (9th Cir. 1961).  The court in *Jacks* found each of these three defenses – preemption, sovereign immunity, and displacement by federal common law – to be colorable for purposes of the Federal Officer Removal Statute.  *Jacks*, 701 F.3d at 1235.

### ii.  Federal Officer Removal Based on Medicare Claims

22.     Similar to health insurers administering FEHBA plans, courts have held that insurers can remove claims under the federal officer removal statute where the claims are based on the insurer's contract with CMS to administer Medicare benefits through Medicare Advantage plans.  *See Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1268, 1269–70 (S.D. Fla. 2014); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391–92 (S.D. Fla. 2014).   The three-part analysis applied above with respect to health insurers administering FEHBA plans is equally applicable in the Medicare context.  *Id.*  And once again, each element is satisfied.

#### (1) *Defendants are "Persons" Under the Statute*

23.     First, Defendants meet the "person" requirement because, as stated above (*see supra* ¶ 18), a corporation is a person within the meaning of the federal officer removal statute.

#### (2) *Defendants Were  Acting Under a Federal Agency and There Is a Causal Nexus Between the Claims Against Defendants and Their Actions taken Under Color of Office*

24.     Second, Defendants also meet the requirement of "acting under the direction of a federal agency."   Florida Blue and HOI each contracted with CMS to administer Medicare benefits on behalf of the federal government for Medicare enrollees in the Medicare Advantage plans offered by Florida Blue and HOI.  *See* Norman Decl., at ¶ 41.

25.     Florida Blue and HOI operate pursuant to these contracts and pursuant to comprehensive regulations promulgated by CMS. *See, e.g.*, 42 C.F.R. § 422.504 (2014). Accordingly, Defendants were acting on behalf of CMS when they allegedly denied or underpaid the Medicare benefits at issue here.

26.     In addition, various of various of the ER Groups' claims concern Defendants' denial of payments or alleged underpayment, which Defendants did pursuant to their authority and obligations under federal law.  Determining whether a claim is based on a health insurer's actions under its contract with CMS requires determining whether the insurer made coverage determinations under Medicare Advantage plans, or made payments to patients or providers in accordance with the schedules of benefits conferred by the Medicare plans. *See Einhorn*, 43 F. Supp. 3d at 1270 (finding federal officer removal jurisdiction where insurer had acted as a Medicare Advantage Organization in seeking reimbursement for benefits paid on behalf of beneficiary); *Assocs. Rehab. Recovery*, 2014 WL 7404547, at *2 (finding, where claim was based on insurer's denial of Medicare benefits, that "Plaintiff's claims concern Defendant's denial of payments, payments which it denied pursuant to its authority and obligations under federal law"); *Neurological Assoc.—H. Hooshmand, M.D., P.A. v. Blue Cross/Blue Shield of Fla., Inc.*, 632 F. Supp. 1078, 1080 (S.D. Fla. 1986) (claim based on insurer's compliance with the Department of Health and Human Services' instruction to immediately suspend payments on all assigned claims submitted by Plaintiffs).

27.     Therefore, where a Medicare plan is involved, even claims styled as contract claims by providers against insurance companies are interpreted as "a claim for reimbursement of benefits under the Medicare Act, regardless of whatever contractual relationship formed the basis of the contract claim." *Masey v. Humana, Inc.*, 06-CV-1713, 2007 WL 2788612, at *4

17

(M.D. Fla. Sept. 24, 2007) (holding that a plaintiff may not make "artificial distinctions" in "creatively styling [her] benefits claims as collateral [claims] not 'arising under' Medicare.").

(3) <em>Defendants Have Colorable Federal Defenses</em>

28.     The third requirement is likewise met because Florida Blue and HOI have a federal defense due to, among other things, the ER Groups' failure to exhaust administrative remedies.

29.     If a lawsuit seeks to recover on any claim arising under the Medicare Act, the claim "must first be brought through the DHHS administrative appeals process before it can be taken to federal court." *Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1391 (quoting *Lifestar Ambulance Serv., Inc. v. HHS,* 365 F.3d 1293, 1296 (11th Cir.2004)); *see also Cochran v. U.S. Health Care Financing Admin.*, 291 F.3d 775, 778-79 (11th Cir. 2002) ("The Medicare statute requires that any lawsuit which seeks 'to recover on any claim arising under' it must first be brought through the Department of Health and Human Services' administrative appeals process before it can be taken to federal court.").

30.     Courts in the Eleventh Circuit routinely hold that a plaintiff's failure to exhaust administrative remedies under the Medicare Act is a colorable defense for the purpose of removal under federal officer jurisdiction.  *See Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1393 (holding the plaintiff may file suit "only after Plaintiff has exhausted the administrative process"); *Einhorn*, 43 F. Supp. 3d at 1270 (finding that failure to exhaust administrative remedies was a colorable defense); *Manorcare Potomac v. Understein*, No. 02-CV-1177, 2002 WL 31426705, at *1 (M.D. Fla. Oct. 16, 2002) (holding that without any allegations that the administrative remedies were exhausted, or any evidence regarding administrative proceedings, that failure "rob[bed]" the court of subject matter jurisdiction).

18

31.     Here, the ER Groups have insufficiently alleged (indeed, they have not alleged at all) exhaustion of the applicable administrative remedies under the Medicare Act.

32.     Thus, Florida Blue and HOI have a colorable federal defense based on the ER Groups' failure to exhaust administrative remedies before bringing this suit.  For all of the foregoing reasons, the ER Groups' action is properly removed to this Court under the federal officer removal statute.[3]

33.     Therefore, federal officer removal jurisdiction is appropriate in this case.

**B.     Federal Question Jurisdiction**

34.     Aside from being removable under 28 U.S.C. § 1442(a)(1), the presence of claims involving Service Benefit Plan enrollees and Medicare plan enrollees also makes this case removable pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction existing under 28 U.S.C. § 1331.

35.     In *Empire*, the Supreme Court signaled that FEHBA matters will be governed by federal common law if there is a "significant conflict . . . between an identifiable federal policy or interest and the operation of state law."  547 U.S. at 693 (internal quotation marks and citation

---

[3]     Moreover, Florida Blue and HOI provided only those benefits as authorized by CMS and its approved Medicare plan. *See* 42 C.F.R. § 422.100(f) ("CMS reviews and approves [Medicare Advantage] benefits and associated cost sharing using written policy guidelines and requirements in this part and other CMS instructions to ensure [the following list of policy goals are met]."); *See also* Norman Decl. at ¶¶ 41–44. In light of that, federal jurisdiction exists through another federal defense to this action—the Medicare Act's preemption of claims. Congress drafted an express preemption clause with regard to Medicare Advantage Plans, like the one at issue here. 42 U.S.C. § 1395w 26 ("The standards established under this part shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations."); *see also Magnin*, 91 F.3d at 1428 (finding federal officer jurisdiction where"[a]t least part of Smith's defense is that he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law required"). Plaintiff's state law claims are preempted by the Medicare Act because they rely on the Defendants' administration of a Medicare Advantage plan.

omitted).  Federal common law did not govern in *Empire* because the parties' dispute was solely over factual issues associated with reimbursement and subrogation (such as whether the Service Benefit Plan properly calculated the reimbursement amount owed, *see id.* at 701); *Empire* did not involve an enrollee seeking to invoke a state law's operation so as to override OPM's regulations or the Service Benefit Plan terms.  *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 141 (2d Cir. 2005) ("Tellingly, Empire's briefs on appeal fail to mention a single state law or state-imposed duty that runs contrary to the federal interests asserted in this case.").  However, federal common law can displace state law and allow for federal jurisdiction if a dispute exists over the operation of a state law that conflicts with the OPM's regulations, the FEHBA Plan's terms, or with FEHBA's objectives.  *See id.* at 150-51 (Sack, J. concurring); *accord Empire*, 547 U.S. at 693 (citing concurring opinion of Judge Sack in Second Circuit disposition); *see also Blue Cross Blue Shield Health Care Plan of Ga., Inc. v. Gunter*, 541 F.3d 1320, 1322 nn.1 & 2 (11th Cir. 2008).

36.     Here, a significant conflict exists in this case between the operation of state law and federal policies and objectives because, according to the ER Groups, Florida state law would require that the Service Benefit Plan pay more in benefits than its terms allow and would require that all payments be made directly to the ER Groups.  In addition, because any amounts at issue would be paid from the federal Treasury, application of Florida state law (at least as the ER Groups would apply it) would take money out of the government's coffers.  Furthermore, Congress mandated nationwide uniformity in Service Benefit Plan administration.  Applying individual states' laws would result in enrollees in different states having different coverage and benefits in similar situations – a dis-uniformity contrary to Congress's objectives.  For precisely

these reasons, the Tenth Circuit in *Helfrich* found that federal common law applied to a case brought against a Service Benefit Plan administrator.  *See* 804 F.3d at 1095-1104.

37.     Because federal common law governs, the case raises a federal question and is removable to federal court.  *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (explaining that Section 1331's "statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin'") (citation omitted); *New SD, Inc.*, 79 F.3d at 955 (upholding removal jurisdiction because federal common law controlled dispute); *Rievley ex rel. Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1037 (E.D. Tenn. 1999) (upholding removal in FEHBA case because federal common law displaced state law); *Kight*, 34 F. Supp. 2d at 340-41 (same).

\* \* \*

38.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal has been filed contemporaneously with the Clerk of the Circuit Court for the 17th Judicial District in and for Broward County, Florida, and will be served contemporaneously on all counsel of record.

39.     As required by 28 U.S.C. § 1446(a), copies of all available state court process, pleadings, and orders are attached hereto as Composite Exhibit 3, including the state court docket.

Dated: October 15, 2021                     Respectfully submitted,

                                            HOGAN LOVELLS US LLP
                                            600 Brickell Avenue,  Suite 2700
                                            Miami, Florida  33131
                                            Telephone:     (305) 459-6500
                                            Facsimile:     (305) 459-6550

                                            By: /s/Allen P. Pegg
                                            Allen P. Pegg, Esq.

Florida Bar No.: 597821
allen.pegg@hoganlovells.com
Daniel Balmori
Florida Bar No.: 0112830
daniel.balmori@hoganlovells.com
William Homer
Florida Bar No.: 1011341
william.homer@hoganlovells.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 15, 2021, a true and correct copy of the foregoing

was served on Joseph Goldstein, Esq., Shutts & Bowen LLP, 200 East Broward Boulevard, Suite

2100, Fort Lauderdale, FL 33301, via E-mail: jgoldstein@shutts.com.

By:  /s/Allen P. Pegg