# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case. No. 21-CV-62139-SINGHAL/VALLE

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

      Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

      Defendants.

_____/

## **DEFENDANTS' MOTION TO DISMISS**

Defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("Florida Blue") and Health Options, Inc. ("HOI" and, together with Florida Blue, "Defendants"), by and through undersigned counsel, moves the Court for the entry of an Order dismissing the Complaint [ECF No. 1-1] for failure to state a claim.

## INTRODUCTION

In this lawsuit, Plaintiffs – collectively referred to in the Complaint as the "ER Groups" – seek to recover damages for Defendants' purported "pattern of dramatically underpaying" the ER Groups for unspecified "emergency medical services" that the ER Groups allegedly provided to Defendants' insureds. But the ER Groups' Complaint is defective for at least four reasons, each of which independently mandates dismissal.

As an initial matter, despite alleging that the damages at issue "total more than $53,000,000," the ER Groups make no effort whatsoever to identify with any specificity the actual claims for reimbursement that they contend to be at issue. All that the ER Groups manage to allege is that they have treated "thousands" of Defendants' insureds "since 2016." Contrary to the basic pleading standards set forth in Rule 8, Fed. R. Civ. P., the Complaint entirely fails to identify the underlying claims, which alone is grounds for dismissal.

Notwithstanding this deficiency, Defendants have endeavored to determine, for themselves, the claims that would be at issue in the instant action. And certain of those claims relate to the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14, or Title XVII of the Social Security Act, 42 U.S.C. § 1395 *et seq*. (the "Medicare Act"), and thus are preempted by those expansive federal statutory regimes. Put simply, the ER Groups cannot plead state-law causes of action for claims for which there is an exclusive federal remedy.

But that is not all. The Complaint also is an impermissible shotgun pleading, which is yet another independent ground for dismissal. And even beyond that technical deficiency, each of the

ER Groups' specific causes of action independently fail to state a claim upon which relief can be granted.  For these reasons, and as explained below, the Complaint should be dismissed.

## BACKGROUND

According to their Complaint, the ER Groups are entities that allegedly provide emergency medicine services via their contracted medical providers, *i.e.*, doctors, nurse practitioners, and physician assistants with whom the ER Groups contract.[1]  Compl. ¶¶ 1, 3.  The ER Groups also contract with certain hospitals to staff "those hospitals' emergency departments with physicians and other clinic providers."  *Id.* ¶ 28.

From 2016 to the present, the ER Groups allege that they provided emergency medical services to patients enrolled in health plans insured or administered by Defendants.  *Id.* ¶¶ 1, 4, 31. The ER Groups have no contracts with Defendants; that is, they are "out-of-network" providers and not "in-network" participating or preferred providers, and the ER Groups have no negotiated rates with Defendants.  *Id.* ¶¶ 29-30, 39, 62.  As such, the ER Groups assert that they "submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Florida Blue Members' health insurance plans and applicable laws."  *Id.* ¶ 29.

The ER Groups allege that Defendants paid the ER Groups less than the amounts required under Florida law.  *Id.* ¶¶ 1, 3-7, 26, 36, 41, 43.  Specifically, the ER Groups allege that Defendants were required to pay "fair market value" for the services the ER Groups rendered, *id.* ¶ 40, and assert that their billed charges ***are*** the fair market value of those services.  *Id.* ¶¶ 61-63, 78.

Based on these core allegations, the ER Groups assert five causes of action:  unjust enrichment (Count I), quantum meruit (Count II), violation of Florida Statute §§ 627.64194 and

---

[1]     For purposes of this Motion to Dismiss only, Defendants accept the well-pled allegations of the ER Groups' Complaint as true.  *See, e.g.*, *Howard v. Kerzner Intern. Ltd.*, No. 12-CV-22184, 2013 WL 5353417, at *3 (S.D. Fla. 2013).

627.513 (Count III), breach of contract (*i.e.*, the underlying health plans between Defendants and their members or enrollees, to which the ER Groups claim to be third-party beneficiaries) (Count IV), and declaratory judgment (Count V).  Each should be dismissed.

## LEGAL STANDARD

As this Court is aware, a complaint may not survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, meaning that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  And while the Court must accept a plaintiff's well-pleaded facts as true, it need not accept "conclusory allegations, unwarranted deductions of fact[]," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), or "legal conclusion[s] couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted).

In addition, on a Rule 12(b)(6) motion, the Court may consider documents attached to the motion without converting it into one for summary judgment if, as here, the documents are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."  *Hi-Tech  Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1191 (11th Cir. 2018) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)); *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (holding that the district court appropriately considered insurance plan documents in dismissing plaintiff's claims).  Applied here, this means that in deciding this Motion to Dismiss, the Court can consider the insurance and benefits-related documents attached to the

Declaration filed in support of Defendants' Notice of Removal because those documents are, in fact, referred to in the Complaint (*see, e.g.*, Compl. ¶ 1), central to the ER Groups' claims, and of undisputed authenticity.  *Id.*  Those documents confirm that the universe of "claims" for which the ER Groups seek reimbursement via this action includes claims under FEHBA and Medicare benefits plans.  *See* Declaration of A. Norman (the "Norman Decl.") [ECF No. 1-3].

## ARGUMENT

I.   **The Complaint Fails to State a Claim Because the ER Groups Fail to Specify the Essential Details of the Underlying Claim**

As a threshold matter, the ER Groups fail to provide the essential details necessary to state a claim.  In cases such as this, where a provider disputes coverage and reimbursement determinations for beneficiaries of insurance plans, the provider must allege details about the services for which it seeks reimbursement to state a valid cause of action.  As demonstrated below, Courts regularly dismiss complaints where the claims that underlie the causes of action are not pled with relative particularity.

Specifically, in the context of provider disputes over claims for payment, courts require providers to plead the underlying details of the claims, such as the identity of the patient who received the service, the medical service provided, the plan that covered the patient, and the condition that was treated.  *See, e.g., Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, No. 10-CV-81589, 2011 WL 2134534, at *3 (S.D. Fla. May 27, 2011) (dismissing complaint for failure to provide this basic information).[2]

---

[2]   *See also United Surgical Assistants, LLC v. Aetna Life Ins., Co.*, No. 8:14-CV-211, 2014 WL 5420801, at *3 (M.D. Fla. Oct. 22, 2014) (same).  Recently, several courts in the Eleventh Circuit have emphasized the importance of identifying such details in order to provide the defendant with an ability to effectively respond to the complaint (and, if needed, for the Court to address such response).  *See Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 17-CV-3692, 2018 WL 624882, at *4 (N.D. Ga. Jan. 30, 2018) (dismissing plaintiff's complaint because it failed to "allow a reasonable person to ascertain 'the intended benefits, a class of

For instance, in *Polk Medical Center*, a healthcare provider sued Blue Cross and Blue Shield of Georgia to recover insurance benefits allegedly owed for services provided to that insurer's beneficiaries under both federally governed and non-federally governed health insurance plans. *See Polk Med. Ctr., Inc.*, 2018 WL 624882, at *4. The court agreed with the defendant that the plaintiff-provider's failure to identify the plans at issue and the claims which pertain to those plans did not allow the defendant-insurer to effectively respond to the complaint. *Id.* at *3. As such, the court dismissed the complaint and ordered the plaintiff-provider to adequately identify the underlying claims, including distinguishing between the claims that fell under the federally governed plan and the others that did not. *See id.* at *3 (noting that the plaintiff's complaint "also fails to distinguish between patients who were covered by ERISA plans and the patients who were covered by non-ERISA plans, which is a 'crucial distinction'").[3]

In this case, **none** of the claim's information is provided with anything beyond an extreme level of generality.[4] The closest that the ER Groups get is to allege that Defendants breached certain obligations with respect to unspecified claims involving supposed "emergency medical services" that were purportedly provided to Defendants' members and/or enrollees. *E.g.*, Compl. ¶¶ 4, 46. But nowhere do the ER Groups allege what those "emergency medical services" are,

---

beneficiaries, the source of financing, and procedures for receiving benefits,'" which lay at the heart of its causes of action); *see also Apex Toxicology, LLC v. United Healthcare Ins. Co.*, 17-CV-61840, 2018 WL 3057946, at *6 (S.D. Fla. Apr. 23, 2018) (dismissing complaint where plaintiff failed to "specifically allege the existence of coverage" that formed the basis for its claim).

[3]    *See also Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 18-CV-2873, 2019 WL 2567979, at *5 (M.D. Fla. June 21, 2019) ("[D]ismissal of the complaint is warranted because the plaintiff fails to reasonably identify the claims supporting this action and instead pleads only generic allegations."); *id.*, 2020 WL 5898978, at *10 (M.D. Fla. Apr. 7, 2020) ("The plaintiff explains that a 'claims spreadsheet was provided to Defendants,' . . . but the plaintiff neither attaches the spreadsheet to the record nor specifies whether the spreadsheet includes the basis for denial.").

[4]    That the ER Groups may have provided certain claims information to Defendants prior to filing suit does not alter this analysis; any such information still is not part of the ER Groups' pleading, as required, and is wholly unknown to the Court.

why such services qualify as "emergency services" under the statute, or the identity of the patients, the medical services provided, the conditions treated, or even the specific plan to which each patient subscribed.  *See generally* Compl.  This is facially insufficient to state a claim for relief.  *See Polk Med. Ctr., Inc.*, 2018 WL 624882, at *4.

## II.     Preemption Under FEHBA

In addition, because the Complaint concerns the alleged underpayment of claims for which FEHBA provides the exclusive remedy, the Complaint must be dismissed as pled.

### A.  *Certain of the ER Groups' Claims "Relate to" FEHBA and Are Thus Preempted by Federal Law*

FEHBA "create[s] a comprehensive program of subsidized health care benefits for federal employees and retirees."  *Muratore v. U.S. Office of Pers. Mgmt.*, 222 F.3d 918, 920 (11th Cir. 2000).  Crucially, FEHBA contains a broad preemption clause stating that "the terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1); *see also La Ley Recovery Sys.-OB, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 14-CV-23568, 2015 WL 12781030, at *2 (S.D. Fla. Jan. 30, 2015) ("First, the Court finds Congress intended for the FEHBA to completely preempt state law."); *Truell v. Blue Cross & Blue Shield of Fla., Inc.*, No. 08-CV-103, 2008 WL 11336248, at *3 (M.D. Fla. Mar. 31, 2008) ("Defendant argues that Plaintiff's claims are preempted by the regulatory provisions dealing with FEHBA enrollment and the FEHBA contract terms governing benefit denial disputes.  The Court agrees.").  Under § 8902(m)(1), "state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits.'"  *Empire HealthChoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 686 (2006); *see also La Ley Recovery Sys.-OB, Inc.*, 2015 WL

12781030, at *2 (dismissing the plaintiff's complaint "because the application of state remedies in the context of FEHBA benefits disputes conflicts with [FEHBA's remedial] scheme"); *Barnes v. Humana, Inc.*, No. 09-CV-524, 2009 WL 10670047, at *3 (M.D. Fla. May 26, 2009) (concluding that plaintiff's claims based on a right to recover benefits under the FEHBA plan were intertwined with the benefits decision and thus preempted).

Even where, as here, a plaintiff "couches his claims as ones for . . . breach of contract," they may be "seeking review of Defendant's decision" on coverage, where those claims are "intertwined with the benefits decision." *Nail v. Gov't Emps. Health Ass'n, Inc.*, 17-CV-1462, 2018 WL 3151681, at *4 (M.D. Fla. Apr. 23, 2018) (dismissing complaint for declaratory judgment and breach of contract as preempted by FEHBA). And in this case, as in *La Ley Recovery Systems-OB, Inc.* and *Truell*, the ER Groups have filed a lawsuit for damages related to benefits to which they claim they are entitled under various patients' FEHBA-based plans. *See* Norman Decl., at ¶¶ 18-40. The ER Groups' lawsuit thus encompasses claims for FEHBA-based benefits and is preempted. *See La Ley Recovery Sys.-OB, Inc.*, 2015 WL 12781030, at *2; *Barnes v. Humana, Inc.*, No. 09-CV-524, 2009 WL 10670047, at *3 (M.D. Fla. May 26, 2009) (concluding that plaintiff's claims based on a right to recover benefits under the FEHBA plan were intertwined with the benefits decision and thus FEHBA preempted them).

B. *The Complaint Should Be Dismissed Because the ER Groups Have Not Alleged Exhaustion of Administrative Remedies Under FEHBA*

The "comprehensive [FEHBA] program of subsidized health care benefits for federal employees and retirees" requires extensive process before a claimant can bring suit in federal court. *Muratore*, 222 F.3d at 920. Under it, the federal government administers the health care benefits program "'by contracting with qualified private carriers to offer a variety of health care plans, 5 U.S.C. § 8902 . . . and by interpreting the plans to determine the carrier's liability in an individual

case, [5 U.S.C.] § 8902(j).'" *Id.* (quoting *Kobleur v. Grp. Hospitalization & Med. Servs., Inc.*, 954 F.2d 705, 709 (11th Cir. 1992)).  If a carrier denies coverage, then the claimant must appeal for review of the denial.  *Id.*  If the carrier upholds the denial, then, and only then, may the claimant appeal that denial to the federal district court.  *Id.; see also Nail*, 2018 WL 3151681 at *4.  And even then, under 5 C.F.R. § 890.107(c), the claimant's recovery in federal district court is strictly limited to "a court order directing [the defendant] to require the carrier to pay the amount of benefits in dispute."  Here, the ER Groups fail to plead any facts indicating that they performed these required appeals processes or that they exhausted its remedies at all, as they must.  Therefore, the ER Groups' claims fail.

### III.    Preemption Under the Medicare Act

Like the FEHBA-based claims, the Complaint also implicates Medicare Act-based claims that are similarly preempted.

#### A.   *Certain of the ER Groups' Claims "Arise Under"* *the Medicare Act and Are Preempted by Federal Law*

The threshold question to determine whether a claim is preempted is whether the claim arises under the Medicare Act.  *See Kaye v. Humana Ins. Co.*, No. 08-CV-80819, 2009 WL 455438, at *7 (S.D. Fla. Feb. 23, 2009).  The Supreme Court has developed two primary preemption tests to determine whether a claim so arises.  *Id.* (discussing *Heckler v. Ringer*, 466 U.S. 602 (1984)).  "[T]he Court must determine whether the claim is 'inextricably intertwined with [a] claim[ ] for [Medicare] benefits' *or* is 'essentially one requesting payment of [such] benefits.'" *Id.* (quoting *Ringer*, 466 U.S. at 614, 620).  Claims that arise under the Medicare Act are preempted and must be presented through the administrative process to the U.S. Department of Health and Human Services ("HHS") Secretary.  *See id.* at *8.

In *Associates Rehabilitation Recovery*, the district court applied the *Ringer* analysis to

determine whether the plaintiff's claims arose under the Medicare Act so as to be preempted. *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1392 (S.D. Fla. 2014). In that case, after entering into a contract with Humana Medical Plan, Inc. ("Humana") to provide rehabilitation services to enrollees of Humana's insurance plans, the provider treated several enrollees of Humana's Medicare plans. *See id.* at 1390. Humana denied the relevant claims as not medically necessary, and determined that certain services were not covered under the Medicare Act or the insureds' Medicare Advantage plan. *See id.* The provider then brought an action for damages and a declaratory judgment related to that denial of benefits, arguing that its claims were not Medicare-preempted. *See id.*

Granting Humana's motion to dismiss, the district court held that the plaintiff's claims arose under the Medicare Act and must, at least initially, be adjudicated in the Medicare administrative process—not in federal court. *See id.* at 1392-93. The district court recognized that even though the claims as pled in that action related to an ancillary contract between the provider and Humana, it would weaken the Medicare system if Medicare Advantage Organizations had to pay benefits in excess of those included in the bids they had submitted to HHS's Centers Medicare & Medicaid Services. *See id.* at 1392 ("Decisions on whether payments should or should not be made . . . affect the government's savings and the enrollee's premiums and benefits received. Therefore, the way in which claims for benefits are resolved will have a financial impact on the government and enrollees.").

The court found that the plaintiff's claims arose under the Medicare Act for two additional reasons as well. First, the resolution of the plaintiff's claims would have required analysis of the Medicare Advantage plan documents, even though the ancillary agreement at issue was not a plan document. *See id.* at 1393. Second, the court explained that the "[d]efendant's decisions to deny claims were dependent on compliance with the Medicare Act." *Id.* (explaining that Humana was

only required to provide medically necessary services under Medicare).  Thus, as noted in *Kaye*, the court found that regardless of their labels, the state-law claims arose under the Medicare Act and were preempted.  *See Kaye*, 2009 WL 455438, at *8.

Like the provider's claims in *Associates Rehabilitation Recovery*, certain of the ER Groups' claims here also arise under the Medicare Act and are thus preempted.  For the time period covered by this lawsuit, Defendants have received and administered various claims from the ER Groups for individuals who are beneficiaries of health plans subject to the Medicare Act.  *See, e.g.*, Norman Decl., at ¶¶ 41-52.  Thus, Plaintiff's lawsuit satisfies both of the two primary tests under *Ringer* because it explicitly encompasses claims for Medicare benefits and, at the least, is inextricably intertwined with such a claim for benefits.  *See Kaye*, 2009 WL 455438, at *7.  As such, this lawsuit poses a greater potential financial impact on the Medicare system than the single claim in *Associates Rehabilitation Recovery* and should be dismissed as preempted.

### B. *The Complaint Should Be Dismissed Because the ER Groups Have Not Alleged Exhaustion of Administrative Remedies Under the Medicare Act*

In addition, because federal law governs at least a portion of the ER Groups' claims, the ER Groups must first exhaust administrative remedies provided by the HHS Secretary.  The Eleventh Circuit has held that "[j]udicial review of benefit determinations under the Medicare Act is authorized by 42 U.S.C. § 1395ff(b)(1), which provides for judicial review only after the Secretary renders a final decision on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for claims arising under the Social Security Act."  *Am. Acad. of Dermatology v. Dep't of Health & Human Servs.*, 118 F.3d 1495, 1497-98 (11th Cir. 1997) (footnote omitted).  "Judicial review of Medicare Act claims is circumscribed by 42 U.S.C. § 405(h), which provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, ***is the sole avenue for judicial review*** for all claims for benefits 'arising under' the Medicare Act."  *Id*. at 1498 (emphasis added) (footnote and citation

omitted).  District courts in this circuit have specifically held that "[a] lawsuit which seeks to recover on any claim 'arising under' the Medicare Act must first be brought through the [HHS] administrative appeals process before it can be taken to federal court."  *Assocs. Rehab. Recovery*, 76 F. Supp. 3d at 1391.  And that administrative appeals process must result in a "final decision" before any judicial action may be commenced.  *See Am. Acad. of Dermatology*, 118 F.3d at 1498.  That requirement consists of two elements: (1) "presentment," which is a non-waivable jurisdictional prerequisite that a benefits claim must be presented to the HHS Secretary; and (2) "exhaustion," a prerequisite that a claimant fully pursue all available administrative remedies before seeking judicial review.  *See id.*

The administrative procedure that a Medicare Advantage Organization uses to address a claim for Medicare benefits depends on whether the claim challenges an "organization determination" or is considered a "grievance."  *Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.*, 08-CV-847, 2011 WL 6780870, at *6 (M.D. Fla. Dec. 27, 2011), *aff'd in part*, 504 F. App'x 855, 856, 857 n.3 (11th Cir. 2013) (affirming dismissal for lack of jurisdiction).  If a claimant disagrees with an "organization determination," the claimant can request that the organization reconsider its decision, which the Medicare regulations require that the claimant do no later than sixty days after the organization determination.  *See id.* at *7 (citing 42 U.S.C. § 1395w–22(g)(2); 42 C.F.R. § 422.578); 42 C.F.R. § 422.582(b).  If, following such reconsideration, the organization does not reverse its earlier adverse decision, the organization must send the case to an outside independent review organization.  *See Acquisto*, 2011 WL 6780870, at *7 (citing 42 U.S.C. § 1395w–22(g)(4); 42 C.F.R. § 422.592).  If the outside organization upholds the determination, and the amount in controversy is sufficient, the claimant may request a hearing before an administrative law judge ("ALJ").  *See id.* (citing 42 U.S.C. § 1395w–22(g)(5); 42 C.F.R. § 422.600(a)).  Then, if the claimant disagrees with the ALJ's decision,

the claimant may request that the Medicare Appeals Council review the case. *See id.* (citing 42 C.F.R. § 422.608). Only after *all* of those steps are completed may a party seek judicial review. *See id.* (citing 42 U.S.C. § 1395w–22(g)(5); 42 C.F.R. § 422.612).

Here, the ER Groups fail to plead *any* facts showing that they presented their Medicare-based claims to the HHS Secretary, or that they exhausted those administrate remedies. The Court should thus dismiss the Complaint. *See, e.g.*, *Am. Acad. of Dermatology*, 118 F.3d at 1497-98.

## IV.     **The Complaint Is a Shotgun Pleading**

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018). Shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* Accordingly, when a party files a shotgun pleading, "the district court should strike the pleading and instruct counsel to replead the case." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018).

Here, the ER Groups' Complaint is "the most common type" of an impermissible shotgun pleading because it "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). In fact, the first paragraph in each of the Complaint's five causes of action states: "[The ER Groups] hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above." Compl. ¶¶ 45, 52, 58, 65, 73. This is a quintessential shotgun pleading, and the Complaint should be dismissed and the ER Groups required to replead on this basis alone. *Jackson*, 898 F.3d at 1357.

Moreover, the Complaint impermissibly lumps both Defendants together in its allegations, and thereby the Complaint fails to plead any claim whatsoever with requisite particularity. For

instance, the ER Groups allege that both Defendants purportedly violated Sections 627.64194 and 627.513 of the Florida statutes.  *See* Compl. ¶¶ 58–64.  And this is just a sample.  This sort of impermissible, broad-brush pleading against the various defendants infects each of the causes of action asserted.  This is another basis for dismissal of the Complaint.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (holding complaint was a "quintessential 'shotgun' pleading" where it alleged "that 'the defendants' engaged in certain conduct, making no distinction among . . . defendants charged" despite the reality that "all of the defendants could not have participated in every act"); *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (affirming dismissal where the complaint "indiscriminately group[ed] the defendants together").

## V.   <u>Each Count of the Complaint Should Be Dismissed for Failure to State a Claim</u>

Even if the ER Groups' Complaint is not subject to dismissal for any of the foregoing reasons (which it is), each claim is nonetheless subject to dismissal because each claim, as pled, fails to state a claim upon which relief can be granted.

### A.   <u>*The ER Groups Fail to State a Claim for Unjust Enrichment*</u>

In Count I, the ER Groups assert a claim for unjust enrichment.  To state a claim for unjust enrichment under Florida law, a plaintiff must allege: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it."  *Commerce P'ship 8098 Ltd. P'ship v. Equity Consulting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).  Under well-established Florida law, the Complaint fails to satisfy these required elements.

As the Eleventh Circuit recently held:  "[T]he benefit conferred on the defendant [to state a claim for unjust enrichment under Florida law] must be a <u>direct</u> benefit."  *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x. 825, 830 (11th Cir. 2017) (affirming dismissal of unjust

enrichment claim for failure to allege a sufficiently direct benefit) (emphasis in original); *see also Kopel v. Kopel*, 117 So. 3d 1147, 1152–53 (Fla. 2013) (holding a plaintiff's payment of $1.8 million into two corporations in which the defendant had two-thirds ownership stake constituted an "indirect" benefit to the defendant that could not support an unjust enrichment claim), *rev'd on other grounds*, 2017 WL 372074 (Fla. Jan. 26, 2017); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (per curiam) (affirming dismissal of unjust enrichment claim due to the lack of a direct benefit conferred on defendant).

As Florida courts have recognized, a provider who provides treatment or a service to a person who has health insurance does ***not*** confer a benefit on the health insurance company sufficient to establish an obligation under a theory of unjust enrichment. This is true even if the insurance company is ultimately responsible for paying for that service pursuant to the terms of its contract with its insured. For instance, in *Peacock Medical Lab, LLC v. UnitedHealth Group, Inc.*, a laboratory testing facility provided laboratory services to the defendant insurance company's members. *See* No. 14-CV-81271, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015). When the facility disagreed with the amount the insurance company paid it for these services, the facility sued for (among other claims) unjust enrichment. *See id.* The Court dismissed the unjust enrichment claim because "a healthcare provider who provides services to an insured ***does not benefit the insurer.***" *Id.* (emphasis added). And *Peacock Medical Lab* is not an anomaly.[5]

---

[5]    *See, e.g.*, *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-CV-21895, 2013 WL 3810617, at *3-4 (S.D. Fla. July 22, 2013) (dismissing provider's unjust enrichment claim against health insurer because a provider "can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services"); *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 03–CV–1121, 2004 WL 6225293, at *5-6 (M.D. Fla. Mar. 8, 2004) (dismissing provider's unjust enrichment claim against health insurer because "as a matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies . . . [and] a third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit."); *A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 14–CV–310; 2015 WL

Here, the ER Groups fail to plausibly allege any cognizable direct benefit that they conferred on Defendants.  Instead, the ER Groups allege only that they "conferred a direct benefit on Florida Blue by providing valuable, covered, and medically necessary emergency medical services to Florida Blue Members."  Compl. ¶ 46.  Under established precedent, any purported benefit that the ER Groups conferred on Defendants' ***insureds*** is not a direct benefit to ***Defendants*** for purposes of a claim for unjust enrichment.  Therefore, Count I should be dismissed.

B.  <u>*The ER Groups Fail to State a Claim for Quantum Meruit*</u>

Likewise, the ER Groups' claim for quantum meruit in Count II should be dismissed.  "A cause of action for quantum meruit arises when an incomplete, but nevertheless extant, contract results in one party conferring a benefit with the expectation of compensation and it would be inequitable for the beneficiary not to compensate the provider."  *Adventist Health Sys.,* 2004 WL 6225293, at *4.  Such claims "arise out of circumstances in which parties have expressed discernible intentions and created either incomplete contracts or something very similar to a contract."  *Id.* (citing *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (defining quantum meruit under Florida law as an implied-in-fact contract in which "the parties have in fact entered into an agreement but without sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement")).  It is long established under Florida law that "[a] greater burden should be placed on the Plaintiff who relies on an implied contract than one who uses reasonable care and foresight in protecting himself by means of an express contract.  To hold otherwise would be to encourage loose dealings and place a premium on carelessness."  *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1949).

---

304048, at *5-6 (M.D. Fla. Jan. 21, 2015) (granting insurer's motion to dismiss unjust enrichment claim where plaintiffs provided repairs to owners of vehicles but "the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it").

Nothing in the ER Groups' Complaint suggests that the parties had the sort of quasi-contractual understanding that satisfies the required predicate of any quantum meruit claim. Quite to the contrary, the ER Groups allege that the parties "have ***never*** mutually agreed to a charge for service." *See* Compl. ¶ 39 (emphasis added). The ER Groups further allege that Defendants "knew at all relevant times that the ER Groups expected to be compensated for the fair market value of emergency medical services," but that Defendants purportedly always made "grossly inadequate payments to the ER Groups for the emergency medical services at issue." *Id.* ¶ 55.

The ER Groups' alleged unilateral expectation of greater payment is patently insufficient to sustain a cause of action for quantum meruit. *See Adventist Health Sys.*, 2004 WL 6225293, at *4 (dismissing quantum meruit claim because "[t]he thrust of [provider's] argument is that [insurer] had medical insurance contracts with its insureds and [provider] treated those insureds. This does not create privity of contract or any facsimile thereof between [provider] and [insurer]"); *see also Hialeah Physicians Care*, 2013 WL 3810617, at *4 (dismissing claim that "contain[ed] no allegations of any agreement between [provider] and [insurer] that would even make a quantum meruit claim plausible"). As such, Count II should be dismissed.

C. *Count III Fails to State a Claim for Violations Under Sections 627.64194 and 627.513, Florida Statutes*

i. *Section 641.513 Does Not Apply to Florida Blue*

In Count III, the ER Groups attempt to state a statutory cause of action under Sections 627.64194 and 627.513, Fla. Stats. The ER Groups request that the Court enter a judgment against "Florida Blue," defined to include ***both*** Florida Blue and HOI. Compl. pp. 1–2. But Part I of Chapter 641 applies exclusively to ***health maintenance organizations***, and not to health insurers in general. *See, e.g.*, Fla. Stat. § 641.17 ("This part shall be known and may be cited as the 'Health Maintenance Organization Act.'"); *id.* § 641.201 ("Except as provided in this part, ***health***

***maintenance organizations shall be governed by the provisions of this part*** and part III of this chapter and shall be exempt from all other provisions of the Florida Insurance Code except those provisions of the Florida Insurance Code that are explicitly made applicable to health maintenance organizations.") (emphasis added); *id.* § 641.513 ("In providing for emergency services and care as a covered service, ***a health maintenance organization*** may not . . . .") (emphasis added).

Florida Blue (the singular entity), however, is ***not*** a health maintenance organization.  In fact, Florida Courts have also recognized that HOI "is [Florida Blue's] HMO."  *Health Options, Inc. v. Palmetto Pathology Servs., P.A.*, 983 So. 2d 608, 610 (Fla. 3d DCA 2008).  Therefore, because Florida Blue is not a health maintenance organization, it cannot be sued for violation of the Health Maintenance Organization Act, and at a minimum, the ER Groups' claim against Florida Blue for violation of Section 641.513 should be dismissed.

> ii.  *The ER Groups Have Not Pled the Necessary Elements to State a Claim Under Sections 627.64194 and 627.513*

As noted above, Count III asserts a statutory claim under Sections 627.64194 and 627.513. To state a statutory claim, courts in this Circuit have routinely required a plaintiff to plead facts that plausibly meet the statutory elements. *See, e.g.*, *Arko Plumbing Corp. v. Rudd*, 13-CV-22434, 2013 WL 12059615, at *3 (S.D. Fla. Sept. 26, 2013) (under Computer Fraud and Abuse Act, which has a statutory definition of "damage," "pleading a type of damage within the statutory definitions is an essential element" of the claim).  The plain language of the statute confirms that Section 627.64194 applies only to specific emergency services satisfying the statutory definitions.  The ER Groups have not pled that they meet these requirements, and instead only allege that they provided "covered emergency medical services," for which Defendants purportedly "refuse[d] to pay fair market value rates as required by Florida law."  Compl. ¶¶ 35, 44.

With respect to emergency services, Section 627.64194(4) governs non-HMO health

insurers' administration of claims for emergency services provided by nonparticipating providers. Section 641.513 sets out various "[r]equirements for providing emergency services and care" and addresses various things an HMO must and may not do "[i]n providing for emergency services and care as a covered service." *Id.* §§ 641.513(1), (2).  Section 641.47(8) specifically defines "[e]mergency services and care," explaining it

> [m]eans medical screening, examination, and evaluation by a physician or, to the extent permitted by applicable law, by other appropriate personnel under the supervision of a physician, to determine if an emergency medical condition exists, and if it does, ***the care, treatment, or surgery for a covered service by a physician necessary to relieve or eliminate the emergency medical condition within the service capability of a hospital***.

*Id.* § 641.47(8) (emphasis added).  An "emergency medical condition," in turn, is "[a] medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain or other acute symptoms, such that the absence of immediate medical attention could reasonably be expected to result in . . . jeopardy to the health of a patient," or "serious impairment to bodily functions," among other severe conditions.  *Id.* § 641.47(7).

Section 627.64194(2) similarly provides that "[a]n insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance with the coverage terms of the health insurance policy."  Section 627.64194(1)(a), in turn, explains that "[a]s used in this section, the term . . . 'Emergency services' means [1] emergency services and care, as defined in s. 641.47(8), which [2] are provided in a facility."  *Id.*

Pursuant to these express statutory provisions, the ER Groups' claims under 627.64194 relating to purported "emergency services" must meet these strict definitional requirements. They do not.  The Complaint is devoid of any allegation that a patient came in with "acute symptoms," that those symptoms were of "sufficient severity," that they put "the health of the patient" in "jeopardy," or required "immediate medical attention," or even that "medical screening" of the

type contemplated by these statutes was provided.  *See generally* Compl. Unelaborated, conclusory allegations that the ER Groups purportedly provided "emergency medical services" – which is ***at best*** all that the Complaint pleads – is not sufficient to state a claim under this statute. *See Arko Plumbing Corp.*, 2013 WL 12059615, at *3 (holding that statutory elements must be pled).  In the absence of these essential elements, the ER Groups fail to state a claim under this statute.

D.   *Count IV for Breach of Contract/Third-Party Beneficiary Fails to State a Claim*

In Count IV, the ER Groups draw the legal conclusion that they are "third-party beneficiaries" of Defendants' health insurance policies.  In doing so, the ER Groups allege only that, "by making thousands of inadequate payments directly to the ER Groups," Defendants have somehow "acknowledged each of the ER Groups' status as a third-party beneficiary of each applicable policy."  Compl. ¶ 68.  But the Complaint make no reference to any language in any policy, let alone any facts that might show why or how Defendants directly intended to benefit a certain group of out-of-network providers.

When medical providers try to claim third-party beneficiary status of insurance policies, they must do more than just proclaim their own status as such.  *See MSP Recovery, LLC v. Allstate Ins. Co.*, No. 1520788, 2015 WL 5882122, at *3 (S.D. Fla. Oct. 6, 2015) ("Plaintiff has not alleged any facts that would establish such an intent; Plaintiff has not provided the no-fault policy, quoted its language, or otherwise pled the content of the policy that would establish that the medical providers were intended third-party beneficiaries of the policy."); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, 2013 WL 3810617, at *2 (S.D. Fla. July 22, 2013) ("There is nothing in the Plan itself that demonstrates any clear or manifest intent that the contract between MDCPS and CGLIC would primarily and directly benefit HPC, as required under the law. Indeed, the Plan clearly states that CGLIC is merely the claims administrator for the policy, and 'Connecticut General does not insure the benefits described.'").  But because the ER Groups have not done so

here, Count IV is deficient and should be dismissed.

      E.  *The ER Groups Fail to State a Claim for Declaratory Judgment*

      In Count V, the ER Groups attempt to assert a claim for Declaratory Judgment based on the premise that the parties "have an actual, bona fide dispute and a present need for a declaration of the ER Groups' rights related to payment for valuable emergency medical services provided to Florida Blue Members." *Id.* ¶ 76. But the ER Groups' previous four causes of action purport to assert claims for damages due to Defendants' alleged "inadequate payments to the ER Groups for the covered emergency medical services at issue." *Id.* ¶¶ 49, 55, 63, 68. Count V is thus duplicative of each of remedy sought in Counts I–IV.

      "It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought are the recovery of money damages do not fall within the jurisdiction of equity." *Charter Sch. Capital, Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc.*, No. 15-CV-60966, 2015 WL 11201180, at *2 (S.D. Fla. June 3, 2015) (citation omitted) (internal quotation marks omitted). Because the ER Groups have an adequate remedy at law (even though their legal claims against Defendants for monetary damages are subject to dismissal), they cannot state a claim for declaratory relief. *See Rogers v. Barron*, No. 08-CV-281, 2008 WL 4274489, at *4 (N.D. Fla. Sept. 11, 2008) (dismissing claims for declaratory and injunctive relief because plaintiff had an adequately remedy at law even though his legal claims against defendants for money damages were subject to dismissal due to immunity); *see also Cortes v. Jordan*, 504 F. Supp. 2d 1318, 1321 (S.D. Fla. 2007) ("[T]o receive declaratory relief, a plaintiff must establish that there was a violation, a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law").

## CONCLUSION

      For the foregoing reasons, the Court should grant this motion and dismiss the Complaint.

Dated: October 22, 2021                    Respectfully submitted,
                                           HOGAN LOVELLS US LLP
                                           600 Brickell Avenue, Suite 2700
                                           Miami, Florida 33131
                                           Telephone: (305) 459-6500
                                           Facsimile: (305) 459-6550

                                           By: */s/ Allen P. Pegg*
                                           Allen P. Pegg, Esq.
                                           Florida Bar No.: 597821
                                           allen.pegg@hoganlovells.com
                                           Daniel Balmori
                                           Florida Bar No.: 0112830
                                           daniel.balmori@hoganlovells.com
                                           William Homer
                                           Florida Bar No.: 1011341
                                           william.homer@hoganlovells.com


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 22, 2021, a true and correct copy of the foregoing

was served on Joseph Goldstein, Esq., Shutts & Bowen LLP, 200 East Broward Boulevard, Suite

2100, Fort Lauderdale, FL 33301, via E-mail: jgoldstein@shutts.com.

                                           By: */s/ Allen P. Pegg*