**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case. No. 21-CV-62139-SINGHAL/VALLE

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

       Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

       Defendants.
_____/

**PLAINTIFFS' MOTION TO REMAND**

Plaintiffs Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Melbourne Emergency Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach, P.A.; and Suwannee Emergency Group, LLC (the "ER Groups"), respectfully move the Court to remand this case to the Seventeenth Judicial Circuit Court in Broward County, Florida.

## Introduction

Defendants' removal of this "rate of payment" case is a textbook example of an objectively unreasonable effort by defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue and Health Options, Inc. (together "Florida Blue") to delay resolution of claims arising under Florida state law and cause Plaintiffs to incur undue burdens and expenses in seeking remand.

As a threshold matter, the removal is based on a false factual predicate because the ER Groups' claims at issue in this lawsuit do not involve claims under health plans provided to federal employees known as Service Benefit Plans, governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914, or plans that are governed by Title XVII of the Social Security Act, 42 U.S.C. § 1395 et seq. (the "Medicare Act"), also known as Medicare Advantage plans. Indeed, Florida Blue *knows* from the claims file that the ER Groups provided to Florida Blue in advance of this litigation that *none* of the claims at issue in this lawsuit involves a FEHBA or Medicare Advantage plan. Because any doubts regarding the existence of federal jurisdiction must be resolved in favor of the non-removing party, the factual flaws underlying the removal alone require that this case be remanded to Circuit Court.

Even if the ER Groups' allegations did reach any claims under a FEHBA or a Medicare Advantage plan, remand is still required. First, under United States Supreme Court precedent and

a long line of decisions in this Circuit that Florida Blue ignores in its removal papers, Florida Blue cannot invoke the federal officer removal statute, 28 U.S.C. § 1442(a)(1) because as a mere administrator of federal plans, Florida Blue does not act under the requisite direct control of a federal officer that could warrant removal under § 1442(a)(1), because there is no causal nexus between the state law "rate of payment" claims here and Florida Blue's administration of any FEHBA or Medicare plans, and because Florida Blue does not have colorable defenses under federal law. Nor can Florida Blue demonstrate that federal question jurisdiction exists here because this lawsuit involves solely a determination of "*rate* of payment" of approved claims and not a "*right* of payment" that could place at issue the terms of any federal employee or Medicare plans.

In addition, a statutory award of attorneys' fees in favor of the ER Groups is warranted upon remand. Rather than proceed with a reasonable basis, Florida Blue has ignored both the falsity of the factual predicate for the removal and the well-established precedent against removal, including decisions of this Court in which *Florida Blue was a party*, rejecting the same removal grounds invoked here. *E.g., REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3520826, at *1 (S.D. Fla. July 20, 2018) (denying motion to reconsider remand because plaintiff sought reimbursement for "underpaid" emergency services); *Ascent Med. Grp., LLC v. Humana Med. Plan, Inc.*, No. 18-60187-CIV, 2018 WL 4901405, at *2 (S.D. Fla. Apr. 4, 2018).

## Background

### *Summary of Allegations in the Complaint*

Each of the ER Groups contracts with hospitals in Florida to staff those hospitals' emergency departments with physicians and other clinical providers. Each of the ER Groups coordinates the billing of its contracted healthcare providers for emergency medical services. ECF 1-2, ¶ 28. None of the ER Groups has a contract for negotiated rates with Florida Blue and their

2

providers are therefore "out-of-network" for the medical services at issue. *Id.* ¶¶ 29-30.

On or about September 2, 2021, plaintiffs filed the Complaint in Circuit Court seeking to recover damages caused by Florida Blue's *underpayments* to the ER Groups for out-of-network emergency medical services provided by the ER Groups' contracted providers to Florida Blue's insureds in Florida. The underpayments at issue total more than $53,000,000. *Id.* ¶ 1.

In the well-pled allegations of the Complaint the ER Groups seek solely to recover from Florida Blue the appropriate "*rate* of payment" for medical services and not a determination concerning the ER Groups' "*right* of payment." As alleged, Florida Blue had approved and paid each of the claims at issue in this lawsuit, albeit inadequately, to the ER Groups. *Id.* ¶¶ 4, 26, 27. The claims in this lawsuit are solely for approved and covered services rendered to Florida Blue members and do not require any coverage determinations under the Florida Blue members' plans. *Id.* Each of the ER Groups' claims in the Complaint is supported by a legal duty arising under Florida state law. *Id.* ¶ 26. No claim is made by the ER Groups against Florida Blue as a plan participant, plan sponsor, plan fiduciary, or beneficiary under any plan governed by ERISA. No claim is made by the ER Groups pursuant to an assignment of benefits from any patient or upon any rights that any Florida Blue members may have to pursue against Florida Blue. Plaintiffs do not stand in the shoes of Florida Blue Members for the purposes of this lawsuit. *Id.* ¶¶ 26, 27.

The ER Groups simply seek compensation from Florida Blue for past underpayments and a declaration that Florida Blue must cease unfairly discounting payments contrary to Florida state law. *Id.* The ER Groups have asserted state law claims for unjust enrichment and quantum meruit under Florida common law (Counts I & II); a claim for violation of Fla. Stat. §§ 627.64194 & 627.513, which set reimbursement rates for out-of-network services (Count III); a claim as a third-party beneficiary under Florida Blue's contracts with members that incorporate certain Florida

statutory provisions (Count IV); and for declaratory judgment concerning the *rate* of reimbursement for the emergency medical services at issue (Count IV). None of the ER Groups' claims contemplates or implicates questions of federal law. Nor do the ER Groups seek any relief in this case with respect to Florida Blue's alleged violation of § 627.64194, which requires Florida Blue to directly reimburse nonparticipating providers of covered emergency services.

### *Florida Blue Relies on Factually False Grounds for Removal*

Defendants filed the Notice of Removal on October 15, 2021, supported by a declaration of Annette Norman, Florida Blue's Litigation Management Consultant. *See* ECF Nos. 1 & 1-3. As grounds for removal, Florida Blue first claims that it is a party to a contractual arrangement with the U.S. Office of Personnel Management ("OPM") pursuant to FEHBA, under which it administers Service Benefit Plans that the federal government provides to its employees. ECF 1, ¶ 10. Florida Blue incorrectly claims that the Complaint includes claims for services rendered to various individuals who are enrollees in a FEHBA-governed plan, and attaches Exhibits 2-R, 2-S, 2-T and 2-U, as purported examples of such claims. ECF 1-3 at ¶ 36 & Exs. 2-R through 2-U.

Second, Florida Blue relies on the assertion that it contracts with the U.S. Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS") to administer Medicare benefits to persons who choose to enroll in defendants' service plans. ECF 1-3, ¶ 41. In paragraph 44 of Ms. Norman's declaration, Florida Blue claims that the ER Groups' claims include at least four claims under health plans that are governed by Title XVII of the Social Security Act, 42 U.S.C. § 1395 et seq. (the "Medicare Act"), also known as Medicare Advantage plans, and attaches Exhibits 2-V through 2-CC as purported examples of such claims.[1]

As Florida Blue knows or should know, however, the claims at issue involve neither

---

[1] Florida Blue does not seek removal under the Employee Retirement Income Security Act of 1974 ("ERISA").

FEHBA nor Medicare Advantage plans. As detailed in the accompanying declaration of Sara Shoultz, the ER Groups' Managed Care Supervisor, prior to initiating this litigation, the ER Groups compiled a spreadsheet of certain claims for which the ER Groups were underpaid by Florida Blue. *Id.* ¶¶ 5-7. The claims spreadsheet was compiled using the ER Groups' data warehouse, through which Ms. Shoultz retrieved all billed non-par (i.e. out-of-network) Florida Blue claims for each of the ER Groups. *Id.* The ER Groups' submission did not include any claims identified as relating to federal employees' health plans and Medicare or Medicaid claims based on their policy prefixes and eligibility responses received from Florida Blue. *Id.* As part of pre-litigation efforts, that claims spreadsheet was provided to Florida Blue on or about August 25, 2020, containing detailed information concerning each of the claims at issue, including the patients' names and dates of birth, policy numbers, dates and locations of service, CPT code level detail, actual charges, and approved amounts. *Id.* at Ex. A.

Thus, Florida Blue knows that the claims at issue in this lawsuit do not include claims under any federal employee plans, including FEHBA plans. As Ms. Shoultz explains, claims under FEHBA plans are easily identifiable in the ER Groups' database due to their unique policy prefix ("R"). *Id.* ¶ 8. In compiling claims for this litigation, the ER Groups did not include any claims for emergency medical services that they understood were submitted under any such federal plan. *Id.*

Nor do the purported examples of federal claims reflected in Exhibits 2-R through 2-U of Ms. Norman's declaration support Florida Blue's position. To check the accuracy of Florida Blue's factual assertions, Ms. Shoultz used the patient identifying information contained in Exhibits 2-R and 2-S, concerning patient "M.P.," including the date of service, rendering provider, and billed and approved charges to locate patient M.P. and the claims for patient M.P. in the ER Groups' claims database. *Id.* ¶¶ 10-11. Patient M.P.'s claim file reflects that patient M.P. had a federal

FTLDOCS 8348844 1 50077.0004

employee plan as *secondary health insurance* and also had a primary commercial Florida Blue health plan. *Id.* Ms. Shoultz confirmed that in this case, Bradford Emergency Group is disputing only the amount of the payment that Florida Blue made under patient M.P.'s *primary commercial health plan*, which is identified by that plan's policy number prefix "XJJ" and reflected in the November 25, 2019 EOB form that matches up with the claim identified in Exhibit 2-R to Ms. Norman's declaration. *Id.* ¶ 11 & Ex. B. While there appears to have been a later secondary approval of an additional payment under M.P.'s federal plan with an entirely different claim number, the amount of that payment is not at issue in this lawsuit. *Id.* ¶ 12.

Similarly, the payment claim reflected in Exhibits 2-T and 2-U of Ms. Norman's declaration purporting to reflect a claim under a federal plan for patient "L.S." is not part of the claims at issue in this lawsuit and was not included in the claims file that was previously provided to Florida Blue. *Id.* ¶¶ 13-14. Again, Ms. Shoultz's review of the claims database reveals that while patient L.S. also had *secondary* coverage under a FEHBA plan, the challenged reimbursement amount at issue in this lawsuit for patient L.S. was a claim made under patient L.S.'s *primary commercial health plan* with a policy prefix of "XJB." *Id.* ¶ 14 & Ex. C.

As Florida Blue also knows, the claims in this lawsuit do not include any underpayments made under Medicare Advantage plans. *Id.* ¶ 15. Claims under Medicare Advantage plans are easily identifiable in the ER Groups' database based on electronically received eligibility responses from Florida Blue describing each plan type. *Id.* ¶ 16. The ER Groups omitted all claims for emergency medical services that were identified *by Florida Blue* as Medicare claims, as well as any claims with the same policy prefixes. *Id*. All underpaid claims for patients aged 65 or older were also excluded in an abundance of caution. *Id.*

In fact, based on the patient identifying information included in Exhibits 2-V through 2-

CC to Ms. Norman's declaration, including the dates of service, patient initials and amounts at issue, none of the claims identified in in those Exhibits is disputed in this lawsuit and none of those claims was included in the claims spreadsheet that the ER Groups provided to Florida. *Id.* ¶ 18.

***Current Procedural Posture***

Florida Blue removed this case on October 15, 2021. On October 22, 2021, just seven days after removal, Florida Blue filed a motion to dismiss the complaint, which primarily relies on the same legal issues as the Notice of Removal, namely Florida Blue's assertion of federal preemption based on its erroneous invocation of FEHBA and Medicare Advantage plans that are not at issue in this lawsuit. Because this Court lacks subject matter jurisdiction over this case, resolution of Florida Blue's motion to dismiss should await this Court's ruling on jurisdictional issues.

**Argument**

Under 28 U.S.C. § 1441, a case filed in state court can be removed to federal court if the district court has original jurisdiction, which exists in relevant part if there is federal question jurisdiction under 28 U.S.C. § 1331. *Ascent Med. Grp., LLC*, 2018 WL 4901405, at *2. Federal question jurisdiction requires that a case "arise under" the "Constitution, laws, or treaties of the United States." *Id.* (quoting 28 U.S.C. § 1331). Generally, a case "arises under" federal law if federal law creates the cause of action or if a substantial disputed issue of federal law is a necessary element of a claim. *Id.* Ordinarily whether a claim arises under federal law is dependent on whether a federal question appears on the face of the plaintiff's well-pleaded complaint. *Id.* Generally, "a case arises under federal law only if it is federal law that creates the cause of action." *Id.* (quoting *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)). A mere assertion of a federal defense does not give rise to a federal claim. *MSPA Claim I, LLC v. Scottsdale Ins. Co.*, No. 16-22965-CIV, 2017 WL 3835879, at *3 (S.D. Fla. June 30, 2017), *report and recommendation adopted sub*

*nom. MSPA Claims 1, LLC v. Scottsdale Ins. Co.*, No. 16-22965-CIV, 2017 WL 3769291 (S.D.

Fla. Aug. 29, 2017); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S.

1, 10 (1983) ("arising under" jurisdiction is not created by a federal defense).

 The federal officer removal statute authorizes removal of an action against "any officer (or

person acting under that officer) of the United States or of any agency thereof, in an official or

individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

If the federal officer removal statute applies to a defendant, that defendant may remove a case to

federal court only if the defendant advances a colorable defense arising out of a duty to enforce

federal law and if the defendant establishes that there is a causal connection between what the

officer has done under asserted official authority and the action against it. *Sheridan Healthcorp,*

*Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1248 (S.D. Fla. 2016).

 A removing defendant "bears the burden of proving that federal jurisdiction exists."

*Bennett v. Lagerstrom*, 21-81540-CIV, 2021 WL 4393160, at *2 (S.D. Fla. Sept. 1, 2021) (quoting

*Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). When a court evaluates

"whether the particular factual circumstances of a case give rise to removal jurisdiction, it strictly

construes the right to remove and applies a general presumption against the exercise of federal

jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of

remand." *Id.* (quoting *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal

editing and quotation marks omitted)); *Ascent Med. Grp.*, 2018 WL 4901405, at *2 ("Any

uncertainty as to removal should be resolved in favor of remand."). To avoid an illegal exercise of

jurisdiction, "[w]hen a plaintiff and defendant clash on the issue of jurisdiction, uncertainties are

resolved in favor of remand." *C.N. Guerriere, M.D., P.A. v. Aetna Health, Inc.*, No.

807CV1441T27MAP, 2007 WL 3521369, at *1 (M.D. Fla. Nov. 15, 2007) (citing *Burns v.*

*Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)); *REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3323817, at *4 (S.D. Fla. July 6, 2018) ("because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party" (internal editing and citation omitted)).

Florida Blue's reliance on outdated precedent for the proposition that the federal officer removal statute must be "liberally construed" does not overcome the well-established presumption against the exercise of federal jurisdiction such that all uncertainties as to removal jurisdiction ought to be resolved in favor of remand. *See Russell Corp. v. American Home Assurance Company*, 264 F.3d 1040 (11th Cir. 2001); *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 622 (6th Cir. 2016) (explaining that *Colorado v. Symes*, 286 U.S. 510, 517 (1932), on which Florida Blue relies for a broad interpretation of the removal statute "traces to earlier versions of § 1442 that granted the removal power only to individuals enforcing federal customs and revenue laws."); *Assael v. Preferred Care Partners, Inc.*, No. 0:17-CV-62584-KMM, 2018 WL 6529530, at *4 (S.D. Fla. Feb. 23, 2018) (describing the reasoning of *Ohio State Chiropractic Ass'n* as "persuasive and consistent with certain prior decisions of this Court.").[2]

As a fundamental matter, the Court should rule on the motion to remand before addressing the defendants' motion to dismiss. *Hill v. Nat'l Ins. Underwriters, Inc.*, No. 12-62498-CIV, 2013 WL 11971265, at *1 (S.D. Fla. Aug. 7, 2013) ("Because it challenges the Court's subject matter jurisdiction, the Court must resolve a motion to remand prior to taking up any motion to dismiss.") (citing *Univ. Of S. Alabama v. Am. Tobacco Co.*, 168 F. 3d 405, 411 (11th Cir. 1999)); *Adler v.*

---

[2] Florida Blue also miscites *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020), which does not address the standard to be applied on a remand motion by a district court, but merely sets forth the *de novo* standard for *appellate* review of an appealable remand order.

*Blue Cross & Blue Shield of Fla., Inc.*, No. 05-61117-CIV, 2005 WL 8155294, at *1 (S.D. Fla. Sep. 16, 2005) ("The Court will necessarily decide the motion to remand first because subject matter jurisdiction must be present before a motion to dismiss may be considered.").

## I.   FLORIDA BLUE HAS NOT ACTUALLY IDENTIFIED CLAIMS AT ISSUE THAT IMPLICATE ANY FEHBA OR MEDICARE ADVANTAGE PLANS.

As detailed above, Florida Blue bases its removal entirely on a factually false assertion that the rate of payment claims at issue include claims under either FEHBA or Medicare Advantage health plans. The vague statements in paragraphs 36 and 44 of Ms. Norman's declaration that she had reviewed claims information extracted from Florida Blue's claims repository database relating to the claims identified in the Complaint and determined that the Complaint includes claims for services allegedly rendered to individuals who are enrollees in FEHBA-plans and Medicare Advantage plans is plainly insufficient to meet Florida Blue's burden on removal, particularly where the examples that Florida Blue attaches are demonstrably related to claims made under Florida Blue's members' commercial plans and not any FEHBA or Medicare Advantage plan. As confirmed by the enclosed declaration of Sara Shoultz, the ER Groups simply do not challenge any payments on claims under federal employee plans or Medicare Advantage plans in this lawsuit.

It is axiomatic that any conflicts of evidence or doubts on the record before the Court *must* be resolved in favor of the ER Groups and against a finding that federal jurisdiction exits. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *McKin v. Home Depot U.S.A., Inc.*, No. 09-81427-CIV, 2009 WL 10668749, at *2 (S.D. Fla. Nov. 23, 2009) (on motion for remand, "the court must resolve this factual dispute in the light most favorable to plaintiffs"); *REVA, Inc.*, 2018 WL 3323817, at *4 ("Contrary to [Florida Blue's] contention, it is within the realm of reason that REVA seeks reimbursement for a handful of claims—not related to government plans—that

occurred while REVA was providing services to Medicare or Federal Employees Health Benefits Act patients—for which REVA does not seek reimbursement for in this case.").

Accordingly, the elimination of the factual predicate for Florida Blue's removal alone requires this case to be remanded to the Circuit Court.

## II.     THIS CASE IS NOT REMOVABLE UNDER 28 U.S.C. § 1442(a)(1).

Having falsely concluded that the Complaint includes claims under FEHBA and/or Medicare Advantage health plans, Florida Blue argues that this action is removable under 28 U.S.C. § 1442(a)(1). That ground for removal is not available to Florida Blue, however, because § 1442(a)(1) does not apply to health insurers that contract with the government to administer FEHBA and/or Medicare Advantage plans, because there is no causal nexus between the ER Groups' state law "rate of payment" claims in this lawsuit and Florida Blue's administration of any FEHBA or Medicare Advantage health plans. In addition, Florida Blue does not even have colorable *defenses* under federal law.

### A.  The Federal Officer Removal Statute Is Unavailable to Florida Blue.

In its removal papers, Florida Blue fails to acknowledge Supreme Court precedent and numerous cases in this Circuit, including cases *in which Florida Blue was a party*, holding that § 1442(a)(1) does not apply to health insurers administering health plans under FEHBA or Medicare Advantage (i.e. Part C of the Medicare Act), particularly where a complaint does not challenge a plan participant's *right* to coverage under any such plan.

Courts require that a defendant seeking removal under § 1442(a)(1) demonstrate that its conduct was "performed pursuant to the direct and detailed control of an officer of the United States." *Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 362 F. Supp. 3d 1217, 1223 (M.D. Fla. 2019) (quoting *Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1318 (S.D.

Fla. 2004)). "Asserting that a defendant's conduct is performed at the general direction of a federal agency does not rise to the level of removal based on 28 U.S.C. § 1442(a)(1)." *Kennedy*, 329 F. Supp. 2d at 1318. As this Court explained in *Kennedy*, where Florida Blue was a party:

> Under Defendant's theory that federal jurisdiction arises merely from being a provider of Medicare benefits without any direct causal connection to the decision that gives rise to Plaintiff's claim, all cases brought against intermediaries who have a contract to provide such benefits would be entitled to federal jurisdiction. This conclusion is counter to the discussion above. The contractual relationship between intermediaries and the Health Care Financing Administration does not in itself constitute the direct and detailed control that is required to assert federal jurisdiction.

*Id.* (granting motion to remand); *see also Adler*, 2005 WL 8155294, at *3 (distinguishing *Neurological Assocs. v. Blue Cross/Blue Shield of Florida, Inc.*, 632 F. Supp. 1078 (S.D. Fla. 1986) on which Florida Blue relies here, and remanding where "claim [was] not intertwined with the decision to award Medicare benefits or with Defendant's contract with Medicare.").

With respect to FEHBA plans, a "key inquiry to determine whether an action is based on an insurer's role in administering a FEHBA plan, and therefore whether it acts under the direction of OPM, is whether the plaintiff's claim is based on the plan participant's ***right to reimbursement*** and whether the plaintiff healthcare provider is seeking payment ***based on an assignment*** from the plan participant." *Baptist Hosp. of Miami, Inc. v. Humana Health Ins. Co. of Fla., Inc.*, No. 1:15-CV-22009-UU, 2015 WL 11237013, at *3 (S.D. Fla. Aug. 19, 2015) (remanding contractual reimbursement rate claims under FEHBA plans); *Dunn v. Blue Cross Blue Shield of Alabama*, No. 2:10-CV-02220-AKK, 2011 WL 13285142, at *5 (N.D. Ala. Mar. 17, 2011) ("FEHBA's implementing regulations make clear that OPM has created a remedial mechanism solely for the claims of '**covered individuals**,' not for the claims of providers." (emphasis in original)); *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 976 (9th Cir. 2007) (plaintiff-provider's claims were not preempted by FEHBA because the plaintiff was not a covered person

under FEHBA and lacked written consent or assignment from the FEHBA-insured patients).

Subsequent to and consistent with this Court's *Kennedy* decision, the United States Supreme Court held that a plaintiff does not act under the authority of a federal officer pursuant to § 1442(a)(1) even when "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145, 127 S. Ct. 2301, 2306 (2007)). The *Watson* Court held that "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations, does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official,'" even if there are highly detailed regulations and the activities of the private entity are highly monitored. *Id.*, 127 S. Ct. at 2308. In a recent decision, another Florida federal court rejected the same grounds for removal on which Florida Blue relies here and explained that in light of *Watson,* removal under § 1442(a)(1)

> necessitates a finding of subjection, guidance, or control. Furthermore, *Watson* teaches that merely complying with the law does not satisfy the "acting under" provision, and a private person, such as Defendant, "acting under" a federal officer or agency must demonstrate its effort to assist, or to help carry out, the duties or tasks of a federal superior.

*Premier Inpatient Partners*, 362 F. Supp. 3d at 1224 (internal citation omitted).

As a result, a health insurer such as Florida Blue that merely contracts with the federal government to administer either FEHBA or Medicare Advantage (i.e. Part C) health plans is not acting under sufficient control to trigger the availability of the federal officer removal statute. This Court, relying on *Watson*, has explained that

> contracts between Part C organizations and providers are subject to very few restrictions generally, the parties may negotiate their own terms. The government transfers the risk of providing care to beneficiaries to the Part C organization and thus with the government's risk extinguished, any dispute over payment to the organization is solely between the organization and the service provider.
>
> \* \* \*
>
> Given the nature of the Medicare Part C contract, WellCare is more akin to a regulated private industry rather than an entity acting under the control of a federal officer.

*Sheridan Healthcorp, Inc. v. WellCare of Fla., Inc.*, No. 07-61018-CIV, 2007 WL 9701702, at *7-8 (S.D. Fla. Nov. 15, 2007) (internal editing and citations omitted). Numerous decisions of this Court and other courts have since reached similar results, rejecting efforts by health insurers to avail themselves of federal jurisdiction under § 1441(a)(1), even in cases involving coverage disputes brought by federal plan members. *See Assael*, 2018 WL 6529530, at *6 (holding that the federal officer removal statute does not authorize removal of a coverage dispute under a Medicare plan); *Wise v. United HealthCare of Fla., Inc.*, 387 F. Supp. 3d 1382, 1386 (M.D. Fla. 2019), *appeal dismissed sub nom. Wise for Wise v. United Healthcare of Fla., Inc.*, No. 19-12122-JJ, 2020 WL 2968371 (11th Cir. Jan. 8, 2020) (remanding coverage dispute under a Medicare plan for lack of subject matter jurisdiction ); *Kindred Hosps. E., LLC, et al v. Wellcare of Fla., et al*, No. 8:17-cv-00864-EAK-AEP (M.D. Fla. Feb. 2, 2018) (concluding that the defendant, a private company that is also a Medicare Advantage Organization, does not "act under" the control of a federal officer for purposes of satisfying the federal officer removal statute); *Skiles v. Careplus Health Plans, Inc.*, No. 14-80892-CIV, 2014 WL 4322322, at *3 (S.D. Fla. Sept. 2, 2014), *vacated on other grounds*, No. 14-14087-BB, 2015 WL 1801272 (11th Cir. Apr. 7, 2015) (remanding coverage dispute brought by insured where CarePlus has offered no evidence that its decision to not authorize Mr. Skiles' x-ray was "directed" or "controlled" by a federal agency.").

To the extent not addressed above or in Point II.B., *infra*, the cases on which Florida Blue relies in its invocation of § 1442(a)(1) in its removal papers are either distinguishable or no longer constitute good law in light of the Supreme Court's *Watson* decision and its progeny. *See Anesthesiology Assocs. of Tallahassee, P.A. v. Blue Cross Blue Shield of Fla.*, No. 03-15664, 2015 WL 6717879, at *2 (11th Cir. Mar. 18, 2005) (removal of a coverage determination action brought by an assignee of a FEHBA plan member); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan,*

*Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (removal of an action contesting denial of Medicare benefits); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1268, 1270-71 (S.D. Fla. 2014) (removal of action by Medicare beneficiary suing insurer for improperly applying regulatory formula under contract with the federal government to administer Medicare benefits); *Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala., Inc.*, No. 205-cv-1230-MEF, 2007 WL 25488, at *7-8 (M.D. Ala. Jan. 3, 2007) (removal of claims arising out of BCBS's role as a FEHBA administrator where plaintiff submitted claims to defendant pursuant to assignments received from patients); *Jacks v. Meridian Res. Co.*, LLC, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012) (removal of claim based on defendant's role as FEHBA administrator challenging provision in a FEHBA plan); *Brady v. Brady*, No. 819CV1268T24SPF, 2019 WL 3206871, at *3 (M.D. Fla. July 16, 2019) (removal of coverage claim that "arose as a direct result of Blue Cross administering the health insurance plan under which OPM told Blue Cross that Plaintiff was a covered family member."); *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 935 F.3d 352, 355 (5th Cir. 2019) (removal of a dispute under Louisiana's direct pay statute upon assignment of benefits).

Here, Florida Blue merely claims that it contracts with the federal government to administer FEHBA and Medicare Advantage plans, governed by federal regulations and the terms of those plans. Florida Blue cannot assert that it made acts or omissions at issue at the specific direction of a federal official. Accordingly, Florida Blue cannot avail itself of this Court's jurisdiction under § 1442(a)(1). To allow "[a] contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Watson*, 127 S. Ct. at 2308.

### B. No Causal Nexus Exists Between ER Groups' State Law Claims and Florida Blue's Administration of FEHBA or Medicare Advantage Health Plans.

Florida Blue's assertion that the state law claims in this lawsuit are somehow causally connected to Florida Blue's role as administrator of federal health plans is misplaced and ignores the well-pleaded allegations of the Complaint. While Florida Blue spills considerable ink in its removal papers on a generic description of its role in administering such health plans, the applicable federal regulations, and its contractual relationship with the CMS and the OPM, together with lengthy string-citations of inapplicable caselaw, Florida Blue ignores numerous recent rulings of this Court and other courts holding that federal jurisdiction does not lie where, like here, providers have challenged the "rate of payment" as opposed to a "right of payment" for out-of-network medical services, regardless of the underlying type of a health plan.

In *REVA, Inc.*, 2018 WL 3323817, which is absent from the removal papers, an ambulance provider sued Florida Blue and its affiliates in Florida state court for underpayments for out of network emergency services, similar to this action. *Id.*, at *1. Florida Blue removed claiming preemption under ERISA and alleged existence of claims for payment or coverage under FEHBA and Medicare Advantage plans. *Id.* In rejecting Florida Blue's motion to reconsider a remand order relying upon the same arguments that Florida Blue makes here, this Court explained that

> REVA's Complaint seeks reimbursement for **underpaid** emergency services. Indeed, this Court noted in its Order Remanding the Case to State Court, that "REVA's claims are more akin to a rate of payment dispute because REVA does not allege that Defendants **failed** to pay, but rather that Defendants 'grossly **underpaid** REVA' for its services." D.E. 67 at 6 (quoting D.E. 1-1 ¶ 2)

*REVA, Inc.*, at *2 (emphasis in original); *see also Sarasota Anesthesiologists, P.A. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 19-CV-1518-T-02JSS, 2019 WL 3683796, at *1 (M.D. Fla. Aug. 6, 2019) (remanding case alleging underpayments by Florida Blue for emergency anesthesia services, rejecting Florida Blue's invocation of the federal officer statute and ERISA).

16

Similarly, in *Ascent Med. Group, LLC*, *supra*, a group of anesthesia providers sued Humana under Fla. Stat. § 641.513 and Florida common law for underpayment for emergency and other medical services. *Id.*, at *1. Humana removed to this Court arguing, just as Florida Blue does here, that this Court had subject matter jurisdiction because:

> Defendant was acting on behalf of [CMS] as a Medicare Advantage Organization when it allegedly underpaid claims for services rendered by Plaintiff.… Furthermore, Defendant argues that Defendant was acting as a private carrier on behalf of the [OPM] when it allegedly failed to pay the proper reimbursement for serviced rendered to a member of a plan subject to [FEHBA].

*Id.*, 2018 WL 4901405, at *2 (internal citations omitted). Humana relied primarily on two of the same cases upon which Florida Blue relies heavily in its removal papers. *Id.* (citing *Anesthesiology Assoc. of Tallahassee, Florida, P.A. v. Blue Cross Blue Shield of Florida, Inc.*, 2005 WL 6717869, at *2 (11th Cir. 2005) & *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 56-58 (5th Cir. 1975)); *compare to* ECF No. 1 at ¶¶ 11(e), 14, 18, 19 (same). This Court remanded, finding that "[u]nlike *Anesthesiology Associates* or *Peterson*, this action does not involve claims for right to payment or coverage under government plans, nor does it challenge Defendant's administration of government plans. Rather, Plaintiff disputes the ***rates of payment made***, and seeks relief under Florida law." *Ascent Med. Grp.*, 2018 WL 4901405, at *3 (emphasis added).

Other courts in this District have reached the same result. *See Sheridan Healthcorp*, 161 F. Supp. at 1249 (rejecting reliance on *Peterson* and *Anesthesiology Associates* and remanding to state court where "the Complaint does not allege any claims for 'right to payment' or coverage under government plans, nor does it challenge the actions of Defendants with respect to their administration of any Medicare, Medicaid, or FEHBA plan. Rather, it disputes the ***rates*** …." (emphasis added)); *MSPA Claim I, LLC*, 2017 WL 3835879, at *3 (no FEHBA preemption where action asserts claims under state law); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans,*

*Inc.*, No. 18-CV-25460-UU, 2019 WL 1915386, at *2 (S.D. Fla. Mar. 21, 2019) (explaining that "[i]n payment dispute cases, the parties agree that there is Medicare coverage, but disagree as to the reimbursement rate. In coverage dispute cases, the parties disagree about whether Medicare provides coverage at all. Payment disputes are simple state-law contract disputes ….."); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) ("the reimbursement right in question predicated on a [FEHBA] authorized contract, is not a prescription of federal law.").

Accordingly, even if FEHBA or Medicare plans were implicated in this "rate of payment" lawsuit, federal jurisdiction does not lie.

### C.  Florida Blue Lacks Any Colorable Complete Preemption Defenses.

Florida Blue claims preemption, sovereign immunity and terms of federal health plans as "colorable" federal defenses on which it relies to support removal under § 1441(a)(1). Neither carries the day here. First, as explained above, it is well settled that the ER Groups' *rate of payment* claims are not preempted by FEHBA or the Medicare Act where the ER Groups are not contesting coverage denials nor acting under assignments of benefits from plan members.

Moreover, the scope of preemption under the Medicare Act is far narrower than Florida Blue suggests. *See Premier,* 362 F. Supp. 3d at 1223, quoting *Dial v. Healthspring of Alabama, Inc.*, 541 F.3d 1044, 1047-48 (11th Cir. 2008) ("even assuming that at least one of Plaintiff's claims for relief arises under the Medicare Act, the district court would lack subject-matter jurisdiction over the complaint because it is not against the Secretary of the Department of Health and Human Services for review of an administrative decision." (internal editing and citations omitted)); *compare Manorcare Potomac v. Understein*, No. 8:02–CV–1177–T–23EAJ, 2002 WL 31426705, at *1 n.1 (M.D. Fla. Oct. 16, 2002) (removal of case for *unpaid* fees, noting that defendant had claimed federal officer removal status, which the plaintiff **did not contest**).

Nor is sovereign immunity a colorable defense because, as explained in Point II.A. above, as a mere administrator of certain government health plans, Florida Blue does not operate under direct control of a federal agency that is required to invoke the federal officer removal statute. *See Pers. Physician Care, P.A. v. Fla. Physicians Tr., LLC*, No. 616CV452ORL28DAB, 2016 WL 4408824, at *7 (M.D. Fla. Aug. 16, 2016) (rejecting sovereign immunity as a colorable defense because it depended on defendants' failed invocation of government contractor removal under § 1441(a)(1)). Florida Blue's reliance on *Neurological Assoc.—H. Hooshmand, M.D., P.A. v. Blue Cross/Blue Shield of Fla., Inc.*, 632 F. Supp. 1078, 1080 (S.D. Fla. 1986) is misplaced because there, Florida Blue was sued in its capacity as a government fiscal intermediary under Part B of the Medicare Act, which is distinguishable from even the (non-existent) claims under Medicare Part C plans that Florida Blue seeks to invoke in this case. *See Sheridan Healthcorp, Inc.*, 2007 WL 9701702, at *8 (administrator of a Part C contract "is more akin to a regulated private industry rather than an entity acting under the control of a federal officer"); *compare also Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *4-5 (E.D. La. Sept. 30, 2014) (sovereign immunity available where claims brought under ERISA plans by assignees of patient's rights). There is thus no applicable preemption defense here, let alone one so complete that it might support federal jurisdiction.

## III.  NO CONFLICT EXISTS BETWEEN THE ER GROUPS' STATE LAW CLAIMS AND FEDERAL COMMON LAW OR ALLEGED FEDERAL PLANS THAT COULD GIVE RISE TO FEDERAL QUESTION JURISDICTION.

Finally, Florida Blue's assertion that federal question jurisdiction exists under 28 U.S.C. § 1441 because of a purported conflict between the ER Groups' allegation that Florida Blue has violated Fla. Stat. § 627.64194 (requiring health insurers to directly reimburse nonparticipating providers of covered emergency services), and the terms of the (irrelevant) FEHBA plans, which

Florida Blue claims allow for such payments to go directly to plan members, simply ignores that the ER Groups *do not seek any relief* in their Complaint for Florida Blue's failure to make payments directly to the providers. Rather, the ER Groups merely provide the context of Florida Blue making underpayments for covered emergency medical services. *See MSPA Claims 1, LLC v. Allstate Prop. & Cas. Ins. Co.*, No. CV 16-20443-CIV, 2016 WL 4370078, at *5 (S.D. Fla. Jun. 30, 2016) (allegations made to provide context on which no relief is sought are not sufficient for removal because "it is axiomatic that ambiguities are generally construed against removal").

## IV. THE ER GROUPS SHOULD BE AWARDED ATTORNEYS' FEES ON REMAND.

Florida Blue's Notice of Removal appears to be nothing more than a canned treatise on irrelevant removal and preemption cases that Florida Blue files as part of its "playbook" to add delay and cause provides to incur burdens and expenses in seeking a proper rate of payment for emergency services already provided to Florida Blue's members. Not only does Florida Blue disregard its actual knowledge that no FEHBA or Medicare Advantage plans are implicated in this lawsuit, but it simply fails to acknowledge the substantial precedent in this District that has rejected the very arguments on which Florida Blue premises its removal. Accordingly, pursuant to 28 U.S.C. § 1447(c), the ER Groups should be awarded attorneys' fees and costs because Florida Blue lacked an objectively reasonable basis for seeking removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (attorney's fees and costs may be awarded when no objectively reasonable basis exists for removal).

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), counsel for the Plaintiffs certifies that they have conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in this motion, including by telephone on November 2, 2021 with

Defendants' counsel, Allen Pegg, followed by emails on November 3-4 and 12, 2021.  Defendants oppose the relief requested herein.

Dated: November 15, 2021                    Respectfully Submitted,

                                            By: */s/ Jamie Wasserman*
                                            **Joseph M. Goldstein, Esq.**
                                            Florida Bar No. 820880
                                            Email: jgoldstein@shutts.com
                                            **Jamie Wasserman, Esq.**
                                            Florida Bar No. 68513
                                            Email: jwasserman@shutts.com
                                            *Counsel for Plaintiffs*
                                            200 East Broward Boulevard
                                            Suite 2100
                                            Fort Lauderdale, FL 33301
                                            Telephone:     (954) 524-5505
                                            Facsimile:     (954) 524-5506

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of November, 2021, a true and correct copy of the foregoing has been furnished *via* CM/ECF which will send notification of such filing to Allen P. Pegg, Esq. (allen.pegg@hoganlovells.com), Daniel Balmori, Esq. (daniel.balmori@hoganlovells.com), and William Homer, Esq. (william.homer@hoganlovells.com), attorneys for Defendants, at Hogan Lovells US LLP, 600 Brickell Avenue, Suite 2700, Miami, Florida 33131.

                                            By: */s/ Jamie Wasserman*
                                            **Jamie Wasserman, Esq.**

21