**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case. No. 21-CV-62139-SINGHAL/VALLE

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

      Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

      Defendants.
_____/

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Melbourne Emergency Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach, P.A.; and Suwannee Emergency Group, LLC (the "ER Groups"), respectfully submit this opposition to the motion to dismiss filed by defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue and Health Options, Inc. (together "Florida Blue").

## Introduction[1]

Continuing its "playbook" effort to delay adjudication of tens of millions of dollars in underpayments for emergency medical services provided to its insureds, Florida Blue filed an internally inconsistent and self-contradicting motion to dismiss. For instance, Florida Blue claims that the ER Groups have failed to sufficiently identify the claims at issue in this lawsuit, yet attaches examples of such claims when seeking dismissal on preemption grounds. Going well outside the allegations of the Complaint, Florida Blue improperly relies on extraneous materials to assert incorrectly, as it did in its removal papers, that the ER Groups' claims implicate federal Service Benefit Plans, governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914, or Medicare Advantage plans governed by Title XVII of the Social Security Act, 42 U.S.C. § 1395 *et seq*. Florida Blue acknowledges, however, that in advance of this litigation, the ER Groups provided it with a claims spreadsheet, which demonstrates that *none* of the claims at issue in this lawsuit involves a disputed rate of payment under a FEHBA or Medicare Advantage plan. Plaintiffs provided the claims spreadsheet to Florida Blue as part of pre-litigation

---

[1] As explained in the ER Groups' pending motion for remand (ECF No. 14), this Court does not have subject matter jurisdiction over the state law claims in this lawsuit. Consistent with standard practices, this Court should not address the motion to dismiss until resolving the remand motion. *See infra*, at 5.

efforts on or about August 25, 2020, and is in the record before the Court. ECF No. 14-2. Because the claims here do not implicate a FEHBA or a Medicare plan, the preemption argument fails.

Even if the ER Groups' Complaint did reach any claims paid under a FEHBA or a Medicare Advantage plan, Florida Blue fails to acknowledge the well-developed body of law in this Circuit finding no federal preemption in lawsuits, such as this one, involving solely a determination of "*rate* of payment" of approved and covered claims under Florida State law and not a "*right* of payment" that could place at issue the terms of any federal employee or Medicare plan.

In addition, the ER Groups have adequately pled their state law claims. With respect to the unjust enrichment and quantum meruit claims (Counts I and II), Florida Blue ignores the prevailing caselaw in this Circuit holding that medical providers sufficiently allege the "direct benefit" element of those claims as to *insurers* by having provided out-of-network emergency medical services *to insureds*. On the statutory claims in Count III, Florida Blue not only ignores plain statutory language when arguing that those provisions do not apply to non-HMO insurers, but fails to acknowledge a recent decision by the Middle District rejecting that exact argument. The third-party beneficiary claim (Count IV) survives because Florida Supreme Court has recognized healthcare providers as third-party beneficiaries of insurance plans under the statutory incorporation doctrine. The "shotgun" pleading argument fails because the Complaint is a succinct organized recitation of facts and theories supporting recovery, sufficiently putting defendants on notice of the claims against them. Finally, the requested declaratory relief (Count V) is not duplicative of other counts because it seeks a declaration of *prospective* rates of payment, as opposed to damages for *past* underpayments. Hence, Florida Blue's motion to dismiss must be denied.

## Background

### Summary of Allegations in the Complaint

The ER Groups contract with hospitals in Florida to staff those hospitals' emergency departments with physicians and other clinical providers. ECF No. 1-2 (Cmplt.) ¶ 28. The ER Groups coordinate the billing of those providers for emergency medical services. *Id*. The providers are "out-of-network" with Florida Blue for the medical services at issue. *Id.* ¶¶ 29-30. Since 2016, the ER Groups' providers have treated thousands of Florida Blue insureds and billed Florida Blue for those emergency medical services. *Id.* ¶ 4. The total billed charges at issue are more than $ 61.7 million, which reflects usual, customary, and reasonable rates for those emergency services in the community where the services were provided. *Id.* Florida Blue approved and paid each of the claims at issue, albeit inadequately. *Id.* Accordingly, this case does not involve denials, partial denials or other coverage determinations under any of the Florida Blue Members' plans, but merely whether the ***rate*** of Florida Blue's reimbursement for those approved and covered services was adequate under Florida law. The underpayments at issue total more than $53,000,000. *Id.* ¶ 1.

The ER Groups had submitted invoices and sufficient claims information to Florida Blue requesting payment for the covered emergency medical services at issue, have made repeated unsuccessful demands to Florida Blue for payment, and have provided Florida Blue with "repeated notice of its underpayments and the illegality of its unilaterally-imposed discounts." *Id.* ¶¶ 42-44.

The ER Groups seek solely to recover the appropriate "*rate* of payment" for medical services, but not a determination as to any "*right* of payment" because Florida Blue had already approved and paid each of the claims at issue in this lawsuit, albeit inadequately. *Id.* ¶¶ 4, 26, 27. The claims here are asserted solely under state law, do not require any coverage determinations under any insureds' plans, do not rely on any assignments of benefits from any patient or any other

rights that any insureds may have against Florida Blue. *Id.* ¶¶ 26, 27.

Each of the ER Groups conferred a direct legal and financial benefit on Florida Blue by providing emergency medical services to Florida Blue members, including by satisfying Florida Blue's legal, financial, and contractual obligations to those members, by providing services as to which Florida Blue is obligated under Florida law to provide coverage and make adequate payment, and by providing emergency medical services to which the Florida Blue members were legally entitled, which the ER Groups could not refuse under applicable law, and for which Florida Blue was required to reimburse the ER Groups at fair market value. *Id.* ¶¶ 46, 47, 53. At all relevant times, Florida Blue had knowledge that ER Groups' contracted providers were required to provide and did provide emergency medical services to its insureds, knowingly and voluntarily accepted those services, and knowingly authorized, directed, or referred its members to use emergency facilities staffed by the ER Groups' providers. *Id.* ¶¶ 48, 53, 54.

The ER Groups thus seek compensation from Florida Blue for its *past* inequitable and unjust underpayments and a declaration that Florida Blue must *prospectively* pay proper rates under Florida law. The ER Groups have adequately alleged state law claims for unjust enrichment and quantum meruit (Counts I & II); violations of Fla. Stat. §§ 627.64194 & 627.513 (Count III); a third-party beneficiary claim under the statutory incorporation doctrine (Count IV); and for a declaratory judgment concerning *prospective* reimbursement rates (Count V).

### Florida Blue Relies on Factually False Assertions Outside the Complaint

As the sole factual predicate for its preemption arguments, Florida Blue falsely claims that the Complaint includes claims for services rendered to various individuals who are enrollees in FEHBA and Medicare Advantage plans, attaching purported examples of such claims to its removal papers. *See* ECF 1-3 at ¶¶ 36, 41 & ECF 1-21 through 1-32 (Exs. 2-R through 2-CC).

Florida Blue may not, however, rely on documents attached to its removal papers because the claims reflected in those documents *are not* referred to or included in the Complaint, have no connection to the ER Groups' claims and are disputed. As Florida Blue knows from a detailed underpaid claims spreadsheet that the ER Groups provided to it on or about August 25, 2020 prior to initiating this litigation, the ER Groups are not suing on payments on any claims relating to federal employees' health plans or Medicare plains. *See* ECF Nos. 14-1, 14-2 (Declaration of Sara Shoultz) ¶¶ 5-7 & Ex. A thereto. Ms. Shoultz has reviewed Florida Blue's submission and confirmed that none of the purported claims attached to Florida Blue's removal papers is at issue in this lawsuit and none was included in the claims spreadsheet provided to Florida Blue. ECF No. 14-1, ¶¶ 10-18. Indeed, the Court *may* consider on this motion the claims spreadsheet attached to Ms. Shoultz's declaration, as those are the claims at issue in this lawsuit. *See* ECF No. 5 at 5 n.4 (acknowledging that ER Groups had provided pre-litigation claims information to Florida Blue).

## Argument

As a threshold matter, the Court should refrain from addressing this motion until having resolved plaintiffs' pending motion to remand for lack of subject matter jurisdiction. *Hill v. Nat'l Ins. Underwriters, Inc.*, No. 12-62498-CIV, 2013 WL 11971265, at *1 (S.D. Fla. Aug. 7, 2013) ("Because it challenges the Court's subject matter jurisdiction, the Court must resolve a motion to remand prior to taking up any motion to dismiss."); *Adler v. Blue Cross & Blue Shield of Fla., Inc.*, No. 05-61117-CIV, 2005 WL 8155294, at *1 (S.D. Fla. Sep. 16, 2005) ("The Court will necessarily decide the motion to remand first because subject matter jurisdiction must be present before a motion to dismiss may be considered.").

On a motion to dismiss, all facts alleged by the non-moving party are accepted as true and the Court construes the allegations in the complaint in the light most favorable to plaintiffs. *Mills*

*v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). A complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of a required element. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quotation omitted). "[N]o part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide evidence for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

A court may consider a document that is not attached to the complaint, only if: "(1) it is central to the plaintiff's claim or its contents are alleged in the complaint; *and (2) no party questions the contents*." *CFL Holdings, LLC v. Halafax Landing Condo. Ltd. Liab. Co.*, No. 6:08-CV-1094-ORL-GJK, 2008 WL 11335103, at *2 (M.D. Fla. Oct. 17, 2008) (emphasis added) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"). A court "generally must convert a motion to dismiss under Fed. R. Civ. P. 12 to a Fed. R. Civ. P. 56 motion for summary judgment, if it considers materials outside of a complaint." *CFL Holdings,*

*LLC,* 2008 WL 11335103, at *2 (citing Fed. R. Civ. P. 12(b) & *Day*, 400 F.3d at 1275-76).

## I.      FLORIDA BLUE HAS RECEIVED FAIR NOTICE OF THE SPECIFIC CLAIMS AT ISSUE IN THIS LAWSUIT AND THE GROUNDS FOR THOSE CLAIMS.

Florida Blue argues that the ER Groups have failed to adequately identify the claims at issue in this lawsuit, yet purports to attach examples of such claims when arguing for dismissal on preemption grounds. Florida Blue's effort fails in both respects. The Complaint adequately alleges facts sufficient to put Florida Blue on notice of the specific claims at issue in this lawsuit, namely that Florida Blue had underpaid the ER Groups for out-of-network emergency medical services provided by the ER Groups' contracted providers to Florida Blue's insureds in Florida in an amount of more than $53,000,000 (ECF No. 1-2, ¶ 1); that the ER Groups submitted invoices and sufficient claims information requesting payment for covered emergency medical services at issue, and have made repeated demands for payment, but Florida Blue has underpaid those claims under Florida law (*id.* ¶¶ 42-43); and that the ER Groups have provided Florida Blue with "repeated notice of its underpayments and the illegality of its unilaterally-imposed discounts." *Id.* ¶ 44. In other words, the Complaint adequately alleges that Florida Blue has notice of the specific claims at issue. In any event, the spreadsheet containing specific claims at issue was not only provided to Florida Blue in August 2020 but is now in the record before the Court. *See* ECF No. 14-2.

The cases on which Florida Blue relies claiming that the ER Groups were required to provide more information in the Complaint are either helpful to the ER Groups or inapplicable here, involving *ERISA*-based claims brought under specific insureds' health plans. *See United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, No. 8:14-CV-211-T-30MAP, 2014 WL 5420801, at *3 (M.D. Fla. Oct. 22, 2014) (concluding "that [plaintiff's] claims allege sufficient facts to withstand dismissal" and directing plaintiff to provide additional information "regarding which specific insurance claims are at issue."); *Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*,

No. 10-81589-CIV, 2011 WL 2134534, at *9 (S.D. Fla. May 27, 2011) (allowing plaintiffs to replead ERISA claims when they did not allege necessary terms of the *plans on which they were suing*, did not allege that procedures at issue were medically necessary, and failed to allege exhaustion of administrative remedies); *Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Georgia, Inc.*, No. 1:17-CV-3692-TWT, 2018 WL 624882, at *3 (N.D. Ga. Jan. 30, 2018) (holding vague references to ERISA were insufficient to state a claim under various ERISA plans); *Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 8:18-CV-2873-T-23SPF, 2019 WL 2567979, at *3 (M.D. Fla. June 21, 2019) (addressing removal issues arising from benefit determinations under ERISA (i.e., *right to payment* challenges)," while allowing plaintiff to amend the complaint concerning ERISA claims (emphasis added)).

Accordingly, Florida Blue has sufficient fair notice of the claims against it as defined by time period and category in the Complaint, and supplemented with particularity in the claims spreadsheet provided to Florida Blue in August 2020, which is in the record before the Court. Even if the Court were to accept Florida Blue's position, the ER Groups should be granted leave to amend by incorporating the claims spreadsheet or related information. *See Sanctuary Surgical Ctr., Inc.,* 2011 WL 2134534, at *9 (granting leave to replead); *Polk Med. Ctr., Inc.*, 2018 WL 624882, at *5 ("the Plaintiff is ordered to amend the Complaint"); *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, No. 17-61840-CIV, 2018 WL 3199250, at *4 (S.D. Fla. June 29, 2018) (granting leave to file amended complaint).

## II.   THE ER GROUPS HAVE NOT ASSERTED ANY CLAIMS IN THIS LAWSUIT THAT IMPLICATE FEHBA OR MEDICARE ADVANTAGE PLANS.

Florida Blue improperly asks this Court to disregard allegations in the Complaint and, instead, assume that the claims at issue in this lawsuit involve FEHBA or Medicare plans, attaching inapplicable claims as examples. Florida Blue is factually incorrect. As detailed above, Florida

Blue bases its removal entirely on a demonstrably false assertion that the rate of payment claims here implicate either FEHBA or Medicare Advantage plans. The vague statements in paragraphs 36 and 44 of Ms. Norman's declaration that she had reviewed claims information from Florida Blue's claims database supposedly reflecting that the Complaint includes claims for services rendered to individuals who are enrollees in FEHBA-plans and Medicare Advantage plans are directly contrary to the allegations of the Complaint and not proper for the Court to consider on a motion to dismiss. *See Balsewich v. Manufacturers & Traders Tr. Co.*, No. 9:14-CV-81270, 2015 WL 12699877, at *1 n.1 (S.D. Fla. Feb. 10, 2015) ("In support of its Motion to Dismiss, Defendant submitted what it describes as the 'loss mitigation application' referenced in the Complaint. Plaintiff, in response, disputes that this is the application referenced in the Complaint. Accordingly, the Court does not consider this evidence as it is inappropriate at the motion to dismiss stage."); *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897-CIV, 2009 WL 2957749, at *7 (S.D. Fla. Sept. 9, 2009) (refusing to consider a defendant's sworn statement or a Florida Office of Insurance Regulation report, both of which constitute matters outside the pleadings); *CFL Holdings, LLC*, 2008 WL 11335103, at *2 (Court may consider documents outside of the complaint without converting the motion into a summary judgment motion only if they are central to the allegations of the complaint and no party disputes their contents); *Shave v. Stanford Fin. Grp., Inc.*, No. 07-60749 CIV, 2007 WL 2433388, at *1 (S.D. Fla. Aug. 22, 2007) ("it would be improper for the Court to consider Stanford's declarations, at the motion to dismiss phase, as they fall outside of the four corners of the Complaint"); *Elf Cocoon, LLC v. Philip Stein Holding Inc.*, No. 09-20893-CIV, 2009 WL 10668274, at *1 (S.D. Fla. Aug. 11, 2009) (declining to address documents not referenced in the complaint on motion to dismiss).

Florida Blue misplaces reliance on *Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue*

*Shield of Fla., Inc.*, No. 8:18-CV-2873-T-23SPF, 2020 WL 5898978, at *9 (M.D. Fla. Apr. 7, 2020), where Florida Blue removed a mixed right/rate of payment case to federal court relying on benefit determination examples under ERISA plans attached to its notice of removal. Florida Blue was allowed to rely on those documents in its motion to dismiss there because, unlike here, the plaintiff *did not contest in its motion for remand* that the claims examples attached to Florida Blue's notice of removal were in fact part of its claims and did not put its own claims spreadsheet into the record when moving to remand or in a subsequent amended complaint. *Id.*; *see also Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 8:18-CV-2873-T-23SPF, Motion to Remand, ECF No. 14 (M.D. Fla. Dec. 21, 2018). Indeed, when relying on the *unchallenged* materials submitted by Florida Blue to determine that the claims at issue included denials under ERISA plains, the *Sarasota* court criticized plaintiff's belated characterization of those claims because "the plaintiff neither attaches the spreadsheet to the record nor specifies whether the spreadsheet includes the basis for denial." *Id.*, 2020 WL 5898978, at *9.

Florida Blue bases its removal entirely on a demonstrably false assertion that the rate of payment claims here implicate either FEHBA or Medicare plans. Even if the Court chose to convert this motion to a motion for summary judgment and consider materials outside of the Complaint, including declarations of Ms. Norman and Ms. Shoultz, there at least exists a glaring factual dispute, which requires that Florida Blue's motion be denied. *See Dorn v. Comm'r*, No. 2:03-CV-539-FTM29SPC, 2004 WL 2284263, at *1 (M.D. Fla. Aug. 25, 2004) (denying motion to dismiss where "[c]omparing the allegations in the Complaint with the Declarations demonstrates there are material factual disputes which would defeat a summary judgment motion.").

Florida Blue's other cases do not support introducing extraneous disputed materials at this stage. *See Hi-Tech Pharms., Inc.*, 910 F.3d at 1189 (considering "the **undisputed** HexaPro

marketing label attached to the motion to dismiss by HBS" (emphasis added)); *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 (11th Cir. 2006) (neither party disagreed with the Court's consideration of the plan and agreement that were indisputably central to plaintiff's claims).

Accordingly, Florida Blue may not rely on disputed extraneous materials as a factual predicate for its motion to dismiss, which alone requires denial of the motion to dismiss.

## III.   THE ER GROUPS' STATE LAW CLAIMS ALLEGED ARE NOT PREEMPTED.

Having falsely concluded that the Complaint includes claims under FEHBA and/or Medicare Advantage plans, Florida Blue presents a canned treatise on irrelevant aspects of the law of preemption, ignoring the well-pleaded allegations of the Complaint and numerous recent rulings of this Court and other courts holding that preemption (and federal jurisdiction) does not exist where, like here, providers have challenged the "*rate* of payment" as opposed to a "*right* of payment" for out-of-network medical services, regardless of the underlying type of a health plan. *See REVA, Inc. v. HealthKeepers, Inc.*, 17-24158-CIV, 2018 WL 3520826, at *2 (S.D. Fla. July 20, 2018) (no preemption under ERISA, FEHBA or the Medicare Act where "Complaint seeks reimbursement for **underpaid** emergency services." (emphasis in original)); *Ascent Med. Group, LLC v. Humana Med. Plan, Inc.*, 18-60187-CIV, 2018 WL 4901405, at *3 (S.D. Fla. Apr. 4, 2018) (no preemption where action does not involve claims for ***right*** to payment or coverage under government plans, but disputes the ***rates of payment made*** under Florida law); *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1249 (S.D. Fla. 2016) (no preemption where "the Complaint does not allege any claims for 'right to payment' or coverage under government plans, nor does it challenge the actions of Defendants with respect to their administration of any Medicare, Medicaid, or FEHBA plan. Rather, it disputes the ***rates***…." (emphasis added)); *MSPA Claim I, LLC v. Scottsdale Ins. Co.*, No. 16-22965-CIV, 2017 WL

3835879, at \*3 (S.D. Fla. June 30, 2017), *report and recommendation adopted sub nom. MSPA Claims 1, LLC v. Scottsdale Ins. Co.*, No. 16-22965-CIV, 2017 WL 3769291 (S.D. Fla. Aug. 29, 2017) (no FEHBA preemption where action asserts claims under state law); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, No. 18-CV-25460-UU, 2019 WL 1915386, at \*2 (S.D. Fla. Mar. 21, 2019) (explaining that "[i]n payment dispute cases, the parties agree that there is Medicare coverage, but disagree as to the reimbursement rate. In coverage dispute cases, the parties disagree about whether Medicare provides coverage at all. Payment disputes are simple state-law contract disputes …."); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 696 (2006) ("the reimbursement right in question predicated on a [FEHBA] authorized contract, is not a prescription of federal law."). Thus, even if any FEHBA or Medicare plans were implicated in this "rate of payment" lawsuit, the plaintiffs' state law claims are not preempted.

The cases on which Florida Blue relies to argue for FEHBA preemption are easily distinguishable from the ER Groups' rate of payment claims here. Those cases involve claims by insureds against the federal government or assignment-based disputes under federal plans. *See Muratore v. U.S. Off. of Pers. Mgmt.*, 222 F.3d 918 (11th Cir. 2000) (no discussion of preemption; claims brought by federal employee directly *against OPM* challenging decision denying benefits for speech and occupational therapy); *La Ley Recovery Sys.-OB, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 14-23568-CIV, 2015 WL 12781030, at \*2 (S.D. Fla. Jan. 30, 2015) (preemption of claims for breach of FEHBA plan where "Plaintiff is seeking payment from Defendant pursuant to an assignment from the patient enrolled in the Service Benefit Plan"); *Truell v. Blue Cross & Blue Shield of Fla., Inc.*, No. 8:08-CV-103-T-24TGW, 2008 WL 11336248, at \*2 (M.D. Fla. Mar. 31, 2008) (preemption of claims by an insured under a FEHBA plan where "OPM mandated the retroactive benefits denials about which Plaintiff complains in this case."); *Barnes v. Humana,*

*Inc.*, No. 8:09-CV-524-T-30MAP, 2009 WL 10670047, at *1 (M.D. Fla. May 26, 2009) (denying motion for remand where "causes of action all relate to Defendants' alleged failure to provide Plaintiff, a paraplegic, with home health care to which she claims she was entitled under her [FEHBA] health plan"); *Nail v. Gov't Emps. Health Ass'n, Inc.*, No. 617CV1462ORL37GJK, 2018 WL 3151681, at *4 (M.D. Fla. Apr. 23, 2018), *report and recommendation adopted sub nom. Nail v. U.S. Off. of Pers. Mgmt.*, No. 617CV1462ORL37GJK, 2018 WL 2148453 (M.D. Fla. May 10, 2018) (preemption of claims *against OPM* where "dispute with Defendant is one regarding a denial of benefits for which Defendant's regulations provide the exclusive remedy"); *Kobleur v. Grp. Hospitalization & Med. Servs., Inc.*, 954 F.2d 705 (11th Cir. 1992) ("Insured brought action against insurer to recover benefits allegedly due under policy issued pursuant to [FEHBA].").

Florida Blue's cases claiming preemption under the Medicare Act are similarly inapplicable. *See Kaye v. Humana Ins. Co.*, No. 08-80819-CIV, 2009 WL 455438, at *8 (S.D. Fla. Feb. 23, 2009) (Medicare insured's "breach of contract claim, in which he seeks payments allegedly due under his health insurance Policy, is 'essentially' a claim for benefits and therefore preempted by federal Medicare law"); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1390 (S.D. Fla. 2014) (preemption in a coverage lawsuit challenging *denial* of certain claims "as not medically necessary, determining that particular services were not covered under the Medicare Act or the enrollee's Medicare Advantage plan"); *Am. Acad. of Dermatology v. Dep't of Health & Hum. Servs.*, 118 F.3d 1495 (11th Cir. 1997) (affirming dismissal for failure to exhaust administrative remedies on claims brought directly *under the Medicare Act*); *Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.*, No. 2:08-CV-847-FTM-29, 2011 WL 6780870, at *1 (M.D. Fla. Dec. 27, 2011), aff'd in part, 504 F. App'x 855 (11th Cir. 2013) ("This case arises out of defendant's unilateral change in some of the co-payments

required by its insureds under a Medicare plan.").

Indeed, the scope of preemption under the Medicare Act is far narrower than Florida Blue suggests. *See Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 362 F. Supp. 3d 1217, 1223 (M.D. Fla. 2019), quoting *Dial v. Healthspring of Alabama, Inc.*, 541 F.3d 1044, 1047-48 (11th Cir. 2008) ("even assuming that at least one of Plaintiff's claims for relief arises under the Medicare Act, the district court would lack subject-matter jurisdiction over the complaint because it is not against the Secretary of the Department of Health and Human Services for review of an administrative decision." (internal editing and citations omitted)).

The ER Groups' state law rate of payment claims are therefore not preempted by either FEHBA or the Medicare Act, and the ER Groups bore no duty to exhaust any administrative remedies before bringing this action. *See Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, 511 F. Supp. 3d 1240, 1250 (M.D. Fla. 2021) (under federal regulatory schemes in ERISA, FEHBA and the Medicare Act, "the plaintiff here bore no duty to exhaust an administrative remedy"). The motion to dismiss should be denied.

## IV.  THE COMPLAINT DOES NOT CONSTITUTE A SHOTGUN PLEADING.

Far from a "shotgun" pleading, the Complaint contains a concise recitation of facts and legal theories under which the ER Groups are entitled to recovery for Florida Blue's illegal underpayments for emergency medical services provided to its insureds. The Complaint alleges underpayments for emergency medical services by two closely related Florida Blue entities (represented by the same counsel), spans less than seventeen pages and includes 78 paragraphs of factual and legal allegations describing the out-of-network emergency medical services provided by the ER Groups' contracted providers to thousands of Florida Blue's members, the billings for those services in the amount of more than approximately $61.7 million as the usual, customary,

and reasonable rates for the particular emergency services in the community where those services were provided, Florida Blue's approval of the claims at issue and payment, albeit at an inadequate rate, and explains in Counts I through V the various bases for recovery under Florida state law. Moreover, a spreadsheet detailing each of the thousands of individual claims at issue was provided to Florida Blue in advance of this litigation and is in the record before the Court.

Under similar circumstances, the Middle District recently agreed with a provider plaintiff facing a "shotgun" pleading argument that setting forth thousands of violations of claim underpayments by Florida Blue in a complaint would be impractical and that alleging various legal theories, each of which may be proven by multiple different underpayments complied with Rule 8 and placed the insurer on fair notice of what each claim was and the grounds upon which it rests. *Sarasota Cty. Pub. Hosp. Bd.*, 511 F. Supp. 3d at 1244. The same logic applies here.

Examples of "shotgun" complaints in cases cited by Florida Blue, which courts have described as "a mostly incoherent document" containing "duplicative," "inconsistent," and "wholly conclusory" allegations in paragraphs that spanned multiple pages, containing allegations that were "oftentimes not connected to a particular Defendant or set of Defendants, making it impossible to understand who did what," are a far cry from the Complaint here. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018) (affirming dismissal of a 70-page complaint against *fourteen defendants* containing duplicative and inconsistent allegations which "continued to fail to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in" and which plaintiff *did not contest* was a shotgun pleading); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (affirming dismissal of an "incomprehensible" shotgun complaint containing 16 counts against multiple defendants that alleged "a multitude of claims and incorporate[d] by reference all of its factual allegations into

each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief."); *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1324 (11th Cir. 2015) (reversing district court's dismissal as a shotgun pleading because "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (fifty-eight page long complaint, naming fourteen defendants, each of which was charged in each count, making no distinction among the fourteen defendants); *Joseph v. Bernstein*, 612 F. App'x 551, 553 (11th Cir. 2015) (complaint against five defendants "indiscriminately grouped all Defendants together without explaining the factual basis for each of the Defendants' liability").

Thus, Florida Blue cannot genuinely claim that it does not have fair notice of the claims against it as required by Fed. R. Civ. P. 8 and 10.

## V.     THE COMPLAINT ADEQUATELY STATES FLORIDA STATE LAW CLAIMS.

### A. The ER Groups Have Adequately Alleged Quasi-Contract Claims for Unjust Enrichment and Quantum Meruit in Counts I and II.

To plead quantum meruit and unjust enrichment, plaintiff must allege that: (1) it conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; (3) the defendant accepted or retained the benefit; and (4) the circumstances are such that it would be inequitable for defendant to retain the benefit without paying fair value for it. *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, No. 619CV1694ORL40LRH, 2020 WL 7389987, at *11 (M.D. Fla. June 1, 2020), *report and recommendation adopted*, No. 619CV1694ORL40LRH, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (citing *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013)).

Florida Blue argues for dismissal of the quasi-contract unjust enrichment and quantum

meruit claims primarily on the grounds that the ER Groups could not have conferred a "direct benefit" on Florida Blue by providing out-of-network emergency medical services *to its insureds*. Florida Blue cites a handful of inapposite cases for that proposition, while failing to acknowledge substantial authority in this Circuit and numerous more recent decisions allowing discovery to proceed on providers' allegations of a direct benefit to an insurer by providing out-of-network emergency services to the insureds. As this Court recently explained when considering allegations substantively similar to those in the ER Groups' Counts I and II of the Complaint:

> There is a clear split of authority within district Courts in the Southern and Middle Districts of Florida as to whether the provision of medical treatment to an insured confers a direct benefit upon an insurer…. ***The Court will follow recent decisions in both the Southern District of Florida, and the Middle District of Florida, which have found that a plaintiff's claims for unjust enrichment or quantum meruit can survive a motion to dismiss even though they are based on a benefit allegedly provided to an insurer through a healthcare providers provision of services to an insured***. At this stage in the litigation, Plaintiffs have pled sufficient factual allegations to proceed on their unjust enrichment and quantum meruit claims.

*Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1303 (S.D. Fla. 2021) (emphasis added; internal citations omitted); *Nordt v. Colina Ins. Ltd.*, No. 17-21226-CIV, 2017 WL 4225550, at *7 (S.D. Fla. Sept. 22, 2017) (denying motion to dismiss where plaintiff "has detailed how it conferred a benefit on Colina—providing services to its insureds—and how Colina accepted and retained that benefit without paying for it"); *Surgery Ctr. of Viera, LLC*, 2020 WL 7389987, at *11 (collecting cases and denying motion to dismiss unjust enrichment and quantum meruit claims where medical provider alleged that it "conferred a direct benefit upon Defendants by providing Defendants' insured/member (D.B.) with medical services to which D.B. was entitled under the Plan document/insurance policy as evidenced by the partial compensation tendered to [Surgery Center] by Defendants in relation to same."); *Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, No. 8:07-CV-1222-T-27TGW, 2008 WL 792061, at *8

17

(M.D. Fla. Mar. 25, 2008) (denying motion to dismiss quantum meruit claims by provider against insurer because "contract implied-in-fact is also stated when the defendant knew that services were being rendered and both sides intended for compensation to be paid").

Accordingly, under the prevailing caselaw in this Circuit, the ER Groups have alleged more than sufficient facts in the Complaint to proceed to discovery on their claims for unjust enrichment (Count I) and quantum meruit (Count II).

**B.   Plaintiffs Have Adequately Pled Violations of Fla. Stat. §§ 641.513 and 627.64194.**

Florida Blue ignores plain statutory language when arguing that Count III should be dismissed, arguing that Blue Cross and Blue Shield of Florida, Inc. is not an HMO and therefore is not covered by the statute. As the Middle District recently explained in a case to which Florida Blue is a party, however, that argument fails because

> the defendants overlook the fact that Section 627.64194,[2] Florida Statutes, incorporates by reference Section 641.513(5). The second amended complaint cites Section 627.64194 to support the plaintiff's statutory claim and notes that "BCBSF breached its obligations under law, including, without limitation, Section 641.513." … Therefore, read in context, a reasonable construction of Count II states a claim against Florida Blue.

*Sarasota Cty. Pub. Hosp. Bd.*, 511 F. Supp. 3d at 1254.

Florida Blue's second argument also fails. Just like it does here, Florida Blue recently argued erroneously in *Sarasota Cty. Pub. Hosp. Bd.* that a plaintiff medical provider

> fails to state a claim under Section 627.64194, Florida Statutes, because the plaintiff fails to "plead facts that plausibly meet the statutory definition" of each element of the statutory claim. … Specifically, the defendants argue that the second amended complaint lacks allegations that a patient presented "with 'acute symptoms,' that those symptoms were of 'sufficient severity,' that they put 'the health of the patient' in 'jeopardy,' or required 'immediate medical attention,' or even that 'medical screening' of the type contemplated by these statutes was provided."

*Id.* at 1254-55. The Middle District rejected that argument because an allegation that "a patient

---

[2] Section 627.64194 applies to any health insurer without limitation.

presented to the Hospital's emergency department and was treated … to relieve or eliminate the member's emergency medical condition" sufficed to state the statutory claim. *Id.* (internal editing omitted); *see also Fla. Emergency Physicians Kang & Assocs., M.D., Inc.*, 526 F. Supp. 3d at 1302 (plaintiffs need not "provide details for the thousands of claims at issue, for which Plaintiffs allege they were underpaid" to state a claim under §§ 641.513 and 627.64194).

Here, the Complaint sufficiently alleges that pursuant to § 627.64194, both Florida Blue entities are required to reimburse the ER Groups at the rates set by § 641.513(5); that the ER Groups' providers delivered emergency medical services to thousands of Florida Blue members; that those emergency services were "covered services" within the meaning of § 627.64194; and that Florida Blue has underpaid for those claims. *See* Cmplt. ¶¶ 30, 31, 32, 35, 42, 43, 44.

### C.   The ER Groups Have Stated a Claim in Count IV as Third-Party Beneficiaries.

It is well-settled that "Florida law recognizes medical service providers as intended beneficiaries of insurance contracts." *Found. Health v. Westside EKG Assocs.*, 944 So.2d 188, 197 (Fla. 2006) (health care providers could maintain a third-party beneficiary claim against insurer based on statutory provisions for the providers' benefits that were incorporated into the policies under Florida law); *Orion Ins. Co. v. Magnetic Imaging Sys. I*, 696 So.2d 475, 478 (Fla. 3d DCA 1997) ("Medical service providers ... have been recognized as third party beneficiaries of insurance contracts."); *Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 371 F. Supp. 3d 1056, 1072 (M.D. Fla. 2019) (remanding third party beneficiary claims by medical provider against insurer to state court). Florida Blue simply ignores this black letter law.

The Complaint adequately alleges, among other things, that ER Groups are third-party beneficiaries of the policies underlying the claims for out-of-network emergency medical services here because Florida Blue is mandated to pay the ER Groups for such services at specific rates set

by Florida Statutes, described above, which are incorporated within the insurance contracts by the statutory incorporation doctrine. Cmplt. ¶ 67. Indeed, by making thousands of inadequate payments directly to the ER Groups for the covered emergency medical services at issue, Florida Blue has acknowledged each of the ER Groups' third-party beneficiary status and has thereby waived any arguments or clauses to the contrary. *Id.*

Defendants' cited cases lend them no support. *See MSP Recovery, LLC v. Allstate Ins. Co.*, No. 1520788CIVSEITZTURNO, 2015 WL 5882122, at *1 (S.D. Fla. Oct. 6, 2015) (subrogation claims under a Medicare Advantage plan); *Hialeah Physicians Care, LLC v. Connecticut Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3810617, at *2 (S.D. Fla. July 22, 2013) (defendant could not be liable to medical provider because it "was ***not the insurer*** and … never contracted with the beneficiaries to provide the Plan's benefits" (emphasis added)).

### D.  Declaratory Relief Claim in Count V Is Not Duplicative of Other Counts.

Count V of the Complaint seeks a prospective declaration of "the amounts that Florida Blue is required to pay to the ER Groups for the ***present and future*** covered medical services," not about damages for ***past*** underpayments sought in Counts I through IV. *Compare* Cmplt. ¶ 76 (emphasis added) *with id.* ¶¶ 51, 57, 64, 72. The declaratory relief count is therefore not duplicative and survives the motion to dismiss. *See Fla. Emergency Physicians Kang & Assocs., M.D., Inc.*, 526 F. Supp. at 1303 (forward looking claim for declaratory judgment "may proceed as it seeks a form of relief which Plaintiffs would be unlikely to obtain through the remainder of their claims.").

### Conclusion

Based on the foregoing, the Court should deny the defendants' motion in its entirety.

Dated: December 3, 2021                Respectfully Submitted,

By: */s/ Jamie Wasserman*
**Joseph M. Goldstein, Esq**.
Florida Bar No. 820880
Email: jgoldstein@shutts.com
**Jamie Wasserman, Esq.**
Florida Bar No. 68513
Email: jwasserman@shutts.com
*Counsel for Plaintiffs*
200 East Broward Boulevard
Suite 2100
Fort Lauderdale, FL 33301
Telephone:   (954) 524-5505
Facsimile:   (954) 524-5506

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of December, 2021, a true and correct copy of

the foregoing has been furnished *via* CM/ECF which will send notification of such filing to Allen

P.      Pegg,      Esq.      (allen.pegg@hoganlovells.com),      Daniel      Balmori,      Esq.

(daniel.balmori@hoganlovells.com),      and      William      Homer,      Esq.

(william.homer@hoganlovells.com), attorneys for Defendants, at Hogan Lovells US LLP, 600

Brickell Avenue, Suite 2700, Miami, Florida 33131.

By: */s/ Jamie Wasserman*
**Jamie Wasserman, Esq.**