**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case. No. 21-CV-62139-SINGHAL/VALLE

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

       Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

       Defendants.

_____/

**PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS[1]**

---

[1] Plaintiffs' Amended Motion for Attorneys' Fees and Costs includes the addition of the "Certification of Conferral" and no other changes and is being filed pursuant to the Court's Order dated January 7, 2022 [ECF No. 28].

Plaintiffs Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Melbourne Emergency Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach, P.A.; and Suwannee Emergency Group, LLC (the "ER Groups"), respectfully move the Court pursuant to 28 U.S.C. § 1447(c), for an award of attorneys' fees and costs against defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue and Health Options, Inc. (together "Florida Blue" or "Defendants").

## Introduction

Florida Blue's removal papers presented as a canned treatise on irrelevant removal and preemption caselaw that Florida Blue appears to file as part of its "playbook" to delay and burden healthcare providers who challenge the rate of payment for services already provided to Florida Blue's members. An award of attorneys' fees and costs in favor of the ER Groups is warranted pursuant to 28 U.S.C. § 1447(c) because Florida Blue's removal of this "rate of payment" case was a textbook example of an improper removal. Here, Florida Blue engaged in objectively unreasonable efforts to delay resolution of claims arising under Florida state law and caused Plaintiffs to incur significant undue burdens and expenses to seek remand and responding to Defendants' strategically timed motion to dismiss.

In its removal papers, Florida Blue ignored not only the falsity of its factual predicate for the removal, but also the well-established precedent against removal, including decisions of this Court in which *Florida Blue was a party*, rejecting the same federal jurisdiction grounds that Florida Blue invoked here. *E.g., REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3520826, at *1 (S.D. Fla. July 20, 2018) (denying motion to reconsider remand because plaintiff

sought reimbursement for "underpaid" emergency services); *Ascent Med. Grp., LLC v. Humana Med. Plan, Inc.*, No. 18-60187-CIV, 2018 WL 4901405, at *2 (S.D. Fla. Apr. 4, 2018). Indeed, it was only after Florida Blue caused the ER Groups to incur significant expenses and delay, in moving to remand and opposing Florida Blue's motion to dismiss that Florida Blue agreed to stipulate to remand to state court. The belated agreement to remand a case that should never have been removed in the first place, however, does not excuse Florida Blue's conduct.

First, in removing this case, the Defendants turned a blind eye to the fact known to them all along that the ER Groups' claims at issue in this lawsuit do not involve claims under health plans provided to federal employees known as Service Benefit Plans, governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914, or plans that are governed by Title XVII of the Social Security Act, 42 U.S.C. § 1395 et seq. ("Medicare Advantage plans"). There is no dispute that Florida Blue *knew* from the claims file that the ER Groups provided to Florida Blue's management in advance of this litigation that *none* of the claims at issue in this lawsuit involves a FEHBA or Medicare Advantage plan. Indeed, the ER Groups' outside counsel specifically referred Florida Blue's outside counsel to that claims file prior to removal and would have provided Florida Blue's outside counsel with another copy of that file, had Florida Blue's counsel responded to an email to address HIPAA confidentiality concerns.

Second, it is well settled that federal question jurisdiction does not exist here because this lawsuit involves solely a determination of "*rate* of payment" of approved claims and not a "*right* of payment" that could place at issue the terms of any federal employee or Medicare plans.

Third, at the time of removal, Florida Blue ignored the well-developed body of law, including cases in which Florida Blue was a party, holding that even if the ER Groups' allegations did reach any claims under a FEHBA or a Medicare Advantage plan, federal jurisdiction would

not lie in this "*rate of payment*" dispute. Under United States Supreme Court precedent and a long line of decisions in this Circuit that Florida Blue ignored in its removal papers, Florida Blue cannot invoke the federal officer removal statute, 28 U.S.C. § 1442(a)(1) because as a mere administrator of federal plans, Florida Blue does not act under the requisite direct control of a federal officer that could warrant removal under § 1442(a)(1). There is indisputably no causal nexus between the state law "rate of payment" claims here and Florida Blue's administration of any FEHBA or Medicare Advantage plans. Florida Blue does not even have colorable *defenses* under federal law.

Finally, by moving to dismiss almost immediately after removal and by refusing to hold that motion to dismiss in abeyance pending jurisdictional determinations, Florida Blue forced the ER Groups to incur significant burdens responding to Florida Blue's meritless motion to dismiss, which primarily relied on federal substantive and procedural grounds, despite the unassailable absence at all times of an objectively reasonable basis for federal jurisdiction.

Under these circumstances, the Court should exercise its discretion under 28 U.S.C. § 1447(c) and award the ER Groups their attorneys' fees and costs incurred in connection with seeking remand, including the fees and costs incurred responding to Florida Blue's motion to dismiss and in preparing the present motion for fees.[2]

## Background

### *Summary of Allegations in the Complaint*

The ER Groups contract with hospitals in Florida to staff those hospitals' emergency departments with physicians and other clinical providers. Each of the ER Groups coordinates the billing of its contracted healthcare providers for emergency medical services. ECF No. 1-2, ¶ 28. None of the ER Groups has a contract for negotiated rates with Florida Blue and their providers

---

[2] The ER Groups respectfully request that upon granting this motion, the Court set a schedule for the ER Groups to submit an evidentiary application to determine the amount of the fee award.

are therefore "out-of-network" for the medical services at issue. *Id.* ¶¶ 29-30.

On or about September 2, 2021, plaintiffs filed the Complaint in the Seventeenth Judicial Circuit Court in Broward County, Florida (the "Circuit Court") seeking to recover damages caused by Florida Blue's *underpayments* to the ER Groups for out-of-network emergency medical services provided by the ER Groups' contracted providers to Florida Blue's insureds in Florida. The underpayments at issue total more than $53,000,000. *Id.* ¶ 1.

In the well-pled allegations of the Complaint, the ER Groups seek solely to recover from Florida Blue the appropriate "*rate* of payment" for medical services and not a determination concerning the ER Groups' "*right* of payment" on claims that Florida Blue had approved and paid, albeit inadequately, to the ER Groups. *Id.* ¶¶ 4, 26, 27. The claims in this lawsuit are solely for rate of payment under Florida state law for approved and covered services rendered to Florida Blue members and do not require any coverage determinations under the Florida Blue members' plans. *Id.* No claim is made by the ER Groups pursuant to an assignment of benefits from any patient or upon any rights that any Florida Blue members may have to pursue against Florida Blue. Plaintiffs do not stand in the shoes of Florida Blue members for the purposes of this lawsuit. *Id.* ¶¶ 26, 27.

The ER Groups simply seek compensation from Florida Blue for past underpayments and a declaration that Florida Blue must cease unfairly discounting payments contrary to Florida state law on claims for unjust enrichment and quantum meruit (Counts I & II); a claim for violation of Fla. Stat. §§ 627.64194 & 627.513, which set reimbursement rates for out-of-network services (Count III); a claim as a third-party beneficiary under Florida Blue's contracts with members that incorporate certain Florida statutory provisions (Count IV); and for declaratory judgment concerning the *rate* of reimbursement for the emergency medical services at issue (Count IV). None of the ER Groups' claims contemplates or implicates questions of federal law.

***Florida Blue Knowingly Relied on Factually False Grounds for Removal***

Florida Blue has known since August 2020 and certainly at the time of removal that the claims at issue involve neither FEHBA nor Medicare Advantage plans. There is no dispute that prior to initiating this litigation, the ER Groups compiled a spreadsheet of the claims at issue for which the ER Groups were underpaid by Florida Blue. *See* ECF No. 14-1 (Declaration of Sara Shoultz, ¶¶ 5-7). As part of pre-litigation efforts, that claims spreadsheet was provided to Florida Blue on or about August 25, 2020, containing detailed information concerning each of the claims at issue, including the patients' names and dates of birth, policy numbers, dates and locations of service, CPT code level detail, actual charges, and approved amounts. *Id.* at Ex. A.

On September 29, 2021, prior to removal, Florida Blue's outside counsel emailed counsel for the ER Groups asking for a copy of the claims spreadsheet identifying the claims at issue in this action for which plaintiffs claim they were under-paid. Exhibit A.[3] On the same date, ER Groups' counsel responded explaining that the ER Groups had already provided Florida Blue with a spreadsheet containing the information that counsel requested during pre-litigation discussions. *Id.* ER Groups' counsel explained that the claims spreadsheet contains HIPAA protected health information (PHI) and suggested that Florida Blue's counsel should obtain it directly from its client with proper confidentiality protections. *Id.* Florida Blue's counsel persisted in its request for a copy of the spreadsheet that he acknowledged had "already been prepared," but without providing any valid reason for doing so. *Id.* In response, the ER Groups' counsel explained that there should not be any confusion as to the spreadsheet that the ER Groups provided to Florida Blue directly and that the ER Groups prefer not to circulate PHI unless absolutely necessary. *Id.* On October 4, 2021, in response to yet another email from Florida Blue's counsel pressing for a copy of the

---

[3] Attached to the transmittal email from Jamie Wasserman, Esq.

claims spreadsheet, ER Groups' counsel asked whether Florida Blue's outside counsel has a business associate agreement (BAA) in place with its client, which may have addressed potential HIPAA concerns before sharing PHI with a third party. *Id.*

Florida Blue's outside counsel did not respond to the October 4, 2021 inquiry about a BAA. Presumably Florida Blue satisfied itself about the significance of the claims spreadsheet in privileged communications with its counsel. Nevertheless, without following up about the claims spreadsheet or making any effort to confirm that the claims spreadsheet still represented the scope of insureds at issue, Florida Blue removed this case to this Court on October 15, 2021. The removal notice was supported by a declaration of Annette Norman, Florida Blue's Litigation Management Consultant (*see* ECF Nos. 1 & 1-3), claiming that the Complaint includes claims for services rendered to various individuals who are enrollees in FEHBA-governed plans and Medicare Advantage plans, despite Florida Blue (and its outside counsel) having actual knowledge to the contrary. In other words, it is undisputed that Florida Blue removed this case notwithstanding that the ER Groups provided a claims spreadsheet to Florida Blue in August 2020, and that the ER Groups' outside counsel advised Florida Blue's outside counsel *before removal* that Florida Blue had possession of the spreadsheet detailing that the claims at issue.

***Procedural Maneuvering with Respect to Briefing the Motion to Dismiss***

On October 22, 2021, just seven days after removal, Florida Blue filed a motion to dismiss the Complaint, relying primarily on the same legal issues as the Notice of Removal, namely Florida Blue's assertion of federal preemption based on its erroneous invocation of FEHBA and Medicare Advantage plans that are not at issue in this lawsuit. ECF No. 5. Despite the "fundamental" rule that jurisdictional issues on a remand motion ought to be addressed before any motion to dismiss,[4]

---

[4] *Hill v. Nat'l Ins. Underwriters, Inc.*, No. 12-62498-CIV, 2013 WL 11971265, at *1 (S.D. Fla. Aug. 7, 2013) ("Because it challenges the Court's subject matter jurisdiction, the Court must resolve a motion to remand prior to

in meet and confer efforts, Florida Blue refused to agree to hold the motion to dismiss in abeyance until the resolution of the remand motion. Instead, Florida Blue insisted on a tight briefing schedule around the Thanksgiving holiday that required the ER Groups to respond to Florida Blue's motion to dismiss, timed in a way that the motion to dismiss would be fully briefed before the remand motion. *See* Exhibit B (email exchange among counsel). On November 15, 2021, Plaintiffs filed their motion to remand (ECF No. 14), and on December 3, 2021, Plaintiffs filed their opposition to the motion to dismiss. ECF No. 19.

On December 13, 2021, after forcing the ER Groups to bear the burden of substantial briefing, but prior to Florida Blue responding to Plaintiffs' remand motion, counsel for Florida Blue emailed Plaintiffs' counsel offering to stipulate to a remand. On December 22, 2021, the parties filed a joint stipulation for remand to state court in which the ER Groups expressly reserved the right to seek an award of attorneys' fees pursuant to § 1447(c). ECF No. 24. On December 24, 2021, the Court issued the Order of Remand, expressly stating that "Plaintiffs reserve the right to move for attorney's fees and costs associated with remand if appropriate." ECF No. 25.

The ER Groups now bring this motion for an award of fees and costs incurred in connection with the improper removal because Florida Blue not only lacked an objectively reasonable basis for removal, but also imposed undue burdens and expenses on the ER Groups in forcing them to respond to Florida Blue's premature and flawed motion to dismiss, which relied primarily on the same improper federal arguments as the removal.

## Argument

Attorneys' fees are routinely awarded upon remand of improperly removed cases. "An

---

taking up any motion to dismiss.") (citing *Univ. Of S. Alabama v. Am. Tobacco Co.*, 168 F. 3d 405, 411 (11th Cir. 1999)); *Adler v. Blue Cross & Blue Shield of Fla., Inc.*, No. 05-61117-CIV, 2005 WL 8155294, at *1 (S.D. Fla. Sep. 16, 2005) ("The Court will necessarily decide the motion to remand first because subject matter jurisdiction must be present before a motion to dismiss may be considered.")

order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The "standard for awarding fees should turn on the reasonableness of the removal." *Baisden v. Hartford Ins. Co. of the Midwest*, 0:20-CV-60289-UU, 2020 WL 5798399, at *2 (S.D. Fla. Feb. 28, 2020) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). The district court should award fees under Section 1447(c) whenever "the removing party lacked an objectively reasonable basis for seeking removal." *Id.*; *Grant v. Rotolante*, 6:13-CV-168-ORL-TBS, 2013 WL 2155076, at *7 (M.D. Fla. May 17, 2013) (granting fees upon finding that "Plaintiff's basis for removal was contrary to well-settled law and was not objectively reasonable."); *Hansard v. Forsyth Cnty.*, GA, 191 F. App'x 844, 846-47 (11th Cir. 2006) (finding the district court did not abuse its discretion by awarding fees under § 1447(c) when the original state court complaint, on its face, did not plead a federal claim and resolution of the state law claims did not require resolution of any federal issues); *see also Cardinal Health 200, LLC v. Allscripts, LLC*, 2:13-CV-305, 2014 WL 971987, at *2 (S.D. Ohio Mar. 12, 2014) (awarding fees under § 1447(c) upon stipulated remand where defendants failed to conduct a proper investigation prior to removal). "The purpose of an award is not to punish the removing party but instead to reimburse the party who sought remand for litigation costs incurred as a result of unnecessary removal." *Portillo v. Beyer Fin. Corp.*, 15-CV-04493-RS, 2015 WL 7738029, at *3 (N.D. Cal. Dec. 1, 2015). A district court retains jurisdiction after remand to award attorneys' fees and costs. *Ware v. Pine State Mortgage Corp.*, 754 Fed. Appx. 831, 832 (11th Cir. 2018).

Here, Florida Blue's removal was objectively *un*reasonable because (1) removal was based on a flawed factual predicate of which Florida Blue was aware or should have been aware upon a reasonable investigation, and (2) the law is well settled in this Circuit that federal jurisdiction does

not lie in a lawsuit by medical providers challenging the *rate* of payment by an insurer, regardless of the type of underlying health plan at issue. As a result, the ER Groups are entitled to an award of all fees incurred in connection with its efforts to obtain a remand, including its preparation of the present motion for fees and an opposition to the defendants' motion to dismiss that relied primarily upon flawed federal preemption arguments and federal procedural rules, which the ER Groups would not have had to address had this matter proceeded properly in state court in the first instance.

## I.      FLORIDA BLUE EITHER IGNORED FACTS REGARDING THE PLANS UNDERLYING ER GROUPS' UNDERPAYMENT CLAIMS OR FAILED TO CONDUCT A REASONABLE INVESTIGATION PRIOR TO REMOVAL.

First, the ER Groups are entitled to an award of fees upon remand because Florida Blue based its removal entirely on an objectively false factual assertion that the rate of payment claims at issue include claims under either FEHBA or Medicare Advantage plans. As explained above, since August 2020, Florida Blue has had in its possession the detailed claims spreadsheet reflecting the underpayment claims at issue in this lawsuit. Moreover, counsel for the ER Groups referenced the existence of this claims spreadsheet to Florida Blue's outside counsel *prior to removal*, yet Florida Blue and its counsel simply ignored that information. Instead, Florida Blue vaguely speculated as to the existence of claims for services allegedly rendered to individuals who are enrollees in FEHBA-plans and Medicare Advantage plans. Consequently, a cursory investigation by Florida Blue in advance of removal would have revealed the lack of any underpayment claims under FEHBA or Medicare Advantage plans in this lawsuit.

## II.     EVEN FLORIDA BLUE'S SPECULATIVE ASSERTIONS DID NOT PROVIDE A VALID BASIS FOR REMOVEL UNDER WELL-SETTLED LAW.

Even if the Court were to excuse Florida Blue for having falsely asserted that the Complaint includes claims under FEHBA and/or Medicare Advantage health plans, Florida Blue's removal

under 28 U.S.C. § 1442(a)(1) was objectively unreasonable. It is well settled that § 1442(a)(1) does not apply to health insurers that contract with the government to administer FEHBA and/or Medicare Advantage plans and there is no causal nexus between the ER Groups' state law "rate of payment" claims in this lawsuit and Florida Blue's administration of any FEHBA or Medicare Advantage health plans.

### A. The Federal Officer Removal Statute Did Not Provide Objectively Reasonable Grounds for Removal.

In its removal papers, Florida Blue failed to acknowledge Supreme Court precedent and numerous cases in this Circuit, including cases *in which Florida Blue was a party*, holding that § 1442(a)(1) does not apply to health insurers administering health plans under FEHBA or Medicare Advantage (i.e. Part C of the Medicare Act), particularly where a complaint does not challenge a plan participant's *right* to coverage under any such plan.

Courts require that a defendant seeking removal under § 1442(a)(1) demonstrate that its conduct was "performed pursuant to the direct and detailed control of an officer of the United States." *Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 362 F. Supp. 3d 1217, 1223 (M.D. Fla. 2019) (quoting *Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1318 (S.D. Fla. 2004)). "Asserting that a defendant's conduct is performed at the general direction of a federal agency does not rise to the level of removal based on 28 U.S.C. § 1442(a)(1)." *Kennedy*, 329 F. Supp. 2d at 1318. As this Court explained in *Kennedy*, where Florida Blue was a party:

> Under Defendant's theory that federal jurisdiction arises merely from being a provider of Medicare benefits without any direct causal connection to the decision that gives rise to Plaintiff's claim, all cases brought against intermediaries who have a contract to provide such benefits would be entitled to federal jurisdiction. This conclusion is counter to the discussion above. The contractual relationship between intermediaries and the Health Care Financing Administration does not in itself constitute the direct and detailed control that is required to assert federal jurisdiction.

*Id.* (granting motion to remand); *see also Adler*, 2005 WL 8155294, at *3 (distinguishing

*Neurological Assocs. v. Blue Cross/Blue Shield of Florida, Inc.*, 632 F. Supp. 1078 (S.D. Fla. 1986) on which Florida Blue relied for removal and remanding, where "claim [was] not intertwined with the decision to award Medicare benefits or with Defendant's contract with Medicare.").

With respect to FEHBA plans, a "key inquiry to determine whether an action is based on an insurer's role in administering a FEHBA plan, and therefore whether it acts under the direction of OPM, is whether the plaintiff's claim is based on the plan participant's ***right to reimbursement*** and whether the plaintiff healthcare provider is seeking payment ***based on an assignment*** from the plan participant." *Baptist Hosp. of Miami, Inc. v. Humana Health Ins. Co. of Fla., Inc.*, No. 1:15-CV-22009-UU, 2015 WL 11237013, at *3 (S.D. Fla. Aug. 19, 2015) (remanding contractual reimbursement rate claims under FEHBA plans); *Dunn v. Blue Cross Blue Shield of Alabama*, No. 2:10-CV-02220-AKK, 2011 WL 13285142, at *5 (N.D. Ala. Mar. 17, 2011) ("FEHBA's implementing regulations make clear that OPM has created a remedial mechanism solely for the claims of '**<u>covered individuals</u>**,' not for the claims of providers." (emphasis in original)); *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 976 (9th Cir. 2007) (plaintiff-provider's claims were not preempted by FEHBA because the plaintiff was not a covered person under FEHBA and lacked written consent or assignment from the FEHBA-insured patients).

Consistent with this Court's *Kennedy* decision, the Supreme Court held that a plaintiff does not act under the authority of a federal officer even when "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145, 127 S. Ct. 2301, 2306 (2007)). The *Watson* Court held that "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations, does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official,'" even if there are

highly detailed regulations and the activities of the private entity are highly monitored. *Id.*, 127 S.

Ct. at 2308. Another Florida federal court recently rejected the grounds for removal on which

Florida Blue relies here and explained that in light of *Watson,* removal under § 1442(a)(1)

> necessitates a finding of subjection, guidance, or control. Furthermore, *Watson* teaches
> that merely complying with the law does not satisfy the "acting under" provision, and
> a private person, such as Defendant, "acting under" a federal officer or agency must
> demonstrate its effort to assist, or to help carry out, the duties or tasks of a federal
> superior.

*Premier Inpatient Partners*, 362 F. Supp. 3d at 1224 (internal citation omitted).

As a result, a health insurer such as Florida Blue that merely contracts with the federal

government to administer either FEHBA or Medicare Advantage (i.e. Part C) health plans is not

acting under sufficient control to trigger the availability of the federal officer removal statute. This

Court, relying on *Watson*, has explained that

> contracts between Part C organizations and providers are subject to very few
> restrictions generally, the parties may negotiate their own terms. The government
> transfers the risk of providing care to beneficiaries to the Part C organization and thus
> with the government's risk extinguished, any dispute over payment to the organization
> is solely between the organization and the service provider.
>                                        * * *
> Given the nature of the Medicare Part C contract, WellCare is more akin to a regulated
> private industry rather than an entity acting under the control of a federal officer.

*Sheridan Healthcorp, Inc. v. WellCare of Fla., Inc.*, No. 07-61018-CIV, 2007 WL 9701702, at *7-

8 (S.D. Fla. Nov. 15, 2007) (internal editing and citations omitted). Numerous decisions of this

Court and other courts have since reached similar results, rejecting efforts by health insurers to

avail themselves of federal jurisdiction under § 1441(a)(1), even in cases involving coverage

disputes brought by federal plan members. *See Assael*, 2018 WL 6529530, at *6 (holding that the

federal officer removal statute does not authorize removal of a coverage dispute under a Medicare

plan); *Wise v. United HealthCare of Fla., Inc.*, 387 F. Supp. 3d 1382, 1386 (M.D. Fla. 2019),

*appeal dismissed sub nom. Wise for Wise v. United Healthcare of Fla., Inc.*, No. 19-12122-JJ,

2020 WL 2968371 (11th Cir. Jan. 8, 2020) (remanding coverage dispute under a Medicare plan for lack of subject matter jurisdiction ); *Kindred Hosps. E., LLC, et al v. Wellcare of Fla., et al*, No. 8:17-cv-00864-EAK-AEP (M.D. Fla. Feb. 2, 2018) (concluding that the defendant, a private company that is also a Medicare Advantage Organization, does not "act under" the control of a federal officer for purposes of satisfying the federal officer removal statute); *Skiles v. Careplus Health Plans, Inc.*, No. 14-80892-CIV, 2014 WL 4322322, at *3 (S.D. Fla. Sept. 2, 2014), *vacated on other grounds*, No. 14-14087-BB, 2015 WL 1801272 (11th Cir. Apr. 7, 2015) (remanding coverage dispute brought by insured where CarePlus has offered no evidence that its decision to not authorize Mr. Skiles' x-ray was "directed" or "controlled" by a federal agency.").

Not only did Florida Blue ignore the above-cited body of law in its removal papers, but all of the cases on which Florida Blue relied in its invocation of § 1442(a)(1) in its removal papers are either easily distinguishable from the ER Groups' claims or no longer constitute good law in light of the Supreme Court's *Watson* decision and its progeny. *See Anesthesiology Assocs. of Tallahassee, P.A. v. Blue Cross Blue Shield of Fla.*, No. 03-15664, 2015 WL 6717879, at *2 (11th Cir. Mar. 18, 2005) (removal of a coverage determination action brought by an assignee of a FEHBA plan member); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (removal of an action contesting denial of Medicare benefits); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1268, 1270-71 (S.D. Fla. 2014) (removal of action by Medicare beneficiary suing insurer for improperly applying regulatory formula under contract with the federal government to administer Medicare benefits); *Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala., Inc.*, No. 205-cv-1230-MEF, 2007 WL 25488, at *7-8 (M.D. Ala. Jan. 3, 2007) (removal of claims arising out of BCBS's role as a FEHBA administrator where plaintiff submitted claims to defendant pursuant to assignments received from patients); *Jacks v. Meridian Res. Co.*,

LLC, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012) (removal of claim based on defendant's role as FEHBA administrator challenging provision in a FEHBA plan); *Brady v. Brady*, No. 819CV1268T24SPF, 2019 WL 3206871, at *3 (M.D. Fla. July 16, 2019) (removal of coverage claim that "arose as a direct result of Blue Cross administering the health insurance plan under which OPM told Blue Cross that Plaintiff was a covered family member."); *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 935 F.3d 352, 355 (5th Cir. 2019) (removal of a dispute under Louisiana's direct pay statute upon assignment of benefits).

In summary, Florida Blue merely claimed when removing this case that it contracts with the federal government to administer FEHBA and Medicare Advantage plans, governed by federal regulations and the terms of those plans. Florida Blue did not and cannot reasonably assert that it made acts or omissions at issue at the specific direction of a federal official. Accordingly, Florida Blue was objectively wrong in trying to avail itself of this Court's jurisdiction under § 1442(a)(1). To allow "[a] contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Watson*, 127 S. Ct. at 2308.

**B. No Causal Nexus Exists Between ER Groups' State Law Claims and Florida Blue's Administration of FEHBA or Medicare Advantage Health Plans.**

Similarly, Florida Blue's assertion in its removal papers that the state law claims in this lawsuit were somehow causally connected to Florida Blue's role as administrator of federal health plans simply ignored the well-pleaded allegations of the Complaint. Florida Blue's removal papers set forth a lengthy description of its role in administering such health plans, the applicable federal regulations, and its contractual relationship with the CMS and the OPM, together with lengthy string-citations of inapplicable caselaw, but ignored numerous recent rulings of this Court and other courts holding that federal jurisdiction does not lie where, like here, providers have

14

challenged the "rate of payment" as opposed to a "right of payment" for out-of-network medical services, regardless of the underlying type of a health plan.

In *REVA, Inc.*, 2018 WL 3323817, which is absent from the removal papers, an ambulance provider sued Florida Blue and its affiliates in Florida state court for underpayments for out of network emergency services, similar to this action. *Id.*, at *1. Florida Blue removed claiming preemption under ERISA and alleged existence of claims for payment or coverage under FEHBA and Medicare Advantage plans. *Id.* In rejecting Florida Blue's motion to reconsider a remand order relying upon the same arguments that Florida Blue makes here, this Court explained that

> REVA's Complaint seeks reimbursement for **underpaid** emergency services. Indeed, this Court noted in its Order Remanding the Case to State Court, that "REVA's claims are more akin to a rate of payment dispute because REVA does not allege that Defendants **failed** to pay, but rather that Defendants 'grossly **underpaid** REVA' for its services." D.E. 67 at 6 (quoting D.E. 1-1 ¶ 2).

*REVA, Inc.*, at *2 (emphasis in original); *see also Sarasota Anesthesiologists, P.A. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 19-CV-1518-T-02JSS, 2019 WL 3683796, at *1 (M.D. Fla. Aug. 6, 2019) (remanding case alleging underpayments by Florida Blue for emergency anesthesia services, rejecting Florida Blue's invocation of the federal officer statute and ERISA).

Similarly, in *Ascent Med. Group, LLC*, *supra*, a group of anesthesia providers sued Humana under Fla. Stat. § 641.513 and Florida common law for underpayment for emergency and other medical services. *Id.*, at *1. Humana removed to this Court arguing, just as Florida Blue does here, that this Court had subject matter jurisdiction because:

> Defendant was acting on behalf of [CMS] as a Medicare Advantage Organization when it allegedly underpaid claims for services rendered by Plaintiff.... Furthermore, Defendant argues that Defendant was acting as a private carrier on behalf of the [OPM] when it allegedly failed to pay the proper reimbursement for serviced rendered to a member of a plan subject to [FEHBA].

*Id.*, 2018 WL 4901405, at *2 (internal citations omitted). Humana relied primarily on two of the

same cases upon which Florida Blue relied heavily in its removal papers. *Id.* (citing *Anesthesiology Assoc. of Tallahassee, Florida, P.A. v. Blue Cross Blue Shield of Florida, Inc.*, 2005 WL 6717869, at *2 (11th Cir. 2005) & *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 56-58 (5th Cir. 1975)); *compare to* ECF No. 1 at ¶¶ 11(e), 14, 18, 19 (same). This Court remanded, finding that "[u]nlike *Anesthesiology Associates* or *Peterson*, this action does not involve claims for right to payment or coverage under government plans, nor does it challenge Defendant's administration of government plans. Rather, Plaintiff disputes the ***rates of payment made***, and seeks relief under Florida law." *Ascent Med. Grp.*, 2018 WL 4901405, at *3 (emphasis added).

Florida Blue also disregarded that other courts in this District have reached the same result. *See Sheridan Healthcorp*, 161 F. Supp. at 1249 (rejecting reliance on *Peterson* and *Anesthesiology Associates* and remanding to state court where "the Complaint does not allege any claims for 'right to payment' or coverage under government plans, nor does it challenge the actions of Defendants with respect to their administration of any Medicare, Medicaid, or FEHBA plan. Rather, it disputes the ***rates*** ...." (emphasis added)); *MSPA Claim I, LLC*, 2017 WL 3835879, at *3 (no FEHBA preemption where action asserts claims under state law); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, No. 18-CV-25460-UU, 2019 WL 1915386, at *2 (S.D. Fla. Mar. 21, 2019) (explaining that "[i]n payment dispute cases, the parties agree that there is Medicare coverage, but disagree as to the reimbursement rate. In coverage dispute cases, the parties disagree about whether Medicare provides coverage at all. Payment disputes are simple state-law contract disputes ...."); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) ("the reimbursement right in question predicated on a [FEHBA] authorized contract, is not a prescription of federal law.").

Accordingly, even if FEHBA or Medicare plans were implicated in this "rate of payment" lawsuit, Florida Blue knew or reasonably should have known that federal jurisdiction did not lie.

III.   **THE ER GROUPS ARE ENTITLED TO FEES AND COSTS INCURRED IN CONNECTION WITH OBTAINING A REMAND, INCLUDING THOSE INCURRED RESPONDING TO THE MOTION TO DISMISS AND PREPARING THIS MOTION FOR FEES.**

Finally, Florida Blue should be required to pay the ER Groups' attorneys' fees incurred in being forced to respond to Florida Blue's motion to dismiss, which relied primarily on federal preemption grounds and on a flawed invocation of the federal "shotgun pleading" rule, *see* ECF No. 5, *passim*, and for preparing this motion. As part of an award of fees on remand, courts look not only to the fees actually incurred in researching and preparing removal papers, but also to fees "that would not have been incurred had this action proceeded in state court." *Bldg. Materials Corp. of Am. v. Henkel Corp.*, 615CV548ORL22GJK, 2017 WL 4082440, at *5 (M.D. Fla. Apr. 17, 2017). Similarly, an "award of fees for preparing and litigating the entitlement to fees, so-called 'fees on fees' is well within the court's discretion under federal fee shifting statutes." *Yazdani v. Access ATM*, 474 F. Supp. 2d 134, 137 (D.D.C. 2007) (awarding fees-on-fees under § 1447(c)) (citing *Comm'r, I.N.S. v. Jean*, 496 U.S. 154 (1990)); *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010) ("Like other courts, we have allowed parties to recover the cost of establishing their right to, and the amount of attorney's fees—the right to fees-on-fees."); *Gotro v. R & B Realty Group*, 69 F.3d 1485 (9th Cir. 1995) (award under §1447(c) included fees incurred in preparing a bill of costs).

Here, ignoring the fundamental rule that the Court's subject matter jurisdiction must be resolved before turning to the merits of a removed case, Florida Blue forced the ER Groups to move forward with opposing Florida Blue's motion to dismiss, which was based primarily on substantive and procedural arguments that would not be available to Florida Blue in state court,

including federal preemption and the federal "shotgun" pleading rule. *See* 61A Am. Jur. 2d Pleading § 159 ("A shotgun pleading is a complaint that violates either *the Federal Rule* requiring the complaint to provide a short and plain statement of the claim showing that the pleader is entitled to relief, or *the Federal Rule* requiring a party to state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances, or both." (emphasis added)).[5]

Accordingly, in addition to the fees incurred in researching and preparing their remand papers and the present motion, the ER Groups are entitled to a reimbursement of the fees that the ER Groups incurred in responding to Florida Blue's motion to dismiss. *See Yellen v. Teledne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 509 (E.D. Pa. 2011) (on remand, granting fees incurred in plaintiff having to respond to motion to dismiss where the "motion to dismiss was filed seven days after removal…. Thus, those expenses were bound up with defendants' improvident removal."); *Nw. Administrators, Inc. v. Imerys Minerals California, Inc.*, C17-0792RSM, 2017 WL 3142047, at *2 (W.D. Wash. July 25, 2017) (awarding reasonable fees and costs incurred in connection with plaintiff's motion for remand and in responding to defendant's pending motion to dismiss); *Melvin v. Rimkus Consulting Group, Inc.*, CIV.A. H-08-2707, 2008 WL 4551500, at *1 (S.D. Tex. Oct. 7, 2008) (awarding fees for time spent on a motion for an extension of time to respond to defendant's federal motion to dismiss as related to defendants against removal).

Upon direction of the Court, the ER Groups will promptly submit an application detailing the fees and costs at issue, in proper evidentiary form, within the scope of fees and costs deemed appropriate by the Court.

---

[5] The ER Groups could not locate any published decisions by Florida state courts applying the federal "shotgun" pleading rule.

**Conclusion**

Based on the foregoing, the ER Groups respectfully request that the Court grant this motion, award the ER Groups their reasonable attorneys' fees and costs related to seeking remand, including in opposing Florida Blue's motion to dismiss and in preparing the present fees motion, and set a further schedule for the ER Groups to submit an evidentiary application to determine the amount of such fees and costs.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), counsel for the Plaintiffs certify that they have conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in this motion, including by telephone on December 17, 2021 with Defendants' counsel, Allen Pegg, where the parties discussed a stipulation for remand. During the meet and confer, the Plaintiffs' counsel agreed to a remand and also discussed with the Defendants' counsel their intent to seek attorneys' fees and costs following remand. During that call, Defendants' counsel noted their objection to Plaintiffs' ability to recover attorneys' fees and costs from Defendants. In subsequent email correspondence to negotiate the stipulation for remand, Plaintiffs reserved the right to seek attorneys' fees and costs and Defendants reserved the right to oppose that request, which is memorialized in the parties' Joint Stipulation for Remand [ECF No. 24] that was filed with the Court on December 23, 2021. Consequently, the parties conferred in good faith on this Motion and Defendants oppose the relief requested herein.

Dated:  January 7, 2022

Respectfully Submitted,

By:  */s/ Jamie B. Wasserman*
**Joseph M. Goldstein, Esq**.
Florida Bar No. 820880
Email: jgoldstein@shutts.com
**Jamie B. Wasserman, Esq.**

Florida Bar No. 68513
Email: jwasserman@shutts.com
*Counsel for Plaintiffs*
200 East Broward Boulevard, Suite 2100
Fort Lauderdale, FL 33301
Telephone:    (954) 524-5505
Facsimile:     (954) 524-5506

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

By: */s/ Jamie B. Wasserman*
**Jamie B. Wasserman, Esq**.

20