**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case. No. 21-CV-62139-SINGHAL/VALLE

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

       Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

       Defendants.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("Florida Blue") and Health Options, Inc. ("HOI" and, together with Florida Blue, "Defendants"), by and through undersigned counsel, submit this response in opposition to the Amended Motion for Attorneys' Fees and Costs [ECF No. 29] (the "Motion") filed by Plaintiffs, collectively referred to as the "ER Groups."  For the reasons that follow, the Motion should be denied.

**INTRODUCTION AND BACKGROUND**

According to their Complaint [ECF No. 1-2], the ER Groups are entities that, from 2016

to the present, purportedly provided emergency medical services to patients enrolled in health plans insured or administered by Defendants. Compl. ¶¶ 1, 4, 31. The ER Groups readily admit they have no contracts with Defendants; that is, they are "out-of-network" providers and not "in-network" participating or preferred providers, and thus have no negotiated rates with Defendants. *Id*. ¶¶ 29-30, 39, 62. The ER Groups further allege that they "submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Florida Blue Members' health insurance plans and applicable laws." *Id*. ¶ 29.

Operating under a theory that Defendants paid the ER Groups less than the amounts allegedly required, the ER Groups filed their five-count Complaint in Florida state court on September 2, 2021. The Complaint was pled in such a manner to establish – accepting the allegations as true – that the underlying claims for payment at issue did not arise under health insurance plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See, e.g.*, *id.* ¶ 26 ("No claim is made by the ER Groups against Florida Blue as a plan participant, plan sponsor, plan fiduciary, or beneficiary under any plan governed by ERISA."). Noticeably absent from the Complaint, however, were ***any*** similar carve-out allegations with respect to any ***other*** federally-governed health insurance plans. In other words, the ER Groups sufficiently "pled around" ERISA, but they left open the very realistic possibility that many of the claims at issue related to health insurance plans governed by other federal law, such as the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901–14 ("FEHBA") or Title XVII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare Act").

Notably, the Complaint also did not include a claims spreadsheet containing the underlying details of the claims for which the ER Groups are seeking reimbursement via this lawsuit, such as the identity of the patient who received the service, the medical service provided, the plan that

2

covered the patient, and the condition that was treated. Nor did the Complaint otherwise identify the claims at issue in the pleading itself. And aside from pleading around ERISA (meaning the ER Groups apparently know how to plead around federal preemption when they choose to do so), the Complaint did not otherwise limit the claims at issue and thus did not rule out the inclusion of federally governed claims.

Given these shortcomings, and as the ER Groups concede in the Motion, upon being served with the Complaint, counsel for Defendants emailed counsel for the ER Groups, requesting a claims spreadsheet that identified the claims alleged to be at issue. *See* ECF No. 29-1. In response, counsel for the ER Groups informed counsel for Defendants that such a spreadsheet had been provided to Florida Blue's business team at some unidentified time "in the course of pre-litigation discussions." *Id.* Counsel for the ER Groups refused to send the spreadsheet to counsel for Defendants, citing a preference "not to circulate PHI unless absolutely necessary." *Id.* The ER Groups' position on this front was rather spurious, for as counsel for Defendants pointed out, if counsel obtained any such spreadsheet from Florida Blue, they would understandably "turn around and send it to [counsel for the ER Groups] to confirm this is what [the latter] referred [the former] to" in any event, so as to avoid any confusion as to the relevant spreadsheet. *Id.*

In the Motion, the ER Groups now assert that the claims spreadsheet referenced above was provided to Florida Blue on or about August 25, 2020 – more than ***a full year*** prior to filing the Complaint. Mot. at 5. And that claims spreadsheet – which, again, was ***not*** attached to the Complaint, but which was later filed by the ER Groups as an attachment to its Motion to Remand (apparently by then their original aversion to "circulat[ing] PHI" had subsided) – only includes the ER Groups' purported claims through March 2020. *See* ECF No. 14-2. Given the ER Groups' allegations that damages "will continue to accrue through the date of trial," Compl. ¶¶ 51, 57, 64,

3

72, the ER Groups presumably intend to include an unknown and unidentified number of purportedly "underpaid" claims that arose *after* March 2020.  And despite Defendants' best efforts to investigate that group of claims, numerous claims in the spreadsheet could not even be matched by claim number to any claim that Florida Blue's records reflected to have been submitted for reimbursement.  *See* **Exhibit A**, Second Decl. of A. Norman ¶¶ 8-9.  Ultimately, the set of claims *actually* at issue in this lawsuit remain entirely unknown and unknowable to Defendants.  *Id.*

Notwithstanding these pleading and disclosure shortcomings, Defendants themselves endeavored to ascertain the universe of the potential claims at issue in this case and determined that certain of the potential claims at issue arise under health insurance plans governed by FEHBA or the Medicare Act.  *See* ECF No. 1 ¶ 8; ECF No. 1-3 (Declaration of A. Norman).  As such, Defendants concluded that the Complaint was removable under 28 U.S.C. § 1441 and 28 U.S.C. § 1442(a)(1) and thus removed the case to this Court on October 15, 2021.  *See* ECF No. 1.

The ER Groups filed their Motion to Remand on November 15, 2021, in which the ER Groups – *for the first time* – affirmatively represented that the claims at issue in this case are not governed under *any* federally governed health benefits plan.  *See* D.E. 14 at 6 ("[N]one of the claims at issue in this lawsuit involve[] a FEHBA or Medicare Advantage Plan.").  Counsel for Defendants then conferred with counsel for the ER Groups, who confirmed that representation. Notably, however, counsel for the ER Groups still *did not* rule out the possibility that federally governed claims may ultimately be at issue in this case.  *See* Dec. 22, 2021 Email from P. Rakhunov to A. Pegg, attached as **Exhibit B** ("To answer your question, federal jurisdiction is based on present, not future claims and, while there is no present intention to add a federal claim, we are not creating any sort of covenant not to sue.").

Given the ER Groups' ultimate confirmation that they would not be seeking recovery for any claims for benefits under any federally governed health benefit plans, Defendants determined that remand was appropriate and, in an effort to avoid burdening the Court with the need to resolve the dispute, stipulated to a remand.[1]  The parties filed their Joint Stipulation for Remand on December 22, 2021, and on December 23, 2021, the Court entered an Order of Remand.  *See* ECF No. 24; ECF No. 25.

Thereafter, the ER Groups filed the instant Motion, in which the ER Groups seek a determination of whether they are entitled to recover their attorneys' fees and costs incurred in connection with all proceedings before this Court – not simply the fees and costs related to seeking remand.  For the reasons that follow, the Motion should be denied.

## **LEGAL STANDARD**

Under 28 U.S.C. § 1447, "[a]n order remanding [a] case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c) (emphasis added).  The use of the word "may" indicates that an award of attorneys' fees and costs under § 1447(c) is by no means automatic whenever a removed case is remanded to state court, and such an award is left to the discretion of the district court.  *Martin v. Franklin Capital Grp.*, 546 U.S. 132, 136 (2005); *see also Meyer v. Health Mgmt. Assocs, Inc.*, 841 F. Supp. 2d 1262, 1273 (S.D. Fla. 2012) ("[T]he award of attorney's fees under § 1447(c) was not intended to be routine, and is still a matter for the district court's discretion on a case-by-case basis.").  That discretion, however, is not unbridled.  As the Supreme Court has instructed:  "[C]ourts may award

---

[1] Of course, the ER Groups' Motion to Remand does not, in any way, amend the Complaint, and as such, the Complaint continues to create exposure to the possibility that this case may encompass claims for payment arising under federally governed health benefits plans.  Should it become apparent during the course of this litigation that the ER Groups are pursuing such claims, the Complaint would ***again*** be subject to removal.

5

attorney's fees under § 1447(c) *only where* the removing party lacked an objectively *reasonable basis* for seeking removal. Conversely, *when an objectively reasonable basis exists, fees should be denied*." *Martin*, 546 U.S. at 136 (emphases added).

## ARGUMENT

### I. Defendants Had an Objectively Reasonably Basis for Removing the Complaint

District courts generally deny an award of fees and costs when the removing defendant had a plausible reason to believe that the removal was proper. *See Rogatinsky v. Metropolitan Life Ins. Co.*, No. 09–80740–CIV, 2009 WL 3667073 at *3 (S.D. Fla. Oct. 26, 2009) (denying request for attorney's fees where "[d]efendant's legal arguments were *colorable and reasonable* . . . and [d]efendant did not remove the case for the purpose of prolonging litigation or imposing costs.") (emphasis added); *see also In re Trasylol Prods. Liab. Litig.*, 754 F. Supp. 2d 1331, 1338 (S.D. Fla. 2010) (denying fees and costs on the ground that it was "*at least arguably rational*" for defendant to have removed case, given that the defendants had "some support in the law") (emphasis added). Indeed, "[r]emoval is not objectively unreasonable simply because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Meyer*, 841 F. Supp. 2d at 1273 (denying request for attorney's fees where case "involve[d] some aspect of federal law and the arguments in favor of removal jurisdiction, while not persuasive in the end, appear[ed] to have been made in good faith, on the basis of the particular facts and circumstances at issue.") (citation omitted).

In the context of a dispute between an insurer and a provider, a defendant-insurer has an objectively reasonable basis for seeking removal when the claims that "form[ed] the basis for th[e] action appear[ed] to have been covered" under a federally governed health benefits plan. *Miami Beach Cosmetic & Plastic Surgery Ctr. v. Blue Cross & Blue Shield of Fla., Inc.*, 947 F. Supp. 2d

6

1375, 1382 (S.D. Fla. 2013) (finding that the defendant "had an objectively reasonable basis for seeking removal" and denying request for attorneys' fees). In addition, an objectively reasonable basis for removal exists where there is "uncertainty" as to whether the underlying claims at issue are subject to a federally governed health benefit plan. *Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Florida, Inc.*, 258 F. Supp. 3d 1323, 1325 (S.D. Fla. 2017) ("The Court finds that [the defendant] *did* have an objectively reasonable basis for seeking removal, given the above-noted uncertainty regarding . . . cases brought against insurers by out-of-network provides."). Moreover, an award of attorneys' fees and costs is not appropriate where a complaint fails to "clearly . . . render the removal unreasonable." *Sully v. Scottsdale Ins. Co.*, 533 F. Supp. 3d 1242, 1251 (S.D. Fla. 2021) (declining to award attorneys' fees and cost incurred by the plaintiff as a result of removal).

      A.    Removal Was Made in Good Faith After Determining that Certain of the Potential Health Benefits Plans at Issue Were Governed by Federal Law

As explained above, the ER Groups' Complaint failed to identify the underlying claims at issue in this lawsuit, and the spreadsheet to which the ER Groups then and now continue to point to fill in this void at best only covered claims through March 2020. Defendants were thus left on their own to ascertain the universe of the potential claims at issue in this case, which the ER Groups allege to accrue "through the date of trial." Compl. ¶¶ 51, 57, 64, 72. After investigation, Defendants actually ***did*** determine that certain of the potential claims at issue involve members covered under health insurance plans governed by FEHBA or the Medicare Act. *See* ECF No. 1 ¶ 8; ECF No. 1-3 (Declaration of A. Norman). A representative sample of those individuals and the associated claims were specifically identified in the Declaration that Florida Blue submitted in support of removal. *See id.* ¶¶ 36–40, 45–52. And having determined that certain of the claims implicated FEHBA or the Medicare Act, Defendants appropriately removed the case to this Court

7

pursuant to 28 U.S.C. §§ 1441 and 1442(a)(1). Defendants have since reconfirmed that certain claims were brought on behalf of members who subscribed to federally-governed benefit plans. *See* Ex. A Second Decl. of A. Norman ¶¶ 10-12. Defendants' basis for removal was thus, at the very ***least***, "colorable and arguable," such that an award of fees is inappropriate. *Rogatinsky*, 2009 WL 3667073 at *3.

      i.  *Federal Question Jurisdiction*

  The presence of claims involving FEHBA makes a case removable pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction existing under 28 U.S.C. § 1331. As explained in Defendants' removal papers, federal common law would govern any claims involving FEHBA in this lawsuit. *See* ECF No. 1 ¶¶ 35–37. And because federal common law governs, the case raises a federal question and is removable to federal court. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (explaining that Section 1331's "statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin'") (citation omitted); *New SD, Inc.*, 79 F.3d at 955 (upholding removal jurisdiction because federal common law controlled dispute); *Rievley ex rel. Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1037 (E.D. Tenn. 1999) (upholding removal in FEHBA case because federal common law displaced state law); *Kight*, 34 F. Supp. 2d at 340-41 (same).

  Notably, in the Motion the ER Groups do not actually dispute this legal principle. Instead, the ER Groups argue that Defendants' removal was purportedly unreasonable under § 1441 due to a "flawed factual predicate." Mot. at 8. More specifically, the ER Groups assert that Defendants "based [their] removal entirely on an objectively false factual assertion that the rate of payment claims at issue include claims under either FEHBA or Medicare Advantage Plans." *Id.* at 9. According to the ER Groups, Defendants somehow should have known that the claims at issue

were not governed by any federally governed benefits plans because, "since August 2020, Florida Blue has had in its possession the detailed claims spreadsheet reflecting the underpayment claims at issue in this lawsuit." *Id.*

But Defendants diligently investigated the claims spreadsheet and, as confirmed by the Declaration of Annette Norman, identified that certain individuals listed on the claims spreadsheet *were*, in fact, covered under federally governed plans. ECF No. 1-3 ¶¶ 36–40, 45–52. The fact that the ER Groups stipulated *after removal* that they "have not raised claims under any health insurance plans governed by [FEHBA] or [the Medicare Act]," ECF No. 24 ¶ 3, does not mean that Defendants lacked an objectively reasonable basis to remove the Complaint *in the first place*. To the contrary, the ER Groups' own stipulation shows that removal was, in fact, objectively reasonable, as there was at least "uncertainty" as to whether the underlying claims at issue were subject to a federally governed health benefit plan. *Hialeah Anesthesia Specialists, LLC*, 258 F. Supp. 3d at 1325 ("The Court finds that [the defendant] *did* have an objectively reasonable basis for seeking removal, given the above-noted uncertainty regarding . . . cases brought against insurers by out-of-network provides.").

Moreover, the claims spreadsheet only includes the ER Groups' purported claims through March 2020. *See* ECF No. 14-2. Given the ER Groups' allegations that damages "will continue to accrue through the date of trial," Compl. ¶¶ 51, 57, 64, 72, Defendants reasonably understood – and still expect – that the ER Groups intend to include in this lawsuit a number of unknown and unidentified claims that arose *after* March 2020, many of which could *also* implicate FEHBA or the Medicare Act.[2] And in fact, counsel for the ER Groups confirmed that very real possibility by

---

[2] *See* Ex. A Second Decl. of A. Norman ¶ 13 ("[W]hile the spreadsheet Plaintiffs provided to Florida Blue's business team only documents claims with dates of service through January 2020, preliminary review of internal records on a sample of claim data from March 2020

refusing to stipulate that the ER Groups would not seek recovery under any federally governed plans in the course of this litigation.  *See* Ex. B ("[W]hile there is no ***present intention*** to add a federal claim, we are not creating any sort of covenant not to sue." (emphasis added)).  The Complaint itself, therefore, did not "clearly . . . render the removal unreasonable."  *See Sully*, 533 F. Supp. 3d at 1251.

In light of the above, Defendants clearly had an objectively reasonable basis for removal under § 1441.  The ER Groups' demand for attorneys' fees and costs should thus be denied.

        ii.     *The Federal Officer Removal Statute*

In addition to § 1441, Defendants also sought removal pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), which "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction.'" *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (quoting *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984)).  Section 1442 is to be "liberally construed," *Colorado v. Symes*, 286 U.S. 510, 517 (1932), and "[t]he right of removal is absolute for conduct performed under color of federal office."  *Goncalves v. Rady Childerns' Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).  As set forth in Defendants' removal papers, Defendants satisfy each element to invoke the Federal Officer Removal Statute.  ECF No. 1 ¶¶ 17–33.

In the Motion, the ER Groups assert that Defendants "failed to acknowledge Supreme Court precedent and numerous cases in this Circuit . . . holding that § 1442(a)(1) does not apply to health insurers administering health plans under FEHBA or . . . the Medicare Act."  Mot. at 10. The Supreme Court precedent referenced by the ER Groups, however, ***did not*** involve a health

---

through September 2021 reveals more than 5,000 claims submitted to Florida Blue for payment for members subscribed to a Federal Employee Program or Medicare program.")

10

insurer administering health plans under any federally governed health benefit plan. *See generally Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007). Instead, *Watson* involved alleged violations of Arkansas law prohibiting unfair and deceptive business practices and focused on the advertisement and packaging of cigarettes. *Id.* at 146. Ultimately, the *Watson* Court held that "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Id.* at 153. While informative, *Watson* by no means renders Defendants' removal unreasonable, as the ER Groups contend. And *Watson* aside, the ER Groups cite to no binding authority whatsoever that would preclude Defendants from removing this case under § 1442(a)(1); indeed, there is none.

In fact, subsequent to *Watson*, federal courts have routinely found that suits against health insurance companies administering the Service Benefit Plan are removable under the Federal Officer Removal Statute.[3] *See, e.g.*, *St. Charles Surgical Hosp. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356–58 (5th Cir. 2019) (holding that Blue Cross and Blue Shield company administering the Service Benefit Plan properly invoked section 1442(a)(1)); *Goncalves*, 865 F.3d at 1256 (same); *Jacks*, 701 F.3d at 1235 (same); *Brady v. Brady*, No. 19-CV-1268, 2019 WL 3206871, at *3 (M.D. Fla. July 16, 2019) (same); *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. 16-CV-5229, 2016 U.S. Dist. LEXIS 136244, at *10-17 (C.D. Cal. Sept. 30, 2016) (same); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1063-67 (S.D. Cal. 2016) (same); *Owens v. Health Care Serv. Corp.*, No. CV 16-95, 2016 WL 7675406, at *3–5 (D. Mont. Dec. 16, 2016) (same); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 14-CV-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014),

---

[3] As explained in Defendants' Notice of Removal, the Service Benefit Plan is one of the federal government's health benefits plans for federal employees and their dependents, and is governed by and created under FEHBA. ECF No. 1 ¶ 8.

11

*aff'd*, 823 F.3d 1198 (8th Cir. 2016) (same); *accord Cal. Spine & Neurosurgery Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, No. 20-cv-08511-VC, 2021 WL 2908676 (N.D. Cal. July 12, 2021) (carrier of different FEHBA plan properly used Federal Officer Removal Statute in removing lawsuit filed by medical provider).

Of note, *Tantuwaya* dealt with a provider of emergency services, and in that case, the court held that claims nearly identical to those here were removable under the Federal Officer Removal Statute. 169 F. Supp. 3d at 1063-67. In addition, *Tantuwaya* involves allegations nearly identical to the ER Groups' assertion here that a state law requires a Service Benefit Plan administrator to pay an out-of-network provider directly. In short, Defendants had much more than just "some support in the law" to support removal of this case, and as such, the ER Groups' Motion should be denied. *See In re Trasylol Prods. Liab. Litig.*, 754 F. Supp. 2d at 1338.

The ER Groups also argue that "federal jurisdiction does not lie where, like here, providers have challenged the 'rate of payment' as opposed to a 'right of payment' for out-of-network medical services." Mot. 14–15. While the Eleventh Circuit periodically has relied on this right-to-payment versus rate-of-payment distinction, the distinction has correctly been held to be irrelevant for non-participating providers, such as the ER Groups.[4] *See Apex Toxicology, LLC v. United Healthcare Ins. Co.*, No. 16-CV-62768, 2017 U.S. Dist. LEXIS 99249, at *13 (S.D. Fla. June 26, 2017). And, as other district courts have also concluded, this makes sense.[5] For an in-

---

[4] Moreover, where any claim on the ER Groups' proffered spreadsheet was denied, or resulted in $0.00 or no payment, that is a right-to-payment dispute, not a rate-of-payment dispute. There are at least forty-five examples on the ***first page alone*** of the ER Groups' 375-page spreadsheet that show that the "approved amount" was $0.00. *See* ECF No. 14-2. In order to establish whether it is entitled to payment on those claims, the Court would have to consult the underlying benefit plan – which, if federally-governed, would give rise to federal jurisdiction.

[5] *See, e.g., Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*, No. 3:11-CV-2205, 2012 WL 1019953 at *8 n. 16 (N.D. Tex. Mar. 27, 2012) ("[R]ate of payment depends on the terms and conditions of the ERISA plans, and thus a suit disputing the rate of payment could

network provider, there is an agreement between the insurer and the provider governing their contractual relationship, separate and apart from the terms of a member's health benefits plan. In that case, if the terms of the agreement are not followed, the provider can bring a dispute – such as challenging the rate at which it has been paid – which is ***independent of*** and has ***no bearing on*** the terms of the plan between the insurer and its member. This is simply not the case for out-of-network providers like Plaintiff, where the amount is dictated by the terms of the health benefits plans in question, some of which Florida Blue identified to be federally-governed before they were belatedly disavowed.

Recognizing and applying this important distinction, one court in this District has recently held that, when an out-of-network provider is involved, a "rate of payment" dispute simply cannot exist because a rate-of-payment dispute is focused on the alleged breach (by underpayment) of a ***provider agreement***, and by definition there is no ***provider agreement*** with an out-of-network provider. *See Apex Toxicology*, 2017 U.S. Dist. LEXIS 99249, at *13. Another court in this circuit likewise held: "Although Plaintiffs rely on the distinction between 'rate of payment' and 'right of payment,' this distinction is irrelevant in cases involving out-of-network providers because a 'rate of payment' dispute is governed by the provider agreement." *All. Med, LLC v. Blue Cross & Blue Shield of Georgia, Inc.*, No. 15-CV-00171, 2016 WL 3208077, at *3 (N.D. Ga. June 10, 2016).

Here, as the ER Groups expressly allege in their Complaint, there are no provider agreements between the ER Groups and Defendants. *See* Compl. ¶ 30 ("None of the ER Groups has a contract for negotiated rates with Florida Blue, and their healthcare providers are therefore 'out-of-network' providers with respect to Florida Blue for the emergency medical services at

---

be instituted under [29 U.S.C. § 1132] and is dependent on the ERISA plans.") (emphasis in original); *Bassel v. Aetna Health Ins. Co. of New York*, No. 17-CV-05179, 2018 WL 4288635, at *3-4 (E.D.N.Y. Sept. 7, 2018) ("No such independent duty exists where . . . claims are 'inextricably intertwined with the interpretation of the Plan coverage and benefits.'").

issue."). Instead, the amounts to which the ER Groups are entitled to for the emergency medical services at issue (which is what the ER Groups are challenging) are set out in the terms of the health plans in question. Therefore, for those claims that Defendants identified that arose under federally governed benefits plans, if those claims were included in this lawsuit, the Court would have been required to interpret those plans to determine whether the ER Groups have been properly paid for their services. *See Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1388 (S.D. Fla. 2013) ("If the right to payment derives from the [federally governed] benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan.").

Finally, here – unlike the extreme cases in which fees are occasionally awarded – the action was remanded not because of the Court finding lack of merit in Defendants' removal, but as a result of a stipulation between the parties. As evidenced from counsel for Defendants' initial proposal for a stipulation of remand, the ***first time*** the ER Groups affirmatively represented that they are not (at present, at least) pursuing any federally-governed claims in this case, including under Medicare or FEHBA, was when they filed their Motion to Remand on November 15, 2021— a deliberate strategy to avoid federal jurisdiction. *See* Dec. 13, 2021 Email from D. Balmori to J. Wasserman, attached as **Exhibit C** ("We understand ***from your Motion to Remand*** that Plaintiffs' position is that none of the claims at issue in this lawsuit involve any federally governed benefit plans. If Plaintiffs are not intending to sue on any federally governed plans, we ask that you formally stipulate . . . .") (emphasis added).

If this position had been so cut-and-dried, as the ER Groups now make it out to be in their Motion, it is rather odd (to say the least) that the ER Groups' counsel would choose not to simply make this point in the parties' conferrals concerning an appropriate briefing schedule for the

14

motion to remand and the motion to dismiss – or when the ER Groups' counsel sought to "confer" on the request for a remand. *See* Nov. 12, 2021 Email from J. Wasserman to A. Pegg, attached as **Exhibit D** ("As we have already discussed, Plaintiffs will be filing a Motion for Remand. While we know that you disagree and oppose the Motion, please treat this email as a good faith effort to confer, in addition to our other previous conferral efforts. We will advise the Court of your position in the Motion."). And in any event, as the Motion to Remand could not amend the operative pleading, which continued to create exposure to federally-governed benefit plans, counsel for Defendants conferred with counsel for the ER Groups and requested the ER Groups' ultimate stipulation that they would not be seeking recovery for any claims for benefits under any federally governed health benefit plans. Only once *that* was obtained did the parties then file their Joint Stipulation for Remand on December 22, 2021. *See* ECF No. 24.

Accordingly, the ER Groups' argument that the "Federal Officer Removal Statute did not provide objectively reasonable grounds for removal" is clearly without merit.

## II. Under No Circumstances Should the ER Groups Be Awarded Fees and Costs Incurred in Opposing Defendants' Motion to Dismiss

Incredibly, not only do the ER Groups seek an award of attorneys' fees and costs associated with their Motion to Remand, but they *also* seek fees and costs incurred "in opposing [Defendants'] motion to dismiss." Mot. at 20. Even if the Court were to consider fees for the remand motion (which it patently should not), in no event should the Court entertain this further, outsized fee request relating to the motion to dismiss briefing. In an effort to support this reach, the ER Groups complain that by insisting on a "tight briefing schedule," Defendants required the ER Groups to "bear the burden of substantial briefing," which "imposed undue expenses on the [the ER Groups]," by "forcing them to respond to [Defendants'] premature [motion to dismiss]." *Id.* at 6–7. This argument is flawed for a number of reasons.

15

*First*, Defendants' Motion to Dismiss was not filed "prematurely"; it was filed precisely within the time dictated by the Federal Rules. *See* Fed. R. Civ. P. 81 (requiring a response seven days from removal). There is no basis for essentially punishing Defendants for complying with those rules. *Second***,** there is no rule that a motion to remand should be briefed before a motion to dismiss, and the deadlines mandated by the Federal Rules do not presume that a motion to dismiss should be addressed only after issues presented on a motion to remand. *Third*, Defendants did nothing close to imposing a "tight" briefing schedule; rather, Defendants offered a generous ***twenty-five-day extension*** of the default deadline, through November 30, 2021. *See* Mot., Ex. B. But that was not all. Defendants subsequently agreed to an ***additional*** extension, finally bringing the ER Groups' deadline to December 3, 2021, and affording the ER Groups a total of ***forty-two days*** to respond to Defendants' Motion to Dismiss. *See* ECF No. 17. Ultimately, the ER Groups could have sought – but elected not to do so – a further, indefinite extension from the Court to avoid responding to Defendants' Motion to Dismiss. *Fourth*, and crucially, the ER Groups would not have avoided the costs of duly responding to Defendants' well-founded Motion to Dismiss. As established by the ER Groups' own admission – as well as the exhibit attached to their Motion – Plaintiffs actually requested a thirty-day enlargement of time to respond to Defendants' Motion to Dismiss, which would have placed the deadline for a response on or around December 6, 2021. *See* Mot., Ex. B.

Meanwhile, the ER Groups did not ultimately disavow federally governed claims in a manner that would relieve this Court of federal jurisdiction until they entered into the stipulation of dismissal on December 22, 2021. *See* ECF No. 24. Under these circumstances, even if Defendants *had* agreed to the ER Groups' initial request, the ER Groups *still* would have been obligated to brief the Motion to Dismiss. And the fact that the Court's Order of Remand

16

necessarily included a direction to Clerk of Court to "deny as moot any pending motions" does not mean that the ER Groups incurred unnecessary costs in opposing Defendants' Motion to Dismiss. To the contrary, Defendants recently filed a motion to dismiss in Florida state court, asserting substantially similar arguments to those Defendants made in the Motion to Dismiss they filed with this Court. A copy of that motion is attached here as **Exhibit E**. As such, the ER Groups would have had (and will have) to respond to many of the same dismissal arguments regardless of the venue.[6]

For these reasons, briefing a Motion to Dismiss, as the ER Groups were required to do and will be required to re-file in state court, is no basis for a fee award.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order denying the Motion.

Dated: January 24, 2022

Respectfully submitted,

HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550

By: */s/ Allen P. Pegg*
Allen P. Pegg, Esq.
Florida Bar No.: 597821
allen.pegg@hoganlovells.com
Daniel Balmori
Florida Bar No.: 0112830
daniel.balmori@hoganlovells.com
William Homer
Florida Bar No.: 1011341
william.homer@hoganlovells.com

---

[6] Accordingly, *if* the Court were to grant entitlement to any fees and costs (which it should not), the entitlement should be limited to the fees and costs incurred by the ER Groups in preparing their Motion for Remand. To award an entitlement to anything more would be simply inappropriate.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 24, 2022, a true and correct copy of the foregoing was served on Joseph Goldstein, Esq., Shutts & Bowen LLP, 200 East Broward Boulevard, Suite 2100, Fort Lauderdale, FL 33301, via E-mail: jgoldstein@shutts.com.

By: */s/ Allen P. Pegg*