**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case. No. 21-CV-62139-SINGHAL/VALLE

BRADFORD EMERGENCY GROUP,
LLC; COLUMBIA EMERGENCY GROUP,
LLC; DUVAL EMERGENCY GROUP,
LLC; LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC; NW
FLORIDA EMERGENCY PHYSICIANS,
LLC; POLK EMERGENCY GROUP, LLC;
RIDGEWOOD EMERGENCY GROUP,
LLC; ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY SERVICES
OF MIAMI BEACH, P.A.; and SUWANNEE
EMERGENCY GROUP, LLC,

      Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

      Defendants.
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Melbourne Emergency Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach, P.A.; and Suwannee Emergency Group, LLC (the "ER Groups"), respectfully submit this Reply in support of their motion pursuant to 28 U.S.C. § 1447(c), for an award of attorneys' fees and costs against defendants Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue and Health Options, Inc. (together "Florida Blue" or "Defendants").

**Discussion**

**I.    THE OPPOSITION CONFIRMS THAT FLORIDA BLUE EITHER IGNORED FACTS REGARDING THE CLAIMS IN THIS LAWSUIT OR FAILED TO CONDUCT A REASONABLE INVESTIGATION PRIOR TO REMOVAL.**

In its opposition, Florida Blue relies on a Second Declaration of its litigation support specialist to double-down on its objectively flawed and misleading positions regarding the types of health insurance plans underlying the rate of payment claims at issue in this lawsuit. As it did in its removal papers, Florida Blue conflates the covered yet underpaid *claims* for emergency services that ER Groups have challenged in this lawsuit with the fact that some of those claims were for emergency medical services provided to *patients* who also happened to have *secondary* or other coverage under either a FEHBA or a Medicare Advantage plan.[1] The Second Declaration of Annette Norman (ECF 33-1) enclosed with the opposition sheds further light on Florida Blue's sleight of hand in trying to justify an objectively unreasonable claim of federal jurisdiction.

First, Ms. Norman confirms in her Second Declaration that as a result of her review prior to removal, she "determined that Plaintiff's lawsuit includes clams for services allegedly rendered

---

[1] Plans governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914, or plans that are governed by Title XVII of the Social Security Act, 42 U.S.C. § 1395 et seq. ("Medicare Advantage plans").

to *various individuals* who are (1) enrollees in the FEHBA-governed Service Benefit Plan and (2) beneficiaries of health plans that are subject to the Medicare Act." ECF 33-1 at ¶ 7 (emphasis added). In other words, Mr. Norman apparently determined that some of the ER Groups' patients were members of such plans, *not* that any claims at issue in this lawsuit were brought under such plans, which is plainly insufficient to confer federal jurisdiction. *See also* Opp. (ECF 33) at 7 ("After investigation, Defendants actually *did* determine that certain of the **potential** claims at issue **involve members covered** under health insurance plans governed by FEHBA or the Medicare Act." (second and third emphases added)).

Second, Ms. Norman fails to justify the demonstrably incorrect statements she made in her first declaration regarding the claims concerning patients L.S. and M.P., on whose purported federal claims Florida Blue relied for removal. As explained in the ER Groups' motion papers in support of remand, patient M.P. had a federal employee plan as the patient's *secondary* health insurance and also had a primary commercial Florida Blue health plan. ECF 14-1 at ¶ 11. Prior to the litigation, the ER Groups provided a claims spreadsheet to Florida Blue. This spreadsheet confirmed that the pertinent ER Groups disputed the $138.00 payment that Florida Blue made for $1,519.00 of invoiced emergency medical services under patient M.P.'s *primary* commercial health plan, as reflected by that plan's policy number prefix "XJJ," and not the $212.23 paid under M.P.'s federal plan with an entirely different claim number (F100000779489056). *Id.* at ¶¶ 11-12. Similarly, the purported claim regarding patient L.S. on which Florida Blue relied in its removal papers did not appear in the claim spreadsheet provided by the ER Groups prior to initiating litigation. *Id.* at ¶¶ 13-14.

Florida Blue's proffered excuse for its misrepresentation of that information is that Florida Blue uses claim numbers to pull claims information from its repository and that some discrepancies

2

in claim numbers led to incorrect information for "reasons unknown" to Ms. Norman. ECF 33-1 at ¶ 8. That vague excuse, however, does not justify Florida Blue's apparently failure to review, prior to invoking federal jurisdiction, substantive information regarding each patient and visit, other than its own internal claim numbers. As the ER Groups explained in their motion papers in support of remand, the providers do not generate or rely upon claim numbers, which are created and assigned *by Florida Blue*, but instead rely on detailed substantive information concerning each of the underpaid claims at issue, including patients' names and dates of birth, policy numbers, dates and locations of service, CPT code level detail, actual charges, and approved amounts, all of which information appeared in the claim spreadsheet. *See* ECF 14-1 (Declaration of Sara Shoultz) at ¶¶ 4, 6. Indeed, if the statement in Ms. Norman's Second Declaration is taken on its face that "it was (and still is) ***impossible*** for Florida Blue and HOI to identify the claims that are actually at issue in this lawsuit," that admission by itself belies any argument that Florida Blue had an objectively reasonable basis for removal. ECF 33-1 at ¶ 9 (emphasis added).

Similarly, Florida Blue speculates about the nature of potential claims at issue when pointing to the ER Groups' allegation that their damages continue to accrue through the date of trial. In pre-removal correspondence, however, counsel for the ER Groups specifically confirmed that the claims "at issue in this action" are those that were contained in the claims spreadsheet that Florida Blue indisputably had in its possession. *See* ECF No. 27-1 at 4.

Finally, the fact that the ER Groups agreed to stipulate to remand several weeks after receiving the ER Groups' motion papers (and after the ER Groups had incurred the expense and burden of responding to Florida Blue's federal motion to dismiss) confirms the position it should have taken in the first place. All it mitigates is the *amount* of work and costs they forced the ER Groups to incur moving to remand and opposing a strategically timed motion to dismiss for which

Florida Blue should be held accountable. Having been put on notice prior to removal that the claims at issue are those that it already possessed in a detailed spreadsheet, Florida Blue used a pretext to conjure up a (meritless) ground for removal.

None of the cases on which Florida Blue relies supports excusing its failure to conduct a reasonable factual investigation prior to removal. In each of those cases courts denied fee requests where removals were made in good faith by parties who, even when unsuccessful, had objectively colorable or reasonable bases for federal jurisdiction. *E.g., Miami Beach Cosm. & Plastic Surgery Ctr. v. Blue Cross & Blue Shield of Fla., Inc.*, 947 F. Supp. 2d 1375, 1382 (S.D. Fla. 2013) ("The Court finds that Coventry did have an objectively reasonable basis for seeking removal, given the above-noted uncertainty regarding the breadth of the *Connecticut State Dental* test's application to cases brought against insurers by out-of-network providers."); *Meyer v. Health Mgmt. Assocs., Inc.*, 841 F. Supp. 2d 1262, 1273 (S.D. Fla. 2012) ("This case does involve **some aspect of federal law** and the arguments in favor of removal jurisdiction, while not persuasive in the end, appear to have been made in good faith, on the basis of the particular facts and circumstances at issue." (emphasis added)); *Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.*, 258 F. Supp. 3d 1323, 1330 (S.D. Fla. 2017) (resolving any uncertainty **existing at that time** regarding jurisdictional parameter for "rate of payment" claims by out-of-network providers).

The factual information regarding the ER Groups' claims in this lawsuit that was provided to Florida Blue prior to removal and confirmed by counsel, whether or not that information was attached to the ER Groups' complaint,[2] objectively and indisputably demonstrated that the ER Groups were not disputing any claims submitted under a FEHBA or Medicare Advantage plans.

---

[2] Indeed, in one of the cases on which Florida Blue relies in its opposition, Florida Blue's affiliate in California sought to rely in its motion to dismiss papers on a list of patients and claims that a provider sent to the insurer by letter, but that was not attached to the complaint. *See Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1063 (S.D. Cal. 2016).

4

Florida Blue's choice to disregard that information is exactly the type of circumstance that warrants an award of fees and costs under 28 U.S.C. § 1447.

## II. EVEN FLORIDA BLUE'S SPECULATIVE POSITIONS DID NOT PROVIDE A VALID BASIS FOR REMOVAL UNDER WELL-SETTLED LAW.

Even if Florida Blue were allowed to ignore facts, it cannot ignore the law. Florida Blue has lost the same battle on prior occasions. In its opposition, Florida Blue provides a lengthy string-cite of inapplicable and easily distinguishable caselaw seeking to justify removal under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), which has consistently been held not to apply to health insurers that contract with the government to administer FEHBA and/or Medicare Advantage plans.[3] *Compare St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 935 F.3d 352, 355 (5th Cir. 2019) (removal under § 1442 held proper where provider was standing in the shoes of a federal insured and challenged, under Louisiana's direct pay statute, actions by insurer undertaken contrary to specific directives from the OPM); *Brady v. Brady*, No. 819CV1268T24SPF, 2019 WL 3206871, at *3 (M.D. Fla. July 16, 2019) (removal of coverage claim that "arose as a direct result of Blue Cross administering the health insurance plan under which OPM told Blue Cross that Plaintiff was a covered family member."); *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) (an insurance carrier was "acting under" the OPM when OPM asked it to pursue a subrogation claim against a party covered under a FEHBA health insurance plan); *Jacks v. Meridian Res. Co.*, LLC, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012) (subrogation claim under a FEHBA plan against insured); *Malibu v. Anthem Blue Cross Life*, No. CV 16-5229-JFW (KSX), 2016 WL 5746337, at *1 (C.D. Cal. Sept. 30, 2016) (claim upon an assignment of benefits from a FEHBA plan insured); *Vrijesh*, 169 F. Supp. 3d 1066 (dispute over direct payments to patients that were authorized by OPM under

---

[3] *See* ECF 14 (Motion to Remand) at 11-15.

the FEHBA plan); *Owens v. Health Care Serv. Corp.*, No. CV 16-95-BMM-JTJ, 2016 WL 7675406, at *2 (D. Mont. Dec. 16, 2016) (coverage determination case by insured under a FEHBA plan); *Bell v. Blue Cross & Blue Shield of Oklahoma*, No. 5:14-CV-05046, 2014 WL 5597265, at *1 (W.D. Ark. Nov. 3, 2014), aff'd, 823 F.3d 1198 (8th Cir. 2016) (same); *accord California Spine & Neurosurgey Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, No. 20-CV-08511-VC, 2021 WL 2908676, at *4 (N.D. Cal. July 12, 2021) (recognizing that not every action that a private carrier takes while administering a FEHBA plan on OPM's behalf would qualify as an action taken "under" the agency's authority). Under Florida Blue's approach, there would always be a good faith basis to remove any case against any entity in any federally regulated industry.

Thus, none of the cases cited by Florida Blue overcomes the controlling caselaw in this Circuit, which Florida Blue ignored. Courts in this Circuit consistently hold that a health insurer that merely contracts with the federal government to administer either FEHBA or Medicare Advantage (i.e. Part C) health plans is not acting under sufficient control to trigger the availability of the federal officer removal statute. *See* ECF 27 at 10-14; *see also* ECF 14 at 11-15.

Similarly, Florida Blue's effort to justify its removal of this state law "rate of payment" case as if it were a "right of payment" case falls flat. Numerous rulings of this Court and other courts hold that federal jurisdiction does not lie where, like here, providers have challenged the "rate of payment" as opposed to a "right of payment" for out-of-network medical services, regardless of the underlying type of a health plan. *See* ECF 27 at 14-17.

The sole case that Florida Blue cites in its opposition arguing that it was reasonable for Florida Blue to claim that the "rate of payment" distinction does not apply to out-of-network providers is plainly distinguishable and pre-dates the overwhelming authority that routinely upholds this important distinction. In *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, No.

6

16-62768-CIV, 2017 WL 7806152, at *5 (S.D. Fla. June 26, 2017), on which Florida Blue relies, the plaintiff out-of-network toxicology lab sued the insurer in connection with certain claims that were completely denied – "the allowed amount was $0." *Id.* at *2. In a Report and Recommendation, which was never adopted by this Court, Magistrate Judge O'Sullivan not surprisingly rejected plaintiff's argument that it was somehow a "rate of payment" case, finding that "[t]he plaintiff's claims necessarily challenge the denial of benefits under the ERISA plans and are therefore within the scope of ERISA." *Id.* at *5.

Any position that minimizes the distinction between rate of payment and right of payment has been rejected outright by this Court, including in a case involving *Florida Blue's* effort to rely on *Apex Toxicology*. One year later, this Court explained that *Apex Toxicology* clearly involved a right to payment dispute "because the parties were not conflicted over 'rate of payment' as the defendants in that case never made any payments" and explained that courts in this District have held that the "right of payment" versus "rate of payment" distinction applies to out-of-network providers who bring claims under implied contract theories. *REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3323817, at *3 (S.D. Fla. July 6, 2018) (citing *Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.*, 258 F. Supp. 3d 1323 (S.D. Fla. 2014)); *see also Orthopaedic Care Specialists, P.L. v. UnitedHealthcare Ins. Co.*, No. 19-CV-81429-CIV, 2020 WL 4892825, at *2 (S.D. Fla. Jan. 8, 2020) ("I acknowledge but reject Defendant's argument that the 'rate of payment' v. 'right of payment' analysis is inapplicable to out-of-network providers."); *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, No. 619CV1694ORL40LRH, 2020 WL 7389987, at *8 & n.10 (M.D. Fla. June 1, 2020), report and recommendation adopted, No. 619CV1694ORL40LRH, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (explaining that "rate of payment" claims by medical providers against insurers are not pre-empted by ERISA and

distinguishing *Apex Toxicology* because the claim there was denied in total and the defendants never made any payments). Accordingly, the assertion by Florida Blue in its opposition that the "right of payment" versus "rate of payment" distinction is inapplicable to out-of-network providers disregards controlling authority.

In addition, Florida Blue persists in making demonstrably false factual statements when it tells the Court in footnote 4 of its opposition that the redacted claims spreadsheet attached to the ER Groups' motion to remand shows numerous approved amounts as "$0.00" which "***would give rise to federal jurisdiction***." ECF 33 at 12 (emphasis added). If that were true, then why did Florida Blue stipulate to a remand? In fact, as Florida Blue knows, the portion of the claims spreadsheet that was attached to the remand papers included only a redacted copy of the CPT[4] Level detail data tab of that spreadsheet. *See* ECF 14-1 at ¶ 6 & Exhibit A. The references to "0.00 approved" amounts in the CPT Level data tab are for individual CPT codes and do not reflect denials at a total claim denial. *See* enclosed Supplemental Declaration of Sara Shoultz at ¶ 4. Claims can be composed of several CPT codes, typically a code for primary services and then ancillary codes for any secondary services the patient received and, as Florida Blue knows, the ER Groups did not include *any claims* that were completely denied. *Id.* Indeed, when discussing with Florida Blue management the CPT Level detail that Florida Blue had requested prior to this litigation, the ER Groups' Director of Managed Care confirmed in writing that the ER Groups

> included the zero allowed CPT's in the file since they were connected to a CPT with an ***underpayment. I am not specifically contesting a denial***. The point was to present a complete picture of the visit.

*Id.* at Exhibit A (emphasis added). Florida Blue's argument improperly multiplies and protracts

---

[4] CPT or "Current Procedural Terminology" refers to a set of medical codes used by physicians, health professionals, nonphysician practitioners, hospitals, outpatient facilities, and laboratories to describe the procedures and services they perform when reporting procedures and services to federal and private payors. *See* https://www.aapc.com/resources/medical-coding/cpt.aspx.

8

this proceeding.

Thus, just as it did at the time of removal, Florida Blue continues to misconstrue facts to justify the delays and expenses that it has unreasonably imposed on the ER Groups.

### III. THE ER GROUPS ARE ENTITLED TO FEES AND COSTS INCURRED IN RESPONDING TO THE MOTION TO DISMISS AND PREPARING THIS MOTION FOR FEES.

In its opposition, Florida Blue does not even try to address the authorities cited in the plaintiffs' motion papers that support an award of fees incurred in opposing Florida Blue's motion to dismiss and in preparing the present motion for fees, which plaintiffs would not have incurred but for Florida Blue's unreasonable removal of this case. *See* ECF 27 at 17-18. Nor can Florida Blue justify its refusal to agree to hold in abeyance its motion to dismiss despite the fundamental rule that jurisdictional issues must be determined first. *See* ECF 27-2 (email exchange among counsel) at 3 ("For the reasons we discussed in conferral, we do not agree to bifurcating the motion to dismiss briefing from the motion to remand briefing."); *Hill v. Nat'l Ins. Underwriters, Inc.*, No. 12-62498-CIV, 2013 WL 11971265, at *1 (S.D. Fla. Aug. 7, 2013) ("Because it challenges the Court's subject matter jurisdiction, the Court ***must*** resolve a motion to remand prior to taking up any motion to dismiss." (emphasis added)) (citing *Univ. Of S. Alabama v. Am. Tobacco Co.*, 168 F. 3d 405, 411 (11th Cir. 1999)); *Adler v. Blue Cross & Blue Shield of Fla., Inc.*, No. 05-61117-CIV, 2005 WL 8155294, at *1 (S.D. Fla. Sep. 16, 2005) ("The Court will ***necessarily*** decide the motion to remand first because subject matter jurisdiction must be present before a motion to dismiss may be considered." (emphasis added)). Instead, Florida Blue boasts that it agreed to a "generous" extension for the ER Groups oppose its motion to dismiss. Florida Blue fails to acknowledge, however, that despite the fact that the opposition was now due more than *two weeks* after the ER Groups filed the motion to remand (which allegedly formed the basis for Florida

9

Blue's willingness to stipulate to remand), Florida Blue waited until *after* the ER Groups incurred the burdens of opposing that motion before it offered to stipulate to a remand to state court.

Finally, the state court motion to dismiss that Florida Blue has attached to its opposition confirms that absent the improper removal, the ER Groups would not have been required to research and address the extensive federal preemption and procedural arguments set forth in Florida Blue's federal motion to dismiss. At the very least, the ER Groups are entitled to recover the reasonable fees incurred in addressing those aspects of the motion to dismiss, which can be addressed with respect to the *amount* of a fee award.

## Conclusion

Based on the foregoing and the opening motion papers, the ER Groups respectfully request that the Court grant this motion, award the ER Groups their reasonable attorneys' fees and costs related to seeking remand, including in opposing Florida Blue's motion to dismiss and in preparing the present fees motion, and set a further schedule for the ER Groups to submit an evidentiary application to determine the amount of such fees and costs.

Respectfully Submitted,

By: */s/ Jamie B. Wasserman*
**Joseph M. Goldstein, Esq**.
Florida Bar No. 820880
Email: jgoldstein@shutts.com
**Jamie B. Wasserman, Esq.**
Florida Bar No. 68513
Email: jwasserman@shutts.com
*Counsel for Plaintiffs*
200 East Broward Boulevard, Suite 2100
Fort Lauderdale, FL 33301
Telephone:   (954) 524-5505
Facsimile:   (954) 524-5506

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

                                              By: */s/ Jamie Wasserman*
                                                       **Jamie B. Wasserman, Esq**.

FTLDOCS 8410913 1 50077.0004

11